UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JAMES BROWN, THERESA CAMBRON,
PHILIP LEIGH, AND EMIL WALTHER III,
On Behalf of Themselves and All Others
Similarly Situated,

          PLAINTIFFS

v.

TAX EASE LIEN SERVICING, LLC, TAX
EASE LIEN INVESTMENTS 1, LLC, BLUE
GRASS ABSTRACT, LLC, LIEN DATA
SERVICES, LLC, PHIL MIGICOVSKY,
HAYDEN CRAIG & GRANT, PLLC (N/K/A
CRAIG LAW OFFICE, PLLC), RICHARD
ERIC CRAIG, SHERROW, SUTHERLAND
& ASSOCIATES, P.S.C., AND BILLY W.
SHERROW,

          DEFENDANTS

CIVIL ACTION NO. 3:15-CV-208-CRS

ELECTRONICALLY FILED

**NOTICE OF REMOVAL**

Defendants Tax Ease Lien Servicing, LLC ("TELS"), Tax Ease Lien Investments 1, LLC

("TELI"), Blue Grass Abstract, LLC ("BGA"), Lien Data Services, LLC ("LDS"), Philip S.

Migicovsky, Hayden Craig & Grant, PLLC (n/k/a Craig Law Office, PLLC), Richard Eric Craig,

Sherrow, Sutherland & Associates, P.S.C., and Billy W. Sherrow (collectively, "Defendants"),

give notice pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, and 1453 of their removal to this

Court of the action commenced against them in Jefferson Circuit Court in the Commonwealth of

Kentucky, styled *James Brown,* et al. *v. Tax Ease Lien Servicing, LLC,* et al., which has been

filed in the consolidated action Nos. 13-CI-400421 and 13-CI-400451.  (A copy of the

complaint, originally styled a "Third Amended Counterclaim and Intervening Complaint," is

attached as Exhibit 1.  A copy of the Jefferson Circuit Court's March 4, 2015 Order that severed

the class action complaint from the original foreclosure complaints and made the class action complaint removable is attached as Exhibit 2.)  Removal is proper based on federal question jurisdiction and pursuant to the Class Action Fairness Act of 2005 ("CAFA") for the following reasons:

**This Court Has Original Jurisdiction Based On a Federal Question.**

1.      Plaintiffs James Brown, Theresa Cambron, Philip Leigh, and Emil Walther III, on behalf of themselves and all others similarly situated, have filed a putative class action complaint against Defendants asserting claims under the civil remedies section of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, for alleged violations of 18 U.S.C. § 1962.  (Plaintiffs' complaint shall be referred to for ease of reference as the "Brown Complaint.")

2.      This Court has original jurisdiction over all civil actions arising under the laws of the United States.  28 U.S.C. § 1331.  The RICO civil remedies statute also expressly provides that United States district courts have original jurisdiction over RICO claims.  18 U.S.C. § 1964(c).

3.      Accordingly, this Court has original jurisdiction over Plaintiffs' RICO claim.

4.      The remaining claims asserted by Plaintiffs are related to the RICO claim such that they form part of the same Article III case or controversy.  Accordingly, this Court has supplemental jurisdiction over the state law claims asserted in the Brown complaint.  28 U.S.C. § 1367(a).

**This Court Has Original Jurisdiction Based On Diversity Jurisdiction Under CAFA.**

5.      This Court has original jurisdiction over any class action in which: (a) the amount in controversy, in the aggregate, exceeds $5 million, exclusive of interest and costs; (b) the class

contains at least 100 members; and (c) any class member is a citizen of a different state than any defendant.  28 U.S.C. § 1332(d)(2), (d)(5), (d)(6).  All of these criteria are satisfied here.

6.      The Brown Complaint was filed as a class action, as defined in 28 U.S.C. § 1332(d)(1)(B).

7.      There is at least $5 million in controversy, exclusive of interest and costs.  The Brown Complaint seeks relief on behalf of a proposed class of thousands of persons, (*see* Compl. ¶ 147), and alleges claims under RICO, KRS 446.070, and the Kentucky Consumer Protection Act, asserts claims for fraud, fraudulent inducement, and unjust enrichment, and seeks declaratory and injunctive relief.  (*See id.* ¶¶ 153–197.)  The complaint seeks compensatory damages, treble damages under RICO, punitive damages, declaratory and injunctive relief, restitution, civil fines, divestiture of Defendants' interests in the various entities being sued, and attorneys' fees.  (*See id.* at Prayer for Relief.)

8.      Based on the allegation that there are thousands of class members (including more than 4,000 in Jefferson County alone), (*see* Compl. ¶ 147), and the nature of the claims and relief sought, it is apparent from a preponderance of the evidence that the amount placed in controversy by the Brown Complaint exceeds $5 million, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(2); *Smith v. Nationwide Property and Cas. Ins. Co.*, 505 F.3d 401, 404–05 (6th Cir. 2007) (holding that defendant seeking removal under CAFA must establish propriety of removal by preponderance of the evidence).  The amount in controversy requirement is satisfied if it appears "more likely than not" that the amount in controversy exceeds $5 million.  *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77, 91–97 (2010).  The amount in controversy may be determined based upon a "fair reading of [the] complaint."  *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573

(6th Cir. 2001). In addition to the substantive claims themselves, Plaintiffs' demands for treble and punitive damages also must be considered in determining the amount in controversy. *See Smith*, 505 F.3d at 408 (holding that availability of punitive damages must be considered in making the jurisdictional analysis unless it appears to a legal certainty that they could not be recovered).

9. The nature of Plaintiffs' claims and the size of the alleged class demonstrate that the amount in controversy requirement is satisfied here. The gravamen of the complaint is that Defendants allegedly conspire to collect improper pre-litigation attorneys' fees (which are authorized by KRS 134.452(1)(c)) and to collect inflated and improper litigation-related attorneys' fees and expenses (which are authorized by KRS 134.452(3)). (*See generally* Brown Compl.) Brown, for example, appears to allege actual damages of approximately $2,789.48 (the difference between the alleged "legitimate return" of $870 for the certificate of delinquency on his property and the $3,659.48 charged). (*Id.* ¶ 118.) Cambron alleges actual damages of approximately $2,195.00 ($938 for improper pre-litigation attorneys' fees, $957 in allegedly unreasonable litigation attorneys' fees, and an allegedly improper "profit" of approximately $300 for a title search). (*Id.* ¶¶ 125–27.) Leigh alleges approximately $2,000 in actual damages (an allegedly improper $100 PVA fee, a title search profit of approximately $300, and $901 in unreasonable litigation attorneys' fees—less $500 to account for a reduction from the original demand—for one certificate, as well as $800 in additional litigation fees and an approximate $400 profit from title searches relating to other certificates). (*Id.* ¶¶ 134–37.) Finally, Walther claims allegedly improper charges of $700 for pre-litigation attorneys' fees, an approximate title search profit of $272.50, and $490 for preparing a "generic" agreement and payoff statement, for a total of approximately $1,462.50 in alleged actual damages. (*Id.* ¶¶ 140–42.) Thus, the lowest

amount in actual damages claimed by any named Plaintiff is approximately $1,462.50.  The average amount of actual damages claimed by the named Plaintiffs is approximately $2,111.75.[1]

10.     Using the average actual damages alleged by the named Plaintiffs, coupled with the allegation that there are more than 4,000 class members in Jefferson County alone, the Brown Complaint puts more than $8 million in controversy in actual damages alone.  This is before accounting for treble damages under RICO or punitive damages under the common law claims, before accounting for Plaintiffs' demand for attorneys' fees, and before accounting for the value of injunctive relief sought or the requested "divestiture" of Defendants' business interests.  The nature of the claims and damages alleged establish that there is more than $5 million in controversy in the aggregate.  *See Hayes*, 266 F.3d at 571–73 (holding that the extensive nature of the relief sought in the complaint, including punitive damages, satisfied the amount in controversy requirement despite the absence of a specified amount of damages in the complaint); *Baumgardt v. Woods*, 2008 U.S. Dist. LEXIS 46262, at *5–6 (W.D. Ky. June 12, 2008) (holding that a complaint seeking damages for past and future medical expenses, lost wages, destruction of earning capacity, pain and suffering, inconvenience, permanent injury, and additional relief under an insurance policy placed a sufficient amount in controversy based on "the nature of these multiple claims").  Indeed, actual damages of only $1,000 per class member (less than half the amount sought by all but one of the named Plaintiffs, and still nearly $500 less than is sought by that final named Plaintiff) applied to 4,000 class members in Jefferson County alone would total $4 million in alleged actual damages.  Treble damages under RICO, even before taking into account the possibility of punitive damages under the state law claims or any

---

[1] The Brown Complaint also includes carryover allegations pertaining to four former counterclaimants, whose claims were dismissed by the Jefferson Circuit Court, and to Habitat for Humanity, which has never been a party to the case.  The actual damages calculations for these non-parties, based on the allegations, are comparable to those of the named Plaintiffs.  (*See* Compl. ¶¶ 68, 90, 102.)

other form of relief sought, would place more than $12 million in controversy solely for alleged Jefferson County putative class members.  It thus is clear from the allegations in the complaint that there is at least $5 million in controversy.

11.     There are at least 100 putative class members.  (*See* Compl. ¶ 147).  28 U.S.C. § 1332(d)(5)(B).

12.     The named plaintiffs are citizens of Kentucky.  Although several Defendants are citizens of Kentucky, at least one Defendant, Migicovsky, is a citizen of Texas, as conceded by Plaintiffs.  (Compl. ¶ 12.)  Additionally, for purposes of CAFA, unincorporated associations (such as limited liability companies) are citizens of the state where they have their principal place of business and the state under whose laws they are organized.  28 U.S.C. § 1332(d)(10).  BGA and LDS are both limited liability companies formed under the laws of the State of Texas whose principal places of business are in Texas.  (*See* Applications for Certificates of Authority for BGA and LDS, attached as Exhibits 3 and 4, respectively, which are publicly available through the Kentucky Secretary of State website.)  Accordingly, minimal diversity of citizenship exists pursuant to 28 U.S.C. § 1332(d)(2)(A).

13.     Based on the foregoing, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

**Removal is Proper Based on Federal Question Jurisdiction or CAFA.**

14.     "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

15.     There is no Act of Congress prohibiting or otherwise preventing Defendants from removing the Brown Complaint to federal court.

16.     This Court is the proper venue for this action under 28 U.S.C. § 1441(a), as the state court action is pending in Jefferson County, Kentucky, and the United States District Court for the Western District of Kentucky, Louisville Division, is the United States District Court embracing the place where the state court action is pending.

17.     This notice is being filed within thirty days of receipt by Defendants of a copy of the Jefferson Circuit Court's March 4, 2015 Opinion and Order, which is the "amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).  (*See* Ex. 2.)

18.     The Brown Complaint was filed in a consolidated action ultimately comprised of three separate actions.  The first action was a foreclosure complaint filed by TELS against Rose Harper and Deddo Goldsmith to enforce a certificate of delinquency constituting a lien on Harper and Goldsmith's property for failure to pay taxes.  *Tax Ease Lien Servicing, LLC v. Rose Harper and Deddo Goldsmith*, et al., No. 13-CI-400421, Commonwealth of Kentucky, Jefferson Circuit Court, Division 13 (a copy of this complaint is attached as Ex. 5 for ease of reference).  Harper and Goldsmith asserted a putative class action counterclaim in that action, naming not only TELS, but also TELI, BGA, LDS, Migicovsky, Craig, and the Craig Law Office (a copy of the counterclaim is attached as Ex. 6).  Because the putative class action was asserted as a counterclaim in the Harper action, it was not removable at that time.

19.     After TELS filed the first foreclosure action, TELS filed a separate, unrelated foreclosure action to enforce a separate, unrelated certificate of delinquency constituting a lien on property owned by Phillip and Karyn Julian.  *Tax Ease Lien Servicing, LLC v. Phillip and*

*Karyn Julian*, et al., No. 13-CI-400451, Commonwealth of Kentucky, Jefferson Circuit Court, Division 7 (a copy of this complaint is attached as Ex. 7). After counsel for Harper and Goldsmith recruited the Julians to serve as additional class representatives, the Julians moved to transfer their case to Division 13 of the Jefferson Circuit Court (where the Harper action was pending) and consolidate it with the Harper action so that the Julians could join in an amended, putative class action counterclaim (a copy of the order transferring and consolidating the cases is attached as Ex. 8, and a copy of the amended counterclaim is attached as Ex. 9).

20.     TELS, TELI, BGA, LDS, Migicovsky, Craig, and the Craig Law Office all filed motions to dismiss the Harper, Goldsmith, and Julian counterclaim. After those motions were fully briefed and argued, but before the Circuit Court had an opportunity to rule on the motions, the counterclaimants sought to file yet another amended counterclaim (copy attached as Ex. 10). This new pleading proposed to add two new counterclaim defendants, Sherrow and the Sherrow Firm. Additionally, the counterclaimants sought to allow Brown to intervene as an additional "counterclaimant" (despite the fact that there was no claim pending against him to which he could assert a "counterclaim"). The Circuit Court did not rule on the motion for leave to file an amended and intervening counterclaim at that time.

21.     On January 15, 2014, the Circuit Court entered an opinion and order that, after converting the motions to dismiss to motions for summary judgment, granted summary judgment in favor of all of TELS and the other counterclaim defendants with respect to the counterclaim asserted by Harper, Goldsmith, and the Julians (a copy of the opinion and order is attached as Ex. 11). The Circuit Court purported to deny the motions to dismiss with respect to the intervenor, Brown, even though no motion to dismiss had been filed against Brown because he had not yet been given leave to intervene.

22.     The Circuit Court indicated in its January 15, 2014 Opinion and Order that it had previously allowed Brown to intervene, but there is no order in the record allowing this intervention.  In the wake of the January 15th Opinion and Order, Brown successfully moved the Circuit Court to enter an order formally allowing him to intervene as a "counterclaim plaintiff," notwithstanding the fact that the only counterclaim into which he could have intervened had been dismissed (a copy of the order is attached as Ex. 12).

23.     After the Circuit Court allowed Brown to intervene as a "counterclaimant," and following various motions by the parties (including a motion for leave to file still another amended counterclaim and intervening complaint that would join Cambron, Leigh, and Walther as additional named "counterclaimants"), the Circuit Court entered an April 17, 2014 "Order Bifurcating Actions and Granting Amended Intervening Complaint."  (Copy attached as Ex. 13.)  In that order, the Circuit Court held that it considered the "counterclaim" asserted by Brown to be an "intervening complaint," not an intervening counterclaim, and bifurcated the consolidated actions pursuant to Ky. Rule of Civil Procedure 42.02 (which allows for the separate trials of claims).  The Circuit Court also allowed the latest proposed "amended counterclaim and intervening complaint," but only to allow Cambron, Leigh, and Walther to join in the Brown Complaint.  The court made clear that the only actual counterclaimants (Harper, Goldsmith, and the Julians) were *not* parties to the amended complaint.

24.     A realignment of the parties to a state court proceeding makes the action removable if the realigned case meets the criteria for removal.  For example, in *Crump v. Wal-Mart Group Health Plan*, 925 F. Supp. 1214 (W.D. Ky. 1996) (Heyburn, J.), this Court held that Wal-Mart (previously an intervening plaintiff) properly removed ERISA claims against it by Crump (previously a defendant) from state court after the state court entered an order realigning

the parties to sever Crump's cross-claim against Wal-Mart from the original tort claims. The Circuit Court in *Crump* did not assign a new case number to the "*Crump v. Wal-Mart*" claim, but instead simply realigned the parties and opted to resolve the "cross-claim" separately from the remaining action. *See id.* at 1216.

25.    Based in part on the similarity between the realignment in *Crump* and the April 17, 2014 Order here, Defendants removed the action to this Court on April 25, 2014. All Defendants filed motions to dismiss, the Tax Ease Defendants and Sherrow Defendants filed answers as well, and Plaintiffs filed a motion to remand.

26.    On January 8, 2015, this Court remanded the action, holding that it could not say for certain that the April 17, 2014 Order made the case removable. (A copy of the January 8, 2015 Order is attached as Exhibit 14.) In particular, the Court noted that the Circuit Court never ruled on a motion to voluntarily dismiss the foreclosure complaints that TELS had filed and that the removal question may have been answered differently had the Circuit Court granted that motion. (*See* 1/8/15 Ord., at 5, 7–8.)

27.    In light of the January 8, 2015 Order, TELS filed a motion in Circuit Court renewing their motion for voluntary dismissal and asking the court to sever whatever would be left of the foreclosure cases from the class action.

28.    On March 4, 2015, the Circuit Court granted TELS's motion, denied a previously-filed motion to reconsider dismissal of the Harper/Goldsmith/Julian counterclaim, and denied a motion to dismiss previously filed by the Craig Defendants in state court.[2] The court made clear its intent that the motion to sever be granted so as to create separate actions:

---

[2] The court also noted its discovery that the judge previously seated in Division 13 had apparently signed an order denying TELS's original motion to voluntarily dismiss its complaints at the time the counterclaim was still pending, but that order was never entered. The Circuit Court entered that order on Mach 4, 2015 as a housekeeping matter, but made clear that the entry of that order did not somehow affect the renewed motion to voluntarily dismiss and sever.

> Therefore, the Court sets aside its order of April 17, 2014, grants TELS' motion to sever pursuant to CR 20.02, and orders as follows: first, except for sharing the common civil action number of 13-CI-400421, *the foreclosure action and the claims made in the intervening complaint/class action shall be treated as two independent civil actions*, with separate pretrial proceedings and trials; the parties in these separate actions shall caption all future pleadings that reflect the true alignment of the parties[]; and any judgment in either action that disposes of all issues in that action shall be deemed final and appealable pursuant to CR 54.01 and any other applicable rule.

(3/4/15 Ord., at 5–6 (footnote omitted, emphasis added).)[3]

29.     The same basic situation exists here now that existed in *Crump*.  The Circuit Court did not assign a new case number to the "*Brown v. TELS*" claims, but it made clear that *Brown, et al. v. TELS, et al.* would be resolved as a separate action from the foreclosure action. The situation is also directly analogous to *Hrivnak v. NCO Portfolio Mgt., Inc.*, 723 F. Supp. 2d 1020, 1021, 1027–28 (N.D. Ohio 2010), in which former counterclaim defendants were allowed to remove the case following dismissal of the original complaint and realignment of the parties by the state court to make the former counterclaimant the plaintiff and the former plaintiff and counterclaim defendants the defendants.

30.     Here, the state court dismissed the original foreclosure complaints by TELS and severed the class action complaint from the remainder of the foreclosure actions, making clear in the process that it was creating two separate actions with separate case captions reflecting the true alignment of the parties.  Based on the March 4, 2015 Order, Defendants are "defendants" for purposes of removal jurisdiction and are entitled to remove the complaint against them, just as the realigned defendants in *Crump* and *Hrivnak* were entitled to remove the complaints against them.

31.     Before the state court's realignment of the parties, Defendants were all

---

[3] The footnote omitted from the quotation above underscores the distinction between the new actions, referring to the proper case captions going forward as: "*James Brown, et al. vs. TELS, et al.*, in the intervening complaint/class action, and *Vesta Holdings, et al. v. Harper, et al.*, in the foreclosure."  (3/4/15 Ord., at 6 n.5.)

counterclaim defendants (and, in the case of TELS, a plaintiff against the four counterclaimants who are not parties to the Brown complaint and whose counterclaims were dismissed), and the counterclaim was not removable. This Court already concluded that the April 17, 2014 Order did not make the case removable at that time. The March 4, 2015 Order granting TELS's motion to voluntarily dismiss its foreclosure complaints and to sever the class action complaint from the foreclosure action is what made the Brown complaint removable for the first time. Defendants have removed the case within thirty days of the entry of that order.[4]

32.     There are no other temporal or procedural bars to removal. There is no requirement that this action be removed within one year of its commencement, as this limitation does not apply to cases removed based on federal question jurisdiction or pursuant to CAFA. *See* 28 U.S.C. §§ 1446(c)(1), 1453(b). It also is no impediment to jurisdiction that some Defendants are citizens of Kentucky, because 28 U.S.C. § 1441(b)(2) applies only to diversity actions, not federal question cases, and, moreover, CAFA provides that removal is appropriate even if some defendants are citizens of Kentucky. 28 U.S.C. § 1453(b).

33.     All defendants consent to removal and join in this notice. Even if all Defendants had not joined in this removal, with respect to CAFA jurisdiction, only one defendant needs to remove, and there is no need to obtain consent from any other defendant. 28 U.S.C. § 1453(b). Were the Court to conclude that CAFA jurisdiction does not exist for any reason, removal based on the existence of a federal question requires only the consent of the defendants against whom

---

[4] It should be noted that the Circuit Court referred to the Brown Complaint as an "intervening complaint." In general terms, "intervening complaints" do not trigger the right to remove because the intervenor cannot, in effect, hijack the plaintiff's complaint and make it removable despite the original, well-pleaded complaint that was not removable, with no voluntary act by the plaintiff to make it otherwise. *See Ball v. Alfortish*, No. 08-4637 Section "L"(3), 2009 U.S. Dist. LEXIS 33593, at *9–10 (E.D. La. March 31, 2009); *Henderson v. City of Chattanooga*, No. 1:02-cv-45, 2002 U.S. Dist. LEXIS 26339, at *14–21 (E.D. Tenn. June 11, 2002). The so-called "intervening complaint" here is not such a pleading. The counterclaim into which Brown intervened was dismissed, and Brown certainly has not intervened into TELS's now-dismissed foreclosure actions to assert claims against the former defendants to those claims. The Circuit Court has now held that the Brown Complaint is to proceed as its own civil action under its own caption, not as an "intervening complaint" in a previously-filed lawsuit.

the federal claims are asserted.  28 U.S.C. § 1441(c)(2).  All Defendants to the RICO claim have

joined in this notice.

34.     Defendants are filing a removal notice with the Clerk of the Circuit Court of the

County of Jefferson, Kentucky and will serve written notice upon all counsel of record in that

action.

35.     Pursuant to 28 U.S.C. § 1446(a), Defendants have attached all process, pleadings,

and orders served on them in the state court action.  (Exhibit 15 contains the process, pleadings,

and orders served in the Harper action that are not separately attached in Exhibits 1–13.  Exhibit

16 contains the additional process, pleadings, and orders from the Julian action.  Exhibit 17 is the

order signed by the Circuit Court on July 10, 2013 that the Court later entered on March 4, 2015

as a housekeeping matter when it granted TELS's renewed motion to voluntarily dismiss and

sever.  Exhibits 15 and 16 also contain indexes to assist the Court in identifying any specific

documents that it may wish to review.)  Additionally, Defendants attach as Exhibits 18 and 19,

respectively, the answers filed by the Tax Ease Defendants and the Sherrow Defendants when

the case was in federal court before and are now part of the record in this action.  Exhibit 20

contains all orders entered by this Court when the case was in this Court before the January 2015

remand.[5]

WHEREFORE, Defendants respectfully request that the Court assume jurisdiction over

this action.

_____

[5] Obviously, there have been additional motions, responses, and other documents filed in the Circuit Court and in
this Court on the previous removal that are not "pleadings."  The state court records may be brought before the
Court by the process set forth in 28 U.S.C. § 1447(b) (namely, either by requiring Defendants to file all such papers
or by issuing a writ of certiorari to the state court).  Although only the Brown Complaint, which is now a separate
action, has been removed, Defendants have attached the pleadings served on TELS in connection with the
foreclosure claims in an abundance of caution.  And, although they are not pleadings or orders served in the state
court proceeding, Defendants have attached the pleadings and orders served when the case was in this Court to
ensure that all process, pleadings, and orders in this action have been attached.

Respectfully submitted,

/s/ Matthew D. Henderson (with permission)
Matthew D. Henderson
TROUTMAN & NAPIER, PLLC
4740 Firebrook Blvd.
Lexington, KY 40513-1403
mhenderson@troutmannapier.com
*Counsel for Billy Sherrow and Sherrow,*
*Sutherland & Associates, P.S.C.*

/s/ Chadwick A. McTighe
Joseph L. Hamilton (jhamilton@stites.com)
Marjorie A. Farris (mfarris@stites.com)
Chadwick A. McTighe (cmctighe@stites.com)
STITES & HARBISON, PLLC
400 West Market Street
Suite 1800
Louisville, KY  40202-3352
Telephone: (502) 587-3400
*Counsel for Tax Ease Lien Servicing, LLC, Tax*
*Ease Lien Investments 1, LLC, Blue Grass*
*Abstract, LLC, Lien Data Services, LLC, and*
*Philip S. Migicovsky*

/s/ R. Eric Craig (with permission)
R. Eric Craig (ecraig@weberandrose.com)
WEBER & ROSE, P.S.C.
471 W. Main St., #400
Louisville, KY 40202
*Individually and on behalf of Hayden Craig*
*& Grant, PLLC n/k/a Craig Law Office*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Notice of Removal was electronically filed using the ECF System, and I hereby certify that a true and accurate copy of the foregoing was served by electronic mail, pursuant to agreement, on this 11th day of March, 2015 upon:

John H. Dwyer, Jr.
ZIELKE LAW FIRM PLLC
462 South Fourth Street, Suite 1250
Louisville, KY 40202
jdwyer@zielkefirm.com
*Counsel for James Brown, Theresa Cambron, Philip Leigh, and Emil Walther III*

Matthew D. Henderson
TROUTMAN & NAPIER, PLLC
4740 Firebrook Blvd.
Lexington, KY 40513-1403
mhenderson@troutmannapier.com
*Counsel for Billy Sherrow and Sherrow, Sutherland & Associates, P.S.C.*

And via United States First Class Mail, postage prepaid, upon:

Richard Eric Craig
WEBER & ROSE, P.S.C.
471 West Main St., Suite 400
Louisville, KY 40202
*Individually and on behalf of Hayden Craig & Grant, PLLC n/k/a Craig Law Office*

*/s/ Chadwick A. McTighe*
Chadwick A. McTighe