# EXHIBIT 1
# (Part 1 of 7)

Case No. 13-CI-400421                                    Jefferson Circuit Court, Division 13
  C/W 13-CI-400451                                  Judge Frederick J. Cowan

Tax Ease Lien Servicing, LLC                                              Plaintiff

  v.                    **Harper Counterclaimants'**
    **Third Amended Counterclaim and Intervening Complaint**

Rose Harper, Deddo Goldsmith,                                    Defendants
Phillip R. Julian and  Karyn Julian

and

Rose Harper, Deddo Goldsmith                        Counterclaim Plaintiffs/
Phillip R. Julian, Karyn Julian                          Intervening Plaintiffs
James Brown, Theresa Cambron,
Phillip Leigh, and Emil Walther III
v.

Tax Ease Lien Servicing, LLC,                        Counterclaim Defendants
Tax Ease Lien Investments 1, LLC, Blue Grass
Abstract, LLC, Lien Data Services, LLC, Phil
Migicovsky, Hayden Craig & Grant, PLLC,
Richard Eric Craig, Sherrow, Sutherland &
Associates, PSC, and Billy W. Sherrow
          *   *   *   *   *   *

  **WHEREAS, since [2005], it has come to the attention of the General**
  **Assembly that some private purchasers have been attempting to exact**
  **unconscionable attorneys' fees and costs from individuals paying**
  **certificates of delinquency. . . .**

  **2007 Ky. Acts Ch. 14, preamble.**

  Rose Harper, Deddo Goldsmith, Phillip Julian, Karen Julian, James Brown, Theresa

Cambron, Philip Leigh, and Emil Walther III, by counsel and on behalf of others similarly

situated (collectively referred to as the Harper Counterclaimants), for their

counterclaim/intervening complaint against Tax Ease Lien Servicing, LLC ("TELS"); Tax

Ease Lien Investments 1, LLC ("TELI"); Blue Grass Abstract, LLC ("BGA"); Lien Data

Services, LLC ("LDS"); Phillip S. Migicovsky; Hayden, Craig & Grant, PLLC (n/k/a Craig

Law Office), PLLC ("HCG"); Richard Eric Craig; Sherrow, Sutherland & Associates, PSC

("SSA"); and Billy W. Sherrow; (collectively the TELS Defendants), state as follows:

1

## INTRODUCTION

1. This is a class action brought on behalf of Ms. Harper, Mr. Goldsmith, Mr. and Mrs. Julian, Mr. Brown, Ms. Cambron, Mr. Leigh, Mr. Walther and a class of all Kentucky property owners, lenders, and purchasers who have had fraudulent, unlawful, non-actual, and unreasonable attorneys' fees and costs sought or extracted from them in connection with the collection of tax certificates of delinquency by the TELS Defendants and their various associations-in-fact. The TELS Defendants, individually and through associations-in-fact, operate a state-wide fraudulent scheme to collect excessive and unlawful costs many times more than the legal total return on tax certificates of delinquency.

## THE PARTIES

2. Rose Harper is 77 years old and has been widowed for over 20 years. She and her son Deddo Goldsmith, along with other family members, live in a house at 304 N. 17th Street in Louisville. Ms. Harper has lived in this house since 1974, although she has sold, rented, and repurchased the house in the intervening 40 years. Mr. Goldsmith is a truck driver. Unless otherwise specified, references in this counterclaim to Ms. Harper include Mr. Goldsmith.

3. Mrs. Julian has owned the house at 2219 West Kentucky St., in Louisville, since 1983. She and her husband Phillip are both disabled and retired.

4. James Brown has owned the house located at 3411 W. Muhammad Ali Boulevard since 1977.

5. Theresa Cambron is 83 years old and has owned the house at 1416 S. 8th St., in Louisville since 1989. She worked for Shoney's for 25 years until she became ill in 2004. In 2005, she had a defibrillator implanted and was placed on oxygen. In 2006 she became totally disabled and eventually received a disability exemption that reduced the taxable

assessment on her property to zero. Prior to that determination, however, TELI purchased certificates of delinquency for tax years 2004, 2005, 2006, and 2008.

6. Philip Leigh, individually and through his business Third Century Development Corporation, develops residential real estate in Jefferson and Bullitt counties.

7. Emil Walther owns several parcels on Arcade Avenue, just west of Churchill Downs. The property includes the site of the florist business started by his grandfather, as well as a family home.

8. TELS is a Kentucky limited liability company with its principal place of business at 14901 Quorum Dr., Suite 900, Dallas, Texas. Its agent for process is CT Corporation System, 306 W. Main Street, Suite 512, Frankfort, KY 40601. It is in the business of purchasing and collecting certificates of delinquency resulting from unpaid real property taxes. It also sells financial services in the form of payment plans. TELS has been one of the top five purchasers of certificates of delinquency in Jefferson County over the last five years and was the largest by dollar amount in 2012. Phillip S. Migicovsky was the sole manager of TELS until this counterclaim was filed and is identified as its organizer in the records of the Kentucky Secretary of State.

9. TELI is a Kentucky limited liability company with its principal place of business at 14901 Quorum Dr., Suite 900, Dallas, Texas. Its agent for process is CT Corporation System, 306 W. Main Street, Suite 512, Frankfort, KY 40601. It is TELS alter ego, it is substituted for TELS without explanation by TELS's attorneys, and it is referred to by those attorneys as an "a/k/a" for TELS. See Exhibits 1 and 2. Phillip S. Migicovsky was the sole manager of TELI until this counterclaim was filed and is identified as its organizer in the records of the Kentucky Secretary of State. For purposes of this counterclaim, references to TELS include TELI.

3

10. BGA is a Texas limited liability company with its principal place of business at 14901 Quorum Dr., Suite 900, Dallas, Texas. Its agent for process is CT Corporation System, 306 W. Main Street, Suite 512, Frankfort, KY 40601. It appears to have no Kentucky place of business, yet purports to provide TELS and its attorneys with abstracts of title for real property located throughout Kentucky. Phillip S. Migicovsky was the sole manager of BGA until this counterclaim was filed. See Exhibit 3.

11. LDS is a Texas limited liability company with its principal place of business at 14901 Quorum Dr., Suite 900, Dallas, Texas. Its agent for process is CT Corporation System, 306 W. Main Street, Suite 512, Frankfort, KY 40601. It appears to have no Kentucky place of business, yet purports to provide TELS and its attorneys services in connection with tax lien foreclosures. Phillip S. Migicovsky was the sole manager of LDS until this counterclaim was filed, See Exhibit 4.

12. Phil Migicovsky is, upon information and belief, a resident of Texas. He controls TELS, TELI, BGA, and LDS and their business transactions in Kentucky either as a manager or the sole manager of those entities, and was the organizer of TELS and TELI in Kentucky. Mr. Migicovsky is subject to service through the Kentucky Secretary of State at 14901 Quorum Dr., Suite 900, Dallas, TX 75254.

13. HCG is a Kentucky professional limited liability company with its principal office at 718 West Main St., Suite 202, Louisville KY 40202. Its registered agent at that address is Richard Eric Craig. HCG participates in the management and operation of TELS's tax lien foreclosure business in Kentucky. It prepares and mails various letters required under Kentucky statutes regulating tax liens, calculates payoff amounts and sends those through the mails and interstate wires, establishes payment plans, and forecloses on the liens, causing process and other papers to be sent through the mails. In performing all these functions, HCG asserts and collects claims on behalf of TELS for purportedly actual and reasonable costs arising out of services provided by BGA, LDS and HCG.

14. Richard Eric Craig is an attorney licensed to practice law in the Commonwealth of Kentucky. He is a member of HCG, and performs and supervises the functions of HCG described above.

15. SSA is a Kentucky professional service corporation with its principal office at 200 Southland Drive, Lexington, Kentucky, 40503. SSA allows TELS and others to place its name and address on letters prepared by LDS and mailed by LDS through a third party vendor. These letters are later misrepresented to Kentucky courts and others as evidence of actual work performed by SSA attorneys for the purpose of manufacturing the maximum amount of prelitigation attorney's fees authorized by KRS 134.452.

16. Billy W. Sherrow is the president and a director of SSA. He allows TELS and others to place a facsimile of his signature on letters prepared by LDS and mailed by LDS through a third party vendor. These letters are later misrepresented to Kentucky courts and others as evidence of actual work performed by Mr. Sherrow for the purpose of manufacturing the maximum amount of prelitigation attorney's fees authorized by KRS 134.452.

17. All of the TELS Defendants conduct and participate in the conduct of the affairs of an association-in-fact enterprise made up of at least TELS, TELI, BGA, LDS, Phillip S. Migicovsky, HCG, Richard Eric Craig, SSA, and Billy W. Sherrow.

18. All of the TELS Defendants reside in and/or transact business in the Commonwealth of Kentucky either themselves or by agents. The claims in this action arise out of their business transacted in Kentucky.

### THE TAX LIEN OVERCHARGING SCHEME

19. When Kentucky property taxes remain unpaid beyond statutory deadlines, the tax liability is converted to a certificate of delinquency held by the county clerk in the county where the property is located. Those certificates are ultimately sold to private purchasers,

including TELS and TELI, who pay cash in the amount of the back taxes and assorted statutory fees.

20. The certificates bear interest at the rate of 12% per year and are a lien on the real property of the taxpayer superior to all other liens, including prior mortgages. They also support an *in personam* claim against the owner of the real property on the date of assessment.

21. To provide an incentive even beyond the 12% interest, Kentucky statutes entitle private purchasers to collect actual and reasonable attorneys' fees and costs in collecting the certificates, subject to both statutory and court-supervised limitations.

22. Because of the sort of abuses referenced in the preamble to this counterclaim, the statutes governing the tax lien collection process have been under almost constant revision since 2007. But the limitation that attorney's fees and costs recovered as part of the collection be both "actual" and "reasonable" has been part of the statute since the creation of KRS 134.452 in 2007 and has survived all amendments. The same standard has also long applied to attorney's fee recoveries in all actions and is an ethical limitation enforced under SCR 3.130(1.5).

23. This super-secured net 12% return is not enough for the TELS Defendants, who devised a scheme to multiply the total return on the certificates of delinquency by a factor of two, three, or more, while also extracting fees for work not performed along the way.

24. The TELS Defendants have executed this scheme by creating shell entities, including BGA and LDS, to fabricate and charge themselves non-actual and unreasonable attorney's fees and litigation costs, which they then attempt to pass on to property owners, to the detriment of both the property owners and junior lien holders.

**The BGA scheme fabricates $300 in charges per lien.**

25. BGA purports to be a title abstract company ("Blue Grass Abstract") that performs the title work necessary to identify proper defendants in foreclosure actions relating to

certificates of delinquency.  In fact, it has no presence in Kentucky, no ability to perform meaningful title review in Kentucky, and relies completely on subcontractors to perform its actual work.

26. A substantial portion of the actual title work is subcontracted to Court Street USA, LLC, a Kentucky company located in Pendleton County and doing business as Document Retrieval Network ("DRN").  DRN maintains a network of title abstractors throughout Kentucky who are capable of actually inspecting and reporting on Kentucky titles.  DRN has performed nearly 6000 title searches and other related services for the TELS Defendants since 2010.  Its average charge to the TELS Defendants for this work is approximately $106, and its work product alone is sufficient for a competent attorney to use to prepare a foreclosure complaint.  DRN's work product in connection with Rose Harper's parcel is attached as Exhibit 5.  The Harper property was an outlier in terms of DRN's charges, with a total cost to BGA of $259.

27. BGA received DRN's work, added no value whatsoever, and billed HGA $595, the same amount demanded by HGA of Ms. Harper and Mr. Goldsmith.

28. BGA adds approximately $300 in bogus fees to nearly every title report associated with a TELS Defendant foreclosure while adding no value to title work that it typically purchases for approximately $106.  This fraudulent charge alone often effectively doubles the total return for the TELS Defendants, while concealing the fraud as a purported litigation expense.  To ensure that these unlawful charges are collected, they are added to the files well before litigation actually commences, and in some cases before any title work is actually performed.

29. In at least one instance, TELS purports to have charged its own attorney $205 for purported title work, who then claimed to have charged the same amount back to TELS.  This was after the same attorney affirmed that he had already paid BGA $195 for a title search in the same action, for a total of $400 for purported title review. See Exhibit 6.

7

The court in that action limited TELS to a reasonable charge of $100 for all title work. See Exhibit 7.

**The LDS scheme fabricates hundreds of dollars of bogus attorney's fees.**

30. TELS is a debt collection mill and, like most such businesses, regularly and repeatedly duns its debtors to encourage payment.

31. Some letters are internally described as "soft," and attempt to extract money through offers of cooperation. See Exhibit 8.

32. Some letters written to make it sound like the debtors are lucky to be dealing with a company such as TELS, which is always "***READY TO MAKE A DEAL!!!***" at "***VERY favorable terms.***" See Exhibit 9.

33. Not surprisingly, some letters are internally described as "hard," and simply threaten to foreclose if payment is not made. See Exhibit 10.

34. The TELS Defendants, and particularly LDS, maintain complex computer databases to create and track all of this correspondence. Unfortunately for the TELS Defendants, Kentucky law does not allow them to recover directly for all these letters, meaning that the cost has to come from the guaranteed 12% return on the certificates of delinquency. The TELS Defendants have found a fraudulent way around this limitation, however.

35. Kentucky law *does* allow third-party producers to recover some prelitigation attorney's fees, contemplating the third-party purchasers will actually hire real Kentucky lawyers and pay them to actually attempt to collect the debt. That doesn't put money in TELS pockets, however, so the TELS Defendants simply pretend to be using lawyers to prepare their dunning letters. Using the same LDS mechanisms that already exist to send dunning letters, the TELS Defendants send nearly identical letters purporting to come from SSA and Billy Sherrow. The TELS Defendants then represent to courts throughout the Commonwealth that these letters were actually prepared by SSA at a cost of

approximately $75 per letter and that TELS should be reimbursed these amounts as attorney's fees.

36. Examples of these phony attorney's letters are attached as Exhibit 11. It's no coincidence that they are nearly identical in format to the other collection letters, as they are prepared by the same LDS employees, under the direction of Phil Migicovsky, Michelle Le and others.

37. The bogus letters are then shipped, hundreds or thousands at a time, to a mail processing vendor in Lexington, Kentucky, which mails them and returns paperwork to LDS making it appear that the mailing was performed for SSA.

38. To make this system work, the TELS Defendants need a Kentucky lawyer willing to allow his name to be used, and they found him in Billy Sherrow of SSA. Mr. Sherrow's scanned signature and firm name appear atop tens, if not hundreds, of thousands of letters created by TELS/LDS in Dallas. LDS creates the letters, the mailing database merges, the associated postal records, and everything else associated with these letters, and then sends them, not to Mr. Sherrow, but to a mailing vendor in Lexington, who sends them to the victims of the scheme.

39. When the TELS Defendants collect from the victims of their scheme, either through foreclosure action, or otherwise, they simply multiply $60-$75 by the number of letters required to reach the maximum prelitigation attorney's fees statutorily authorized for that particular lien, thus converting their own clerical work into "attorney's fees" in order to increase their own recovery while giving the appearance of complying with Kentucky law.

40. A well-documented example of this scheme is seen in the Lincoln County action styled *TELI v. Betty Ann Martin*, 10-CI-00197. In that action, the tax lien in question was

purchased for $267.33. Under KRS 134.452, the maximum prelitigation attorney's fees recoverable were $267.33.

41. In the *Martin* case, Trey Gulledge, now the COO of TELS, presented an affidavit representing to the court that Mr. Sherrow and SSA had prepared a series of letters supporting a claim for attorney's fees. According to Mr. Gulledge, TELI "incurred" $69.50 for two of the letters, $62.50 for another, and $65.83 for the last letter (the exact amount left to maximize the attorney's fees allowed by law). See Exhibit 12.

42. In fact, the letters were prepared and mailed by Michelle Le, a leased employee of LDS who, upon information and belief, is not an attorney. Ms. Le mailed the letters in question, along with thousands more, through a vendor in Lexington. One of the letters to Ms. Martin referenced in Mr. Gulledge's affidavit is attached as Exhibit 13. It was obtained through subpoena of the Lexington mailing vendor. As is almost universally the case, the same mailing batch included a confirmation letter to Ms. Le, attached is Exhibit 14. Exhibits 13 and 14 cost $.74 each to mail, and the TELS Defendants demanded nearly one hundred times that amount.

43. Kentucky law authorizes up to $700 in prelitigation attorney's fees for a single lien, depending on the amount of the certificate of delinquency. The TELS Defendants have manufactured a scheme to pocket that money in support of their dunning operation without actually paying the millions of dollars supposedly represented by these letters to any attorney. On a typical-sized certificate of delinquency, the LDS scheme by itself can more than double the 12% return authorized by law.

44. In addition to the phony attorney's fees, the TELS Defendants also include a uniform $100 charge for LDS in their payoff communications, further increasing their return through the collection of unauthorized fees. This charge is in no way authorized by any interpretation of Kentucky law. See additional examples Exhibits 1, 18, 20, 23, 30, 31, and 32. While in reality this bogus charge simply supports the same dunning operation,

10

Mr. Craig has a different explanation, discussed in connection with several of the individual counterclaim defendants below.

45. Through the BGS scheme, the LDS scheme, and other methods, the TELS Defendants dramatically increase their return on the certificates of delinquency by fraudulently inflating attorneys' fees and costs and using the United States mails and wires to assert claims for attorneys' fees and costs against taxpayers that are neither actual nor reasonable, nor authorized by statute.  These charges include:

    a.   charges for title reports that are inflated by more than 800%,

    b.   charges for warning order attorneys that are inflated by up to 900%,

    c.   charges for address checks that are *50 times* the statutory maximum cost to TELS, and which are not recoverable under Kentucky law,

    d.   charges for unreasonable attorneys' fees,

    e.   charges for attorney's fees based on work done by LDS, and

    f.   duplicated charges otherwise awarded through statutory allowances.

46. TELS claims to be the largest private purchaser of certificates of delinquency in the Commonwealth and to be active in all 120 counties.  It represents that it has purchased over 60,000 certificates of delinquency in the Commonwealth Kentucky for over $50 million.  Court records from other actions involving members of the association-in-fact enterprise indicate that the scheme is being applied in many actions and in multiple counties.

47. TELS promotes itself to public officials as a low-cost alternative to consumer loans.  In fact, after the operation of its scheme, the costs TELS charges are substantially higher than loans for the actual liabilities under the certificates of delinquency.

48. In a small percentage of claims, the scheme has been brought to the attention of judges and other court officers, the unreasonable charges have been questioned or rejected.  See Exhibits 7 and 15. Exhibit 15 contains a report from the Jefferson County Master

Commissioner's office and a separate judgment, annotated by the Master
Commissioner's office, both rejecting the BGA scheme and questioning the LDS scheme.

49. But TELS is aware that most assertions of these charges will never come to the attention
   of any court, and thus TELS continues to assert them throughout the Commonwealth.

50. When challenged by property owners with counsel, the TELS Defendants repeatedly
   settle or attempt to withdraw their claims, focusing their efforts on those unable to mount
   a defense.

### THE SCHEME IN ACTION—Rose Harper

51. On April 26, 2011 Ms. Harper and Mr. Goldsmith purchased 304 N. 17th Street. They
   had previously been tenants in the property.  Their seller, Trinity Christian Action, Inc.,
   had not paid property taxes for several years prior to the sale.  Almost immediately upon
   closing, Ms. Harper received a delinquent tax notice for tax year 2010 from Jefferson
   County Attorney Michael O'Connell.

52. On June 27, 2011 Ms. Harper entered into a payment plan with County Attorney
   O'Connell's office for the 2010 taxes, and successfully paid them off by November 2011,
   for $870.00. See Exhibit 16.

53. On August 6, 2010 TELS purchased a certificate of delinquency resulting from real
   property taxes assessed as of January 1, 2009 on 304 N. 17th Street.  These taxes were an
   obligation of Trinity Christian Action, Inc., the owner of 304 N. 17th Street on January 1,
   2009. The purchase price of the certificate of delinquency was $855.76; essentially the
   same tax amount as the 2010 bill Ms. Harper paid.

54. On July 1, 2011, three days after Ms. Harper entered into the payment plan with County
   Attorney McConnell, TELS, using the LDS scheme, sent a letter to Ms. Harper through
   the U.S. mail regarding the 2009 certificate of delinquency it had purchased for $855.76.
   The letter demanded a payoff of $1535.40. See Exhibit 17.

12

55. The July 1, 2011 letter sent by TELS/LDS was part of the fraudulent scheme to obscure the amounts sought by TELS, as evidenced by the multiple ways that the letter fails to comply with the requirements of KRS 134.490. The deficiencies include:

    a.      failure to state the intent to institute legal action to collect the amount due,

    b.      failure to state that the certificate bears interest at the statutorily specified rate,

    c.      failure to separately state the purchase price for the certificate of delinquency,

    d.      failure to separately state the interest accrued subsequent to the purchase of certificate of delinquency, and

    e.      failure to state separately the fees imposed by the third party purchaser.

56. On or about September 1, 2011 TELS/LDS sent another letter to Ms. Harper regarding the lien. The September 1 letter also fails to contain much of the information required by KRS 134.490.

57. Both the July 1 and September 1, 2011 letters were part of the LDS scheme to defraud Mr. Harper into paying attorney's fees not authorized by law.

**THE $4221.46 HARPER PAYOFF DEMAND**

58. After being served with the complaint in this action, counsel for Ms. Harper contacted HCG to request a payoff demand for the lien.

59. After multiple requests, HCG finally produced the payoff demand for $4221.46 when Ms. Harper personally came to their office on Main Street. See Exhibit 18.

60. The TELS Defendants payoff demand includes $595 for a "title report fee," supposedly for a report prepared by BGA. In fact, BGA paid DRN $259 for the actual title report, marking it up 230% or up to 800% above the usual and customary rate in Jefferson County for a residential lot. TELS, which bragged to public officials about negotiating aggressive rates with its attorneys, did not actually pay multiples of the going rate for title report on an unremarkable urban residential lot. The reasonable cost of obtaining a title

13

report sufficient to support the complaint involving 304 N. 17th Street is substantially less than $595.

61. The overcharging for title reports purportedly prepared by BGA, an entity under control of the TELS Defendants, is an essential part of the TELS Defendants' fraudulent scheme.

62. The TELS Defendants also demand $270 for a warning order fee. The payoff quote was generated weeks after the complaint in this action was filed. The complaint included three warning orders. JRP 1001(a) limits warning order fees in Jefferson County to $100 for the first defendant and $50 for each additional defendant. Although TELS claims that this number is an "estimate," HCG demanded the amount as "necessary" to redeem the tax bill in the payoff. There is no need to estimate a fee that is already capable of precise determination. Despite this, the TELS Defendants demand 135% of the actual warning order cost in this action and the $270 demand is part of a scheme by the TELS Defendants to improperly increase recoveries for the enterprise through the certificate of delinquency process.

63. The TELS Defendants also demand $100 reimbursement for a charge from LDS identified as "County PVA." According to Mr. Craig, this fee is an effort to recover for the address check from the Jefferson County PVA required by KRS 134.490(3), which has a maximum statutory cost of $2. Mr. Craig claimed that the TELS Defendants used a "belt and suspenders" approach by doing further address checks beyond simply reviewing PVA data. As the Jefferson County PVA has a well-maintained website which is a statutorily permissible source of the address information, the actual cost was almost certainly less than $2. Regardless of what TELS paid to update this information, that cost is not recoverable from property owners pursuant to KRS 134.452.

64. The complaint signed by Mr. Craig avers that the Jefferson County PVA was the actual source of the address check used in the purported notices, and Mr. Craig attached a page from the PVA website to his complaint as confirmation. See Exhibit 19.

65. The illegal charging for address checks purportedly performed by LDS, an entity under control of the TELS Defendants, is an essential part of the TELS Defendants' fraudulent scheme.

66. The TELS Defendants seek to recover $961 in attorneys' fees beyond those recoverable in the prelitigation phase of the proceedings. Given that TELS's complaint 1) contains multiple inaccurate statutory references, 2) asserts claims against Ms. Harper that fail on their face as a matter of law, 3) fails to assert claims in the body against parties named in the caption and 4) on information and belief, is generated by an automatic template populated through a database, $961 is not a reasonable attorneys' fee for preparing such a document.

67. The payoff also seeks $25 for the filing of what are apparently two *lis pendens*, as well as an additional $28 for releasing them. As of the date of the original counterclaim, no *lis pendens* appeared in the online records of the Jefferson County Clerk indexed against Rose Harper or Deddo Goldsmith. Such costs are not actual, as defined by statute. The lis pendens further assert that TELS action seeks to enforce a lien against parcel for which TELS owns no certificate of delinquency. This fraudulent overcharge was likely to end up in Mr. Craig's pocket.

68. By March 2013, the TELS Defendants' legitimate 12% interest return on its $855.76 investment in the lien on 304 N. 17th Street was $299.52. Entities under common control with TELS added approximately $2000 of bogus "attorney's fees" and "costs" to that amount, pushing the effective interest rate on the original deficiency to approximately 88%.

69. This demand for excessive fees and costs is a violation of KRS 134.452 and .990(11).

## THE SCHEME IN ACTION— Habitat Louisville

70. The TELS Defendants' scheme is very consistent from parcel to parcel.

71. On August 6, 2010, the same day that TELS purchase the certificate of delinquency on 304 N. 17th Street, TELS also purchased a certificate of delinquency resulting from unpaid real property taxes assessed as of January 1, 2009 on 509 Marret Avenue, Louisville. The purchase price of the certificate of delinquency was $842.67.

72. In December 2011, Habitat for Humanity of Metro Louisville, Inc. ("Habitat Louisville") purchased 509 Marret Avenue.

73. Habitat Louisville is a Kentucky nonprofit corporation with its principal place of business at 1620 Bank Street, Louisville, Kentucky. Habitat Louisville was created in 1986 for the purpose of building simple, decent housing in partnership with God's people in need. It is an affiliate of Habitat for Humanity International, an entity created in 1976 by Millard and Linda Fuller and dedicated to the elimination of poverty housing worldwide.

74. Habitat Louisville's headquarters is directly across 17th St. from Ms. Harper's house.

75. From the date of Habitat Louisville's closing on 509 Marret Avenue in December 2011 to the service of a complaint in January 2013, TELS did not contact Habitat Louisville regarding the certificate of delinquency.

76. After being served with a complaint, Habitat Louisville contacted HCG to request payoff information and copies of notice letters required to be sent and maintained by TELS pursuant to statute.

77. Mr. Craig responded with a payoff demand and an October 31, 2011 notice letter signed by Mr. Craig. See Exhibits 1 and 20. Although the statutes mandate letters in addition to the one provided by HCG, Mr. Craig refused to provide any other notice letters, informing Habitat Louisville that it would have to obtain such letters in discovery and would become subject to an additional award of attorneys' fees associated with that discovery. In fact, LDS maintains an automated system to provide copies of such letters to attorneys for the TELS Defendants.

78. The October 31, 2011 letter sent by Mr. Craig fails to comply with the requirements of KRS 134.490. The deficiencies include:

    a.    failure to separately state the purchase price for the certificate of delinquency,

    b.    failure to separately state the interest accrued subsequent to the purchase of certificate of delinquency,

    c.    failure to state separately the fees imposed by the third party purchaser; and

    d.    failure to provide the legal name of the third-party purchaser.

79. In addition to those failures to comply with statutory prerequisites, the letter demands sums far in excess of those allowed by KRS 134.452, which enumerates the only amounts recoverable in connection with a certificate of delinquency.

80. TELS's notice initially demands, as a lump sum prohibited by statute, $1675.77, an amount in excess of the mathematical statutory maximum amount for attorneys' fees, interest, and principal associated with the lien. TELS then demands an additional $250 for writing the very letter containing the unlawful demand, $2.20 for mailing it, $300 for a title report nowhere authorized by statute (and at least double or triple the reasonable amount in Jefferson County), and an additional $100 for checking the address to which to the send the letter (for which service the PVA is statutorily limited to a $2 charge).

81. In fact, the title report for which Mr. Craig demanded $300 did not exist on October 31, 2011, and was not even ordered from DRN until January, 2012.  Since a settlement would obviate the need for any title report, no amount for title report would be reasonable under the circumstances of the October 31, 2011 letter.

82. This amounts to a demand for 210% of the fees, costs, and interest recoverable on top of the purchase price of the certificate of delinquency, increasing the TELS Defendants' return from the 12% authorized by statute to an effective return of at least 128%.

83. This demand for excessive fees and costs is a violation of KRS 134.452 and .990(11).

84. TELS's complaint was ultimately dismissed as a result of Mr. Craig's October 31, 2011 letter's failure to comply with statutory requirements.

**THE $4440.09 HABITAT LOUISVILLE PAYOFF DEMAND**

85. In addition to the deficient October 31, 2011 letter, Mr. Craig provided Habitat Louisville with a payoff demand for the $842.67 certificate of delinquency totaling $4440.09, effective February 12, 2013.

86. The TELS Defendants' payoff demand includes $560 for "title report fee," supposedly for a report prepared by BGA. This $560 demand for a title report is up to 700% above the usual and customary rate in Jefferson County. In fact, BGA paid DRN $263.50 (another outlier in Jefferson County) for the title report, marking up the report 211%. The actual and reasonable cost of obtaining a title report sufficient to support the complaint involving 509 Marret Avenue is substantially less than $560.

87. The TELS Defendants also demand $500 for a warning order fee. The payoff quote was generated weeks after the complaint in the action was filed. The complaint included a single warning order. JRP 1001(a) limits warning order fees in Jefferson County to $100 for the first defendant and $50 each additional defendant. Although TELS claims that this number is an "estimate," Mr. Craig demanded the $500 as "necessary" to redeem the tax bill. There is no need to estimate a fee that is already capable of precise determination. Despite this, the TELS Defendants demand 900% of the actual warning order cost in that action and on information and belief the $500 demand is part of a scheme by the TELS Defendants to improperly increase recoveries in the certificate of delinquency process.

88. The TELS Defendant also demand $100 reimbursement for a charge from LDS identified again as "County PVA." According to Mr. Craig, this fee is an effort to recover for the address check from the Jefferson County PVA, which has a maximum statutory cost of $2. As the Jefferson County PVA has a well-maintained website which is a statutorily

permissible source of the address information, the actual cost was almost certainly less than $2. Regardless of what TELS paid to update this information, that cost is not recoverable from property owners pursuant to KRS 134.452.

89. The TELS Defendants also seek to recover $1,083 in attorneys' fees beyond those recoverable in the prelitigation phase of the proceedings. Given that TELS's complaint 1) contains multiple inaccurate statutory references, 2) asserts claims against Habitat Louisville that fail on their face as a matter of law, and 3) on information and belief, is generated by an automatic template populated through a database, $1,083 is not a reasonable attorneys' fee for preparing such a document.

90. By February 2013, the TELS Defendants' legitimate 12% interest return on its $842.67 investment in the lien on 509 Marret Avenue was $286.54. Entities under common control with TELS added approximately $2,100 of "attorneys' fees" and "costs" to that amount, pushing the effective interest rate to approximately 91%.

**THE SCHEME IN ACTION— Phillip and Kayrn Julian**

91. Even after the filing of this counterclaim, the scheme continued.

92. Yet another of the liens purchased by TELS on August 6, 2010 encumbered 2219 West Kentucky Street, owned by Phillip and Karyn Julian. The purchase price of the certificate of delinquency was $843.90; nearly identical to the Harper and Habitat Louisville certificates.

93. After being served with a complaint, Mr. and Mrs. Julian contacted HCG to request payoff information and copies of notice letters required to be sent and maintained by TELS pursuant to statute.

94. As was the case with Ms. Harper, HCG was nonresponsive, and it was only after they hired attorney David Branger that a payoff was finally generated, weeks after the first request. See Exhibit 21.

95. Once again, the payoff contains multiple non-actual and unreasonable fees and costs.

**THE $3993.20 JULIAN PAYOFF DEMAND**

96. The TELS Defendants' payoff demand includes $350 for "title report fee," supposedly for a report prepared by BGA. This $350 demand for a title report is up to 450% above the usual and customary rate in Jefferson County, and BGA paid DRN $250 for the actual title report.[1]  The reasonable cost of obtaining a title report sufficient to support the complaint involving 2219 W. Kentucky Street is substantially less than $350.

97. The TELS Defendants also demand $150 for a warning order fee.  The Julian payoff quote was generated over a month after the complaint in the action was filed, over two months after Habitat Louisville pointed out inappropriate warning order charges and the very same day that HCG and Mr. Craig were sued for, among other things, overcharging for warning order costs.  Nonetheless, the TELS Defendants continued with their overcharging practices.

98. The complaint included a single warning order. JRP 1001(a) limits warning order fees in Jefferson County to $100 for the first defendant and $50 each additional defendant. Although TELS claims that this number is an "estimate," Mr. Craig demanded the $150 as "necessary" to redeem the tax bill. There is no need to estimate a fee that is already capable of precise determination.  Despite this, the TELS Defendants demand 150% of the actual warning order cost in that action and on information and belief the $150 demand is part of a scheme by the TELS Defendants to improperly increase recoveries in the certificate of delinquency process.

99. The TELS Defendants also demand $100 reimbursement for a charge from LDS identified as "County PVA."  According to Mr. Craig, this fee is an effort to recover for

---

[1] These three property owners are in the minority in Jefferson County in that their actual title reports cost is greater than $100.  Of the 844 jobs DRN performed for BGA in Jefferson County, 677 had title retrieval fees of $115 or less.  The TELS Defendants most often seek $400 for title work.

the address check from the Jefferson County PVA required by KRS 134.490(3), which has a maximum statutory cost of $2. Mr. Craig claimed that the TELS Defendants used a "belt and suspenders" approach by doing further address checks beyond simply reviewing PVA data. As the Jefferson County PVA has a well-maintained website which is a statutorily permissible source of the address information, the actual cost was almost certainly less than $2. Regardless of what TELS paid to update this information, that cost is not recoverable from property owners pursuant to KRS 134.452.

100. The TELS Defendants also sought to recover $13 for filing a lis pendens in connection with the action, as well as $28 for releasing it. In fact, the lis pendens was not filed until April 24, over three weeks after the payoff was tendered, and after HGC and Mr. Craig had been sued. Yet the $41 was "necessary" to redeem the lien on April 2. This fraudulent overcharge was likely to end up in Mr. Craig's pocket.

101. The TELS Defendants also seek to recover $1,119 in attorneys' fees beyond those recoverable in the prelitigation phase of the proceedings. Given that TELS's complaint 1) contains multiple inaccurate statutory references, and 2) on information and belief, is generated by an automatic template populated through a database, $1,119 is not a reasonable attorneys' fee for preparing such a document.

102. By February 2013, the TELS Defendants' legitimate 12% interest return on its $843.90 investment in the lien on 509 Marret Avenue was $303.76. Entities under common control with TELS added approximately $2,100 of "attorneys' fees" and "costs" to that amount, pushing the effective interest rate to approximately 91%.

103. This demand for excessive fees and costs is a violation of KRS 134.452 and .990(11).

**THE SCHEME IN ACTION— James Brown**

104. While the TELS Defendants grossly overcharge property owners who end up in litigation with them, they must incur some actual fees to prepare and file complaints.

21

Their real opportunity to gouge property owners comes when a property owner responds to one of their dunning letters before a suit is filed.

105. James Brown owns a house at 3411 West Muhammad Ali Boulevard.

106. TELI purchased a 2004 Certificate Delinquency on 3422 West Muhammad Ali Boulevard from another third party purchaser.

107. On November 15, 2011, Mr. Craig mailed the letter attached as Exhibit 22 to Mr. Brown. As is the case with all of Mr. Craig's other letters, it fails to comply with KRS 134.490. The deficiencies include:

    a.   failure to separately state the purchase price for the certificate of delinquency;

    b.   failure to separately state the interest accrued subsequent to the purchase of certificate of delinquency; and

    c.   failure to state separately the fees imposed by the third party purchaser.

108. TELI's notice initially demands, as a lump sum prohibited by statute, $2,344.95. TELI then demands an additional $250 for writing the very letter containing the demand, $2.20 for mailing it, $300 for a title report nowhere authorized by statute (and at least double or triple the reasonable amount in Jefferson County), and an additional $100 for checking the address to which to the letter was sent (for which service the PVA is statutorily limited to a $2 charge).

109. Consistent with other property owners, Mr. Craig demands $300 for a title report that is not yet complete. When DRN completed the report 45 days after Mr. Craig's letter, it charged BGA $103 for the report.

110. After receiving the letter, Mr. Brown contacted Mr. Craig's office and inquired about a payment plan. Mr. Craig responded with the January 9, 2012 letter attached as Exhibit 23. That letter included both a payoff quote and a proffered "forbearance agreement" between Mr. Brown and TELI and these were sent through the U.S. mail. In addition to

the overcharges described above, the title report now cost Mr. Brown $400 (maintaining the BGA $300 margin even though absolutely no additional work was performed).

111. In addition to the already excessive attorney's fees, Mr. Craig demands an additional $500 for attorney's fees for a complaint he had not yet written, and would not write.

112. Mr. Craig also demands $300 in attorney's fees for the 24 month forbearance agreement. When combined with the attorney's fees for the unwritten complaint, Mr. Craig is effectively charging four times the already-generous statutory administrative fee for a tax lien settlement agreement. When combined with the $250 supposedly earned by writing the deficient 45-day letter, this claim for attorney's fees also matches what Mr. Craig demands for cases that he actually plans to litigate.

113. Among the representations made by the TELS Defendants in the settlement agreements are that "TELI is lawfully entitled to collect the amount shown for the above described tax bill," and "statutorily recoverable administrative and attorney's fees, costs and accumulated statutory interest is $3,659.48."

114. Those statements are false, as much of the amount claimed is fabricated by the BGA scheme, the LDS scheme, and other misrepresentations of the TELS Defendants.

115. The TELS Defendants made those statements with the intent of causing Mr. Brown to rely upon them to his detriment.

116. Mr. Brown did, in fact, rely upon the false statements of the TELS Defendants in executing the forbearance agreement.

117. Mr. Brown paid the TELS Defendants under the forbearance agreement, including sums falsely represented by the TELS Defendants to be statutorily authorized.

118. The amounts collected by the TELS Defendants include prelitigation attorney's fees of $591.68, the statutory maximum given the amount of Certificate of Delinquency. As represented by the TELS Defendants to the Kentucky courts, those prelitigation fees are

23

based on letters purportedly written by SSA and Mr. Sherrow, including the letter attached as Exhibit 24. In fact, that letter was prepared by LDS, not SSA, cost $.77 to mail, and cannot support any claim for attorney's fees. By January, 2012, the legitimate return of TELS Defendants Certificate of Delinquency in connection with 3411 West Muhammad Ali Boulevard was approximately $870 in connection with the 24 month settlement agreement. The demand of $3,659.48 is almost four times that amount, and includes bogus fees and costs sufficient to give TELS Defendants an effective return on the Certificate of Delinquency of approximately 45%.

### THE SCHEME IN ACTION— Theresa Cambron

119. Following illnesses that resulted in the implantation of defibrillator, dependency on oxygen, and finally a determination of total disability, Theresa Cambron did not pay property taxes on her home from 2004 through 2008. TELI purchased certificates of delinquency for 2004, 2005, 2006, and 2008.

120. After the certificates of delinquency were purchased, the LDS letters started traveling through the U.S. Mail, including multiple examples reprinted from BlueGrass Mailing Services files attached as Exhibit 25.

121. By June 2010, there was no further perceived value to the TELS Defendants to send more letters, so TELI file the simple form complaint attached as Exhibit 26.

122. Ms. Cambron promptly contacted TELI's lawyer to attempt to settle, and he mailed her the settlement agreement/agreed judgment attached as Exhibit 27.

123. Of the $7,323.84 that the agreement required Ms. Cambron to pay, $3,095.82 represents the principal amount of the certificates of delinquency, $1,308.45 represents interest at 12% on the certificates of delinquency, and $2,695 represents the TELS Defendants' claimed prelitigation attorney's fees, litigation attorney's fees, administrative fees, and title search costs.

124. Those purported fees break down to $938 for prelitigation attorney's fees, $957 for litigation attorney's fees, $400 for title search costs, and $400 for administrative fees for releasing four lien recordings (for which the total clerk's fee is $52).

125. In fact, TELI had not paid $938 in actual, reasonable prelitigation attorney's fees and, in any event, this amount exceeds the statutory maximum allowed under KRS 134.452. This is the LDS scheme at work.

126. Additionally, the $957 demanded is not a reasonable attorney's fee for preparing a form complaint and agreed judgment, which is all counsel for TELI did in connection with the action. In fact, TELI's attorney in the Cameron action, Donald Jones, had filed an essentially identical complaint the very same day against Arnold Coates. See Exhibit 28. In a subsequent affidavit supporting a claim for $997 in fees for preparing an essentially identical complaint, Mr. Jones claims to have spent two hours at $295 per hour filling in the form after his partner spent one hour, also at $295 per hour, on title examination. See Exhibit 29. This is on top of the $400 that the TELS Defendants want for BGA's "work" associated with the actual title report performed by legitimate vendor DRN, which cost $89.25. None of these charges are reasonable, and the affidavit reflects that TELS won't even agree to pay these amounts, but purports to pay approximately one half of the amounts claimed for the work allegedly done. Even this amount is likely contingent. When the property owner is paying, however, there is no discount.

127. The TELS Defendants pay an average of $106 for title reports sufficient to file a foreclosure action, and $400 is not a reasonable demand for an event of title work in connection with Ms. Cambron's property.

128. The representations regarding prelitigation attorney's fees, the reasonableness of the litigation attorney's fees and the purported legal expense for title search in the settlement agreement/agreed judgment tendered to Ms. Cambron by the TELS Defendants were false, and were made with the intent that Ms. Cambron rely upon them.

129. Ms. Cambron did rely upon the false statements as justification for payments that she was legally obligated to pay when, in fact, she was not. As a result of these misrepresentations, Ms. Cambron signed the agreed judgment, and returned it to counsel for TELI, who subsequently arranged for it to be entered in the action.

130. Ms. Cambron made payments towards the settlement agreement/agreed judgment, causing her damages and injury to her property based upon the fraudulent misrepresentations contained in the settlement agreement/agreed judgment tendered to her.

### THE SCHEME IN ACTION— Philip Leigh

131. The TELS Defendants do not limit their victims solely to charities and elderly widows trying to stay in their long-time homes. Philip Leigh purchased and developed large tracts of land in Jefferson and Bullitt counties in the 1990s, selling several hundred lots. These developments were successful, and by 2009, Mr. Leigh retained only a few dozen lots.

132. As was the case with anyone involved in real estate development during that time, Mr. Leigh developed cash flow problems, and was unable to pay property taxes on many of these lots. Multiple private purchasers, including TELS, purchased many of these certificates of delinquency. Although Mr. Leigh received letters like all of the other class representatives, his status as a developer gave the TELS Defendants another opportunity to get at him, as he regularly sells real estate.

133. In August, 2013, Mr. Leigh was preparing to sell 6506 Brightstone, Louisville TELS owned a certificate of delinquency on that property for the 2009 tax year, for which it had paid $342.29. TELS had foreclosed on the property, and the closing attorneys contacted TELS's attorney for payoff. They received the payoff attached as Exhibit 30.

134. This payoff seeks $24 less than the statutory maximum allowed for prelitigation attorney's fee for the relatively small lien, but seeks the same illegal LDS $100 PVA fee

26

as Mr. Craig's payoffs, a $400 title search fee for a report that BGA purchased for $101.50, and $901 in litigation attorney's fees for a case where TELS's attorneys had to amend their own complaint and do nothing else.

135. The total interest on this lien was $126.54. The TELS Defendants added $718 in bogus charges to this amount, plus the difference between the claimed litigation fees and the lesser amount the TELS Defendants almost unquestionably paid to their attorney.

136. After Mr. Leigh objected to the outrageous expenses, the TELS Defendants actually reduced their demand by $500, making their illegal margin closer to 200% rather than the original 600%.

137. Examples of additional payoff demands from TELI to Mr. Leigh, both personally and to Third Century, are attached as Exhibits 31 and 32. Exhibit 31 includes claims for attorney's fees that exceed the statutory maximum and the illegal "warning letter update fee." Exhibit 32 contains attorney's fees generated through the LDS scheme, $550 in claimed title report expense for which BGA paid $145, and $800 in litigation attorney's fees for a form complaint.

138. Mr. Leigh has paid the TELS Defendants for multiple liens which included many of the bogus charges described above, causing him injury to his property as a result of the fraudulent scheme of the TELS Defendants.

**THE SCHEME IN ACTION— Emil Walther III**

139. Emil Walther III lives at the site of his family's florist shop and greenhouses, a short walk from Churchill Downs. Following his father's death, Mr. Walther had difficulty keeping up with his tax obligations. On the same day in August 2010 that TELS purchased the certificates of delinquency associated with Rose Harper, the Julians, and Habitat Louisville, it purchased a single certificate of delinquency encumbering Mr. Walther's property.

140. In order to rack up bogus "attorney's fees," the LDS scheme accelerated, sending Mr. Walther letters every other month by the end of 2011. See Exhibit 33. Each letter added another claim for $75 for every $.74 invested.

141. Anxious to save the land on which his grandfather started their florist business, Mr. Walther contacted TELS, and received the settlement agreement attached as Exhibit 34.

142. The settlement agreement is a completely generic form, with all information relating to Mr. Walther on a payoff made exhibit to the document. It includes the statutory-maximum attorney's fee demand of $700 and $400 for title work for which the TELS Defendants paid $127.50. That cost is split in exactly the same manner rejected by the Shelby Circuit Court as set forth in Exhibits 6 and 7. The agreement also requires $490 for "preparing" the generic agreement and one-page payoff.

143. Mr. Walther has paid and continues to pay the money demanded by the TELS Defendants. See Exhibit 35.

## CLASS CERTIFICATION ALLEGATIONS

144. The Harper Counterclaimants seek certification of a class under both CR 23.02(b) and (c).

145. **Definition of the Class.** The Harper Counterclaimants bring this action on their own behalf and on behalf of a class of all Kentucky property owners, lenders, and purchasers who have had unlawful, non-actual, and unreasonable attorneys' fees and costs demanded from or extracted from them in connection with the collection of tax certificates of delinquency by the counterclaim defendants and their various associations-in-fact.

146. Excluded from the Class are the TELS Defendants; officers, directors or employees of the TELS Defendants; any entity in which the TELS Defendants have a controlling interest; the affiliates, legal representatives, attorneys, heirs or assigns of the TELS Defendants; any federal, state, or local governmental entity; persons who properly

28

execute and file a timely request for exclusion from the class; the legal representatives, successors or assigns of any such excluded persons; and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staffs. The Harper Counterclaimants reserve the right to modify or amend this Class definition if discovery and/or further investigation so necessitate.

147. **Numerosity.** The exact number of the members of the Class is unknown and not available to The Harper Counterclaimants, but it is clear that individual joinder is impracticable. TELS and TELI purchased 4032 certificates of delinquency in Jefferson County alone since 2000, and court records indicate it is active throughout the state. Class members likely number in the thousands, but can be easily identified through TELS Defendants' records, which they are required by statute to maintain.

148. **Commonality.** Common questions of fact and law exist as to all members of the Class and predominate over the questions affecting only individual members. These common questions include:

a. Are the title search costs charged by the TELS Defendants actual?

b. Are the title search costs charged by the TELS Defendants reasonable?

c. Are the prelitigation attorney's fees sought by the TELS Defendants actual and reasonable?

d. Is it reasonable to charge $100 for an address check service available from the property valuation administrator for $2 or less and which is not authorized by statute for recovery from property owners?

e. Is that $100 charge for an address check actual?

f. Are the other charges, including attorneys' fees demanded and collected by the TELS Defendants actual and reasonable?

g. Have the TELS Defendants complied with the statutes governing tax lien foreclosure, including KRS 134.452 and .490?

    h.  Are the Harper Counterclaimants and the Class entitled to relief, and what is the nature of such relief?

149. **Typicality.**  The Harper Counterclaimants' claims are typical of the claims of other members of the Class, as The Harper Counterclaimants and other Class members are entitled to declaratory and injunctive relief and/or sustained damages arising out of the wrongful and unlawful assertion of liens and/or collection of money for unreasonable and non-actual fees and charges by the TELS Defendants, based upon the same pattern of conduct.

150. **Adequate Representation**.  The Harper Counterclaimants will fairly and adequately represent and protect the interests of the members of the Class and has retained counsel competent and experienced in complex litigation and class actions.  The Harper Counterclaimants have no interest antagonistic to those of the Class, and the TELS Defendants have no defenses unique to counterclaim plaintiffs.

151. **Predominance and Superiority**.  This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the wrongful and unlawful actions of the TELS Defendants.  It would be virtually impossible for the individual members of the class to obtain effective relief from the misconduct of the TELS Defendants.  Even if members of the Class themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this complaint.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a

single Court. Economies of time, effort, and expense will be promoted and uniformity of decisions will be ensured.

152. **Policies Generally Applicable to the Class**. This class action is also appropriate for certification because the TELS Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. The challenged policies and practice of the TELS Defendants apply and affect members of the Class, and counterclaim plaintiffs' challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to the Harper Counterclaimants.

## COUNT 1 – RICO Section 1962(c)

153. The Harper Counterclaimants restate the averments of all previous paragraphs.

154. The defendants in this count are the TELS Defendants. The TELS Defendants are RICO persons who are each associated with the RICO enterprise.

155. The TELS Defendants created, participated in, and conducted the affairs of an association-in-fact RICO enterprise that affected interstate commerce through, among other thing, the use of the mails and interstate wires.

156. The purpose of the enterprise is to collect excessive, unreasonable, and non-actual fees and costs from property owners through the Kentucky tax certificate of delinquency system.

157. The TELS Defendants knowingly participated and conducted the affairs of the enterprise through a pattern of racketeering activity, individually, collectively, and through agents.

158. In order to further the fraudulent scheme, the TELS Defendants pattern of racketeering activity consisted of a continuing course of mail fraud, in violation of 18 U.S.C. 1341, and wire fraud, in violation of 18 U.S.C. 1341. The predicate acts include:

a. causing the July 1 and September 1, 2011 letters to be sent to Ms. Harper and Mr. Goldsmith;

b. sending the October 11, 2011 demand letter through the mails to Habitat Louisville's predecessor in title;

c. sending the February 12, 2013 payoff demand through the wires to counsel for Habitat Louisville;

d. causing the April 2, 2013 payoff letter to be sent to Mr. Mrs. Julian's attorney by the US mail;

e. sending the November 15, 2011 letter through the mails to Mr. Brown;

f. sending the January 9, 2012 forbearance agreement through the mails to Mr. Brown;

g. sending the fraudulent LDS letters through interstate wires from Texas to Kentucky on dozens of occasions;

h. sending invoices and other mail and wire communications between persons in the enterprise in an effort to legitimize the overcharges;

i. causing the Jefferson Circuit Court clerk to use the mails to serve the complaint in this and other actions on multiple parties in furtherance of the scheme; and

j. sending similar letters and demands to other class representatives and members.

159. For each Class member, KRS 134.452 and .490 required the TELS Defendants to send through the mails and interstate wires written notices of claimed amounts due. The TELS Defendants also sent many other letters to class representatives and members that were not required by law, but which were intended to further the fraudulent scheme. The precise date and substance of the fraudulent assertion of non-actual and unreasonable charges is contained within each letter. The TELS Defendants also utilized the mails for purposes of service of process in numerous other civil actions involving class members.

160. The false and fraudulent statements supporting the scheme are the assertions that the fees and costs in the communications are actual and reasonable, "necessary," and are otherwise authorized by statute.

161. TELS has been purchasing liens in the Commonwealth since at least 2000, and the scheme is believed to have been operating at least that long.

162. The scheme is part of an ongoing tax certificate of delinquency collection business, and there is a specific threat that the past conduct of the TELS Defendants will project into the future. TELS purchased over $250,000 worth of tax liens in Jefferson County alone in 2013 which will not be eligible for collection until later in 2014.  The fraudulent representations in mailings and wire communications are an essential part of the scheme, and will likely continue into the future.

163. As a direct and proximate result of the conduct of the TELS Defendants, the Harper Counterclaimants were injured in their property through the assertion of inflated and improper liens against their property, collection of unreasonable and non-actual attorney's fees and costs, and the need to hire counsel as a result of the assertion of those improper liens.  Other Class members were damaged when they paid non-actual and unreasonable fees and costs asserted by the TELS Defendants.

## COUNT 2 – DECLARATION OF RIGHTS

164. The Harper Counterclaimants restate the averments of all previous paragraphs.

165. An actual controversy exists between the Harper Counterclaimants and the Class on one side and the TELS Defendants on the other over the TELS Defendants' compliance with KRS 134.452 and .490.

166. The TELS Defendants seek to recover costs and attorneys' fees from the Class that are neither reasonable, actual, nor authorized by the referenced statutes and have asserted a lien against the Class's real property for those amounts.

167. TELS's statutory violations have resulted in the suspension of the accrual of all interest and fees until TELS provides proper notice.

168. The Harper Counterclaimants and the Class are entitled to a declaration of rights under the above-referenced statutes that TELS Defendants are not entitled to collect the fees

and charges they have demanded under the liens they assert against Class member's real property and that the accrual of all interest and fees have been suspended.

169. The Harper Counterclaimants and the Class are entitled to further relief based upon the declaration of rights.

## COUNT 3 – INJUNCTIVE RELIEF

170. The Harper Counterclaimants restate the averments of all previous paragraphs.

171. The Harper Counterclaimants and the Class have concrete personal rights to use their real property without unlawful interference by the TELS Defendants.

172. The Harper Counterclaimants and the Class have concrete personal right not to have unlawful, non-actual, and unreasonable attorneys' fees and costs demanded from or extracted from them in connection with the collection of tax certificates of delinquency by the TELS Defendants and their various associations-in-fact.

173. The TELS Defendants have asserted liens against the real property of the Harper Counterclaimants and the Class grossly in excess of the amount authorized by Kentucky law, impairing the Harper Counterclaimants and the Class's ability to use their real property.

174. The equities and public interest are in favor of compelling the TELS Defendants to comply with statutory limitations on fees and charges and to prohibit the TELS Defendants from seeking such charges from all Class members.

175. The Harper Counterclaimants have raised a serious question on the merits in light of undisputed evidence produced by the TELS Defendants.

176. The Harper Counterclaimants and all other Class members are entitled to temporary and permanent injunctive relief against the TELS Defendants to preclude any further statutory violations and to vindicate their concrete personal rights to use their property and to require the TELS Defendants to repay all sums collected in violation of Kentucky law.

177. That injunction should protect the property interests of the rest of the Class.

## COUNT 4 –DAMAGES PURSUANT TO KRS 446.070

178. The Harper Counterclaimants restate the averments of all previous paragraphs.

179. The TELS Defendants have violated KRS 134.452, .490, and .990(11)(a)(1) and (2).

180. The TELS Defendants' violations of those statutes and its assertion of a lien against the Class member's real property for excessive and unlawful fees have damaged all Class members in an amount in excess of the minimum jurisdictional limits of this Court.

181. Pursuant to KRS 446.070, the Class is entitled to recover damages from TELS for its violations of the above-referenced statutes.

## COUNT 5 –FRAUD

182. The Harper Counterclaimants restate the averments of all previous paragraphs.

183. The TELS Defendants' representations to Mr. Brown, Ms. Cambron, Mr. Leigh, and Mr. Walther as described above constitute fraud.

184. Identical representations have been made to some or all members of the Class, and have been relied upon in making payments to the TELS Defendants.

185. Mr. Brown, Ms. Cambron, Mr. Leigh, Mr. Walther and all other Class members who have made payments to the TELS Defendants have been damaged as a result of the fraud of the TELS Defendants, and are entitled to damages, including punitive damages, as a result of that fraud.

## COUNT 6 –FRAUDULENT INDUCEMENT

186. The Harper Counterclaimants restate the averments of all previous paragraphs.

187. The conduct of the TELS Defendants described above constitutes fraudulent inducement of Mr. Brown, Ms. Cambron, Mr. Leigh, and Mr. Walther with regard to the forbearance agreement and the settlement agreement/agreed judgment.

188. Identical representations have been made to some or all members of the Class, and have been relied upon in making payments to the TELS Defendants.

189. Mr. Brown, Ms. Cambron, Mr. Leigh, Mr. Walther and all other Class members have the right to rescind any agreement with the TELS Defendants entered into as a result of the TELS Defendants' fraudulent conduct.

## COUNT 7 –KENTUCKY CONSUMER PROTECTION ACT

190. The Harper Counterclaimants restate the averments of all previous paragraphs.

191. Mr. Brown, Ms. Cambron, and Mr. Walther entered into a transaction for the purchase of financial services primarily for personal, family or household purposes when they entered into the forbearance agreement and/or agreed judgment.

192. As a result of the TELS Defendants' use of methods, acts, and practices declared unlawful by KRS 367.170, Mr. Brown, Ms. Cambron, and Mr. Walther have been damaged, and are entitled to actual damages and equitable relief as the Court sees proper.

193. The conduct of the TELS Defendants also entitles Mr. Brown, Ms. Cambron, Mr. Walther, and all other Class members to punitive damages under this count.

194. In addition to the relief described above, Mr. Brown, Ms. Cambron, Mr. Walther and all other Class members should be awarded a reasonable attorney's fee and costs in connection with the TELS Defendants violation of the Kentucky Consumer Protection Act.

## COUNT 8-UNJUST ENRICHMENT

195. The Harper Counterclaimants restate the averments of all previous paragraphs.

196. The Harper Counterclaimants and the Class have conferred benefits upon the TELS Defendants, which have been appreciated by them, and which it is unjust that they retain.

197. The Harper Counterclaimants are entitled to restitution to the extent that the TELS Defendants have been unjustly enriched.

WHEREFORE, having stated its counterclaim against the TELS Defendants, the Harper Counterclaimants respectfully request the Court for:

a.   a declaration that the TELS Defendants have asserted a lien against the Class members' real property for unlawful and unreasonable sums;

b.   a temporary and permanent injunction requiring the TELS Defendants to demand and recover no more than the statutorily allowable fees and costs in connection with lien rights;

c.   damages caused by the TELS Defendants' unlawful conduct,

d.   treble damages for Count 1;

e.   punitive damages for Counts 5 and 7;

f.   an order requiring all TELS Defendants to divest all interests in TELS, TELI, BGA, LDS, and HCG;

g.   restitution;

h.   a reasonable attorneys' fee;

i.   the imposition of fines pursuant to KRS 134.990(11)(a)(1) and (2);

j.   leave to amend this complaint upon completion of reasonable discovery; and

k.   trial by jury on all issues so triable.

Respectfully submitted,


John H. Dwyer, Jr.
ZIELKE LAW FIRM PLLC
462 South Fourth Street, Suite 1250
Louisville KY 40202
502.589.4600
502.584.0422 (fax)
jdwyer@zielkefirm.com

# EXHIBIT

# 1

## HAYDEN CRAIG & GRANT, PLLC
718 WEST MAIN STREET, SUITE 202
LOUISVILLE, KENTUCKY 40202
(502) 690-3095
(502) 805-0705 FACSIMILE

October 31, 2011

Lela Mae Garner
7902 Gable Road
Louisville, KY 40219

RE:   NOTICE OF INTENT TO ENFORCE LIEN
509 MARRETT AVE/JEFFERSON COUNTY, KY

Dear Sir or Madam:

This firm represents Tax Ease Lien Investments 1, LLC which purchased a Certificate(s) of Delinquency for unpaid 2009 ad valorem taxes on the real property at the address listed above. Pursuant to KRS 134.490, our client is required to inform you of the following:

1.     The Certificate(s) of Delinquency is/are a lien of record against the property for which delinquent taxes are owed.

2.     The Certificate(s) of Delinquency purchased by our client bears interest at the rate provided by KRS 134.125, currently 12% per annum.

3.     If the Certificate of Delinquency is not paid, it will be subject to collection as provided by law. **Collection actions may include foreclosure.** If the Certificate of Delinquency(s) is/are not paid within forty-five (45) days of this notice, our client intends to institute legal action to collect the amount due.

4.     Pursuant to KRS 134.490(3)(f), the following information is provided to you:

a.     The legal name of our client is Tax Ease Lien Investments 1, LLC.
b.     Our client's physical and mailing address is 14901 Quorum Drive, Suite 900, Dallas, TX 75254.
c.     Our client's telephone number is (972) 233-4929 or toll-free (877) 829-3273.

5.     A complete listing of the amount due as of September 1, 2011, is broken down as follows:

| | |
|---|---|
| TE principal, interest, administrative fees & pre-litigation fees (KRS Chapter 134) | $1675.77 |
| Notice of Intent Foreclosure Warning Letter 10-30-11 (KRS 134.452(1)(c)(3)) | $250.00 |
| United States Post Office- Certificate of mailing demand letter 10-31-11 | $2.20 |
| Title Search Fee (KRS 134.452(1)(c)(3)) estimate | $300.00 |
| Lien Data Services – County PVA (KRS 134.452(1)(c)(3)) | $100.00 |
| TOTAL | $2327.97 |

**Payment plan options are available if you need time to pay the amount due to avoid foreclosure or other collection. Please call us at (502) 690-3095 to make arrangements to enter into payment plans.**

HAYDEN CRAIG & GRANT, PLLC
718 WEST MAIN STREET, SUITE 202
LOUISVILLE, KENTUCKY 40202
(502) 690-3095
(502) 805-0705 FACSIMILE

Otherwise, full payment in the amount shown in the attached statement should be by certified check or money order made out to Hayden Craig & Grant, PLLC, and mailed to us at 718 West Main Street, Suite 202, Louisville, Kentucky, 40202.

If arrangements have already been made with this office, please disregard this notice.

Sincerely,

R. Eric Craig
HAYDEN CRAIG & GRANT, PLLC

MSN: JEF301882
PM    228.01302

# EXHIBIT

# 2

LB 0 1 3 1 2 PG 0 8 8 8

CASE NO. 12-CI-401879                    JEFFERSON CIRCUIT COURT
                                         DIVISION_____

TAX EASE LIEN SERVICING, LLC                                PLAINTIFF
AKA TAX EASE LIEN INVESTMENTS 1, LLC

v.                    LIS PENDENS (NOTICE OF ACTION)

HS DEVELOPERS, LLC, ET AL                                   DEFENDANTS

                    * * * * * * * * * *

        The undersigned hereby gives the following notice pursuant to KRS 382.440:

        1.      In the above-styled action in HS Developers, LLC Circuit Court, Plaintiff, Tax

Ease Lien Servicing, LLC aka Tax Ease Lien Investments 1, LLC, seeks to enforce a tax lien

on property located in Jefferson County, Kentucky, known as **17105 Hillrock Place,**

Louisville, Kentucky, 40245, Parcel/Map ID# 21369206320000 and is more fully described

as follows:

            BEING Revised Tract 4 as shown on the Minor Subdivision
            Plat approved by the Louisville and Jefferson County
            Planning Commission on June 6, 2001, Docket No 114-01,
            which Minor Subdivision Plat is attached to and made part of
            a Deed of record in Deed Book 7671, Page 901, in the office
            of the Clerk of Jefferson County, Kentucky.

            Being the same property in which HS Developers, LLC,
            acquired an interest by virtue of a General Warranty Deed,
            dated May 23, 2003, of record in Deed Book 8148, Page 747,
            of the Jefferson County Clerk's Office.

        2.      The person(s) whose right, title, interest or claim to said real property is

involved or affected are as follows:

                a.   Tax Ease Lien Servicing, LLC aka Tax Ease Lien Investments 1,

                     LLC,

                                        1

LB 0 1 3 1 2 PG 0 8 8 9

    b.   HS Developers, LLC,

    c.   Unknown Occupants of 17105 Hillrock Pl, If any,

    d.   Polo Fields Community Association, Inc.,

    e.   Nebraska Alliance Realty Company, and

    f.   Commonwealth of Kentucky, County of Jefferson.


DATED: _MAy 21_, 2012


**THIS INSTRUMENT PREPARED BY:**


R. Eric Craig
P. Blaine Grant
J. Shannon Bouchillon
Donald J. Niehaus
HAYDEN CRAIG & GRANT, PLLC
718 West Main Street, Suite 202
Louisville, KY  40202
(502) 638-2836
(502) 805-0705 facsimile
*Counsel for Tax Ease Lien Servicing*
*a/k/a Tax Ease Lien Investments I,*
LLC

2

LB01312PG0890

**THIS INSTRUMENT EXECUTED BY:**

R. Eric Craig
P. Blaine Grant
J. Shannon Bouchillon
Donald J. Niehaus
HAYDEN CRAIG & GRANT, PLLC
718 West Main Street, Suite 202
Louisville, KY 40202
(502) 638-2836
(502) 805-0705 facsimile
*Counsel for Tax Ease Lien Servicing*
*a/k/a Tax Ease Lien Investments I,*
LLC


STATE OF KENTUCKY     )
                            ) SS
COUNTY OF JEFFERSON   )

      Signed and acknowledged before me, Notary Public in and for the State of Kentucky and County of Jefferson aforesaid by R. Eric Craig personally known to me this _21_ day of _____MAY_____, 2012.

      My commission expires: _08-18-2014_

                  NOTARY PUBLIC, STATE AT LARGE


Document No.: DN2012073806
Lodged By: HAYDEN CRAIG & GRANT
Recorded On: 05/24/2012     09:25:40
Total Fees:            13.00
Transfer Tax:           .00
County Clerk: BOBBIE HOLSCLAW-JEFF CO KY
Deputy Clerk: TERHIG

**END OF DOCUMENT**

# EXHIBIT

# 3

## BLUE GRASS ABSTRACT, LLC

## General Information

| | |
|---|---|
| **Organization Number** | 0710906 |
| **Name** | BLUE GRASS ABSTRACT, LLC |
| **Profit or Non-Profit** | P - Profit |
| **Company Type** | FLC - Foreign Limited Liability Company |
| **Status** | A - Active |
| **Standing** | G - Good |
| **State** | TX |
| **File Date** | 8/5/2008 |
| **Authority Date** | 8/5/2008 |
| **Last Annual Report** | 6/13/2013 |
| **Principal Office** | 14901 QUORUM DRIVE<br>SUITE 900<br>DALLAS, TX 75254 |
| **Registered Agent** | CT CORPORATION SYSTEM<br>306 W. MAIN STREET, SUITE 512<br><br>FRANKFORT, KY 40601 |

## Current Officers

| | |
|---|---|
| **Manager** | Philip Migicovsky |
| **Manager** | Mark Shapiro |

## Individuals / Entities listed at time of formation

| | |
|---|---|
| **Organizer** | PHIL MIGICOVSKY |

## Images available online

Documents filed with the Office of the Secretary of State on September 15, 2004 or thereafter are available as scanned images or PDF documents. Documents filed prior to September 15, 2004 will become available as the images are created.

| | | | | |
|---|---|---|---|---|
| Annual Report | 6/13/2013 | 1 page | PDF | |
| Registered Agent name/address change | 6/21/2012 | 1 page | tiff | PDF |
| Annual Report | 2/20/2012 | 1 page | PDF | |
| Annual Report | 2/16/2011 | 1 page | PDF | |
| Annual Report | 3/15/2010 | 1 page | PDF | |
| Annual Report | 7/2/2009 | 1 page | PDF | |
| Certificate of Authority (LLC) | 8/5/2008 | 1 page | tiff | PDF |

## Assumed Names

## Activity History

| Filing | File Date | Effective Date | Org. Referenced |
|---|---|---|---|
| Annual report | 6/13/2013<br>12:52:26 PM | 6/13/2013<br>12:52:26 PM | |

| | | |
|---|---|---|
| Registered agent address change | 6/21/2012 3:07:45 PM | 6/21/2012 |
| Annual report | 2/20/2012 4:24:54 PM | 2/20/2012 4:24:54 PM |
| Annual report | 2/16/2011 3:32:39 PM | 2/16/2011 3:32:39 PM |
| Annual report | 3/15/2010 5:22:56 PM | 3/15/2010 5:22:56 PM |
| Annual report | 7/2/2009 1:26:48 PM | 7/2/2009 1:26:48 PM |
| Add | 8/5/2008 10:23:35 AM | 8/5/2008 |

## Microfilmed Images

# EXHIBIT

# 4

3/13/2014

## LIEN DATA SERVICES, LLC

## General Information

| | |
|---|---|
| **Organization Number** | 0710908 |
| **Name** | LIEN DATA SERVICES, LLC |
| **Profit or Non-Profit** | P - Profit |
| **Company Type** | FLC - Foreign Limited Liability Company |
| **Status** | A - Active |
| **Standing** | G - Good |
| **State** | TX |
| **File Date** | 8/5/2008 |
| **Authority Date** | 8/5/2008 |
| **Last Annual Report** | 6/13/2013 |
| **Principal Office** | 14901 QUORUM DRIVE<br>SUITE 900<br>DALLAS, TX 75254 |
| **Registered Agent** | CT CORPORATION SYSTEM<br>306 W. MAIN STREET, SUITE 512<br><br>FRANKFORT, KY 40601 |

## Current Officers

| | |
|---|---|
| **Manager** | Philip Migicovsky |
| **Manager** | Mark Shapiro |

## Individuals / Entities listed at time of formation

| | |
|---|---|
| **Organizer** | PHIL MIGICOVSKY |

## Images available online

Documents filed with the Office of the Secretary of State on September 15, 2004 or thereafter are available as scanned images or PDF documents. Documents filed prior to September 15, 2004 will become available as the images are created.

| | | | | |
|---|---|---|---|---|
| Annual Report | 6/13/2013 | 1 page | PDF | |
| Registered Agent name/address change | 6/21/2012 | 1 page | tiff | PDF |
| Annual Report | 2/20/2012 | 1 page | PDF | |
| Annual Report | 2/16/2011 | 1 page | PDF | |
| Annual Report | 3/15/2010 | 1 page | PDF | |
| Annual Report | 7/2/2009 | 1 page | PDF | |
| Certificate of Authority (LLC) | 8/5/2008 | 1 page | tiff | PDF |

## Assumed Names

## Activity History

| Filing | File Date | Effective Date | Org. Referenced |
|---|---|---|---|
| Annual report | 6/13/2013<br>1:15:22 PM | 6/13/2013<br>1:15:22 PM | |

| Registered agent address change | 6/21/2012 3:06:50 PM | 6/21/2012 |
| Annual report | 2/20/2012 3:18:38 PM | 2/20/2012 3:18:38 PM |
| Annual report | 2/16/2011 3:30:13 PM | 2/16/2011 3:30:13 PM |
| Annual report | 3/15/2010 5:26:58 PM | 3/15/2010 5:26:58 PM |
| Annual report | 7/2/2009 1:29:01 PM | 7/2/2009 1:29:01 PM |
| Add | 8/5/2008 10:36:29 AM | 8/5/2008 |

## Microfilmed Images

# EXHIBIT

# 5



# Document Retrieval Network

101 Data Farm Rd. Falmouth KY, 41040
Phone (859) 654-2890 Fax (859) 654-2892

| To: | Blue Grass Abstract, LLC | Loan Number: JEF301589 |
|---|---|---|
| Attn: | Monthly Project | |
| Address: | 14901 Quorum Drive Suite 900 | Job Number: January Order |
| | Dallas, TX 75254 | |
| Phone: | Fax | |

## Completed Order Report

| County: | Jefferson |
|---|---|
| Borrower: | HARPER ROSE & GOLDSMITH DEDDO, |
| Property Address: | 304 N 17TH ST , KY |
| Lender: | |
| Loan Amt: | $0.00 |
| PIN: | 03015F02320000 |
| Legal Desc.: | |
| Loan Date: | |
| Rec. Date: | |
| Instrument #: | |
| Book/Page: | |

Comments:

Pendleton DataFarm, LLC, dba Document Retrieval Network (DRN) personally guarantees to Blue Grass Abstract, LLC the accuracy of our finished product up to a liability of $1,500.00 with the following exceptions. If the county PVA records do not show a deed reference for a property then it will be the sole responsibility of Blue Grass Abstract, LLC to determine if the title search was done on the correct property. In no event shall DRN be liable to Blue Grass Abstract, LLC for any amount above $1,500.00. This report is an abstract of title only and only includes public records found in the property section of the county recorder's, PVA, and clerk's office during the scope of our search. This report does not make any representation with regard to (a) any interests not of record for the period of this search; (b) accuracy or completeness of the index books and electronic records of the county recording offices, including misspelled names and records improperly indexed; (c) any facts that would be revealed by an examination of the records of the State Courts, Federal District Courts, and Federal Bankruptcy Courts; (d) any questions of security interests or liens under the Uniform Commercial Code; (e) accuracy of any records in Elliot County KY; (f) correct property being searched when the PVA does not list the correct deed book and page number. DRN agrees to immediately inform Blue Grass Abstract, LLC in the case of discrepancies/inaccuracies being found.

Order #: 819551 _____

Date Search Performed: _____

Effective Date: _____

Name Provided: HARPER ROSE GOLDSMITH DEDDO _____

Address Provided: 304 N 17TH ST KY _____

County: Jefferson _____

[ ] This search should only include the property encumbered in the tax bill purchased by Tax Ease. Other parcels, such as mobile homes or adjoining parcels taxed separately, even if the same PIN should not be reported

Tax Search Checklist
[✓] Copy of property card from PVA
[✓] Copy of current year county and city tax bills
[ ] Copy of all delinquent tax bills (city and county) for ALL owners in the past 11 years on this property.
[✓] Provide a copy of the lien filed on purchased taxes. If a lien was not filed provide a printout showing they were purchased and make note there was no lien. (Information only needed on taxes purchased by Tax Ease Lien)

NOTE: Taxes are filed in the name of the person who owned property on Jan 1st of each year. Take special care during the year of any property transfers to check under the name of the seller also.

TAX INFORMATION

Parcel/Map #: 03-015F-0232~0000        Land: 5,000

Brief Legal: 17TH ST WS 20' 45' N OF Duncan ST.    Improvements: + 29,000

Mobile Home ☑ No ☐ Yes _____    Total: $ 34,000

VIN# _____    Exemptions: - _____

TLS ☑ No ☐ Yes _____    Type of Exemption: _____

AOC ☑ No ☐ Yes _____    Total Taxable Value: $ 34,000

CITY TAXES

Do city taxes apply for this property? ☐ No ☑ Yes   City Name: Louisville URBAN

Tax Year: ___   Tax Bill #: ___

Taxes Due $: ___   Date Due: ___   Amount Pd: $ ___   Date Pd: ___

Were there any delinquent city taxes found?   ☐ No ☑ Yes

Year: 2003   Bill# 2003034669225 Payoff Amount $ 499.44

Year: ___   Bill# ___   Payoff Amount: $ ___

Year: ___   Bill# ___   Payoff Amount: $ ___

Year: ___   Bill# ___   Payoff Amount: $ ___

TELS-000071

Order #: 619551 _____

**CURRENT YEAR COUNTY TAXES**

Tax Year: _2011_   Tax Bill #: _P.I.N._

Taxes Due $: _438.97_   Date Due: _12/31/11_   Amount Pd: $_____   Date Pd: _____

**DELINQUENT COUNTY TAXES?   No   Yes   (Payoff not needed.)**

| | | | | |
|---|---|---|---|---|
| Year: _2001_ | Bill# _2001030014149_ | | Year: _2011_ | Bill# _201103 0002541_ |
| Year: _2002_ | Bill# _2002 030015262_ | | Year: _____ | Bill# _____ |
| Year: _2003_ | Bill# _2003030002276_ | | Year: _____ | Bill# _____ |
| Year: _2004_ | Bill# _2004030002096_ | | Year: _____ | Bill# _____ |
| Year: _2006_ | Bill# _200603 0001992_ | | Year: _____ | Bill# _____ |
| Year: _2007_ | Bill# _200703 0002064_ | | | |

**SOLD COUNTY TAXES**                                   _Delayed Filing_

Year: _2005_   Bill# _2005030002047_   Holder Name: _Vesta Holding_

BK/PG _1114 X 261_   Date Filed _11/2/09_   ✓

Year: _2008_   Bill# _2008030002224_   Holder Name: _Southern Tax Services, LLC_

BK/PG _1097 X 487_   Date Filed _8/20/09_

Year: _2009_   Bill# _2009030007099_   Holder Name: _Tax Ease_

BK/PG _1180 X 651_   Date Filed _8/13/10_

Year: _____   Bill# _____   Holder Name: _____

BK/PG _____   Date Filed _____

Year: _____   Bill# _____   Holder Name: _____

BK/PG _____   Date Filed _____

Year: _____   Bill# _____   Holder Name: _____

BK/PG _____   Date Filed _____

Year: _____   Bill# _____   Holder Name: _____

BK/PG _____   Date Filed _____

Year: _____   Bill# _____   Holder Name: _____

BK/PG _____   Date Filed _____

TELS-000072

①

Order #: 819551

DEEDS CHECKLIST

[ ] Copy of current deed and out-sales. Information only on all prior deeds.
    -Take out of family to a good warranty deed.
    - If under Land Contract, please provide copy of Land Contract and current deed.

Type of Deed: GWD

Grantor: TRINITY CHRISTIAN ACTION, INC,

Grantee: ROSE HARPER unmarried, and Deddo Goldsmith, unmarried

Dated: 4/26/11   Recorded: 5/2/11   Bk/Pg: 9714 X 619   Consideration: $ 3,900.00

Notes: Deed contains payment agreement, and agreement to pay back taxes

Type of Deed: GWD

Grantor: ANDREW RADER and PATRICIA RADER, H/w

Grantee: TRINITY CHRISTIAN ACTION, INC.

Dated: 3/21/94   Recorded: 3/21/94   Bk/Pg: 6431 X 658   Consideration: $ 4,500.00

Notes: Deed contains multiple parcels

Type of Deed: GWD

Grantor: ANDREW Rader and PATRICIA Rader, H/w BOTH w/ L.P; SHELBY Rader, unmarried, w/ Lmd P

Grantee: ANDREW Rader and PATRICIA Rader, H/w; and TRINITY CHRISTIAN, Action, Inc.

Dated: 11/13/92   Recorded: 11/18/92   Bk/Pg: 6247 X 395   Consideration: $ 4,500.00

Notes: * BOTH WITH LIFE ESTATE

Type of Deed: QCD

Grantor: TRINITY CHRISTIAN ACTION, INC.

Grantee: ANDREW Rader and PATRICIA Rader, H/w

Dated: 4/9/91   Recorded: 4/10/91   Bk/Pg: 6052 X 544   Consideration: $ VALUABLE

Notes: _____

Type of Deed: GWD

Grantor: ANDREW Rader and PATRICIA Rader, H/w

Grantee: TRINITY CHRISTIAN Action, Inc

Dated: 6/26/90   Recorded: 10/3/90   Bk/Pg: 6000 X 176   Consideration: $ -0-

Notes: _____

TELS-000073

Order # 819551

DEEDS CHECKLIST

[ ] Copy of current deed and out-sales. Information only on all prior deeds.
   -Take out of family to a good warranty deed.
   - if under Land Contract, please provide copy of Land Contract and current deed.

Type of Deed: _QCD_

Grantor: _BILL D. HARPER And ROSE M. HARPER his wife_

Grantee: _ANDREW RADER And PATRICIA RADER H/w_

Dated: _7/12/90_  Recorded: _7/18/90_  Bk/Pg: _5976 X10_  Consideration. $ _-0-_

Notes: _See "CONTRACT For Deed" on SEPARATE SHEET - THIS is included_
_BECAUSE IT is made PART OF THE CHAIN_

Type of Deed: _QCD_

Grantor: _BILL D. HARPER And ROSE M. HARPER, H/w_

Grantee: _ANDREW RADER And PATRICIA RADER, H/w_

Dated: _2/22/88_  Recorded: _9/14/88_  Bk/Pg: _5804 X330_  Consideration. $ ____

Notes: _____

Type of Deed: _GWD_

Grantor: _ANDREW RADER And PATRICIA RADER, H/w_

Grantee: _ROSE M. HARPER And BILL D. HARPER, H/w_

Dated: _2/22/88_  Recorded: _4/1/88_  Bk/Pg: _5759 X852_  Consideration: $ ____

Notes: _____

Type of Deed: _QCD_

Grantor: _BILL D. HARPER & ROSE M. HARPER, H/w_

Grantee: _ANDREW RADER And PATRICIA RADER, H/w_

Dated: _9/2/87_  Recorded: _4/1/88_  Bk/Pg: _5759 X847_  Consideration: $ ____

Notes: _____

Type of Deed: _GWD_

Grantor: _ANDREW RADER And PATRICIA RADER, H/w_

Grantee: _BILL D. HARPER And ROSE M. HARPER, H/w_

Dated: _9/2/87_  Recorded: _10/7/87_  Bk/Pg: _5717 X565_  Consideration: $ ____

Notes: _____

③

Order #: 819551

DEEDS CHECKLIST

[ ] Copy of current deed and out-sales. Information only on all prior deeds.
    -Take out of family to a good warranty deed.
    - if under Land Contract, please provide copy of Land Contract and current deed.

Type of Deed: QCD

Grantor: Bill D. Harper and Rose M. Harper, H/w

Grantee: Andrew Rader and Patricia Harper, H/w

Dated: 5/7/86   Recorded: 10/7/87   Bk/Pg: 5717 X 572   Consideration: $ -0-

Notes: _____

Type of Deed: GWD

Grantor: Andrew Rader and Patricia Rader, H/w

Grantee: Bill D Harper And Rose M. Harper, H/w

Dated: 5/7/86   Recorded: 5/8/86   Bk/Pg: 5578 X 985   Consideration: $ -0-

Notes: _____

Type of Deed: GWD

Grantor: West End Supermarket, Inc

Grantee: Andrew Rader and Patricia Rader, H/w

Dated: 7/1/74   Recorded: 11/6/74   Bk/Pg: 4760 X 31   Consideration: $ 5,500.00

Notes: _____

Type of Deed: _____

Grantor: _____

Grantee: _____

Dated: _____   Recorded: _____   Bk/Pg: _____   Consideration: $ _____

Notes: _____

Type of Deed: _____

Grantor: _____

Grantee: _____

Dated: _____   Recorded: _____   Bk/Pg: _____   Consideration: $ _____

Notes: _____

Order #:  819551

DEEDS CHECKLIST

[✓] Copy of current deed and out-sales. Information only on all prior deeds.
   -Take out of family to a good warranty deed.
   - if under Land Contract, please provide copy of Land Contract and current deed.

Type of Deed: _CONTRACT FOR DEED_
Grantor: _Andrew Raden and Patricia. Raden H/W_
Grantee: _Bill D. Harper And Rose M. Harper. H/W_
Dated: _8/10/88_   Recorded: _9/14/88_   Bk/Pg: _5804 X 366_   Consideration: $ _6,705.00_

Notes: _____
          _See PAGE ② of DEED chain_
Type of Deed: _____  _NOTE on Deed 5476 X 10_

Grantor: _____

Grantee: _____
Dated: _____ Recorded: _____ Bk/Pg: _____ Consideration: $ _____
Notes: _____

Type of Deed: _____

Grantor: _____

Grantee: _____
Dated: _____ Recorded: _____ Bk/Pg: _____ Consideration: $ _____
Notes: _____

Type of Deed: _____

Grantor: _____

Grantee: _____
Dated: _____ Recorded: _____ Bk/Pg: _____ Consideration: $ _____
Notes: _____

Type of Deed: _____

Grantor: _____

Grantee: _____
Dated: _____ Recorded: _____ Bk/Pg: _____ Consideration: $ _____
Notes: _____

TELS-000076

Order #: 819551 _____

MORTGAGE CHECKLIST

[ ] Copy of first, amount, address, signature, notary, recording, and legal of all open mortgages
[ ] Copy of all assignments

Mortgage:

Signed by: _TRINITY CHRISTIAN ACTION, Inc._

Mortgagee: _ANDREW RADER & PATRICIA RADER, H/W_

Amount: $ _300,000 00_   Dated: _6/26/90_   Recorded: _10/3/90_   Bk/Pg: _DB 6000 V191_

62 _PARCELS_   Assignments: _NOT RELEASED ON OUR PARCEL_

Assignor (1): ___X___   Assignor (2): _____

Assignee (1): _____   Assignee (2): _____

Recorded: _____ Bk/Pg: _____   Recorded: _____ Bk/pg: _____

Notes: _See Deed in chain DB 6000X 176 Dated 6/26/90 Rec 10/3/90_

Mortgage:

Signed by: _____

Mortgagee: _____

Amount: $ _____ Dated: _____ Recorded: _____ Bk/Pg: _____

Assignments:

Assignor (1): _____   Assignor (2): _____

Assignee (1): _____   Assignee (2): _____

Recorded: _____ Bk/Pg: _____   Recorded: _____ Bk/pg: _____

Notes: _____

Mortgage:

Signed by: _____

Mortgagee: _____

Amount: $ _____ Dated: _____ Recorded: _____ Bk/Pg: _____

Assignments:

Assignor (1): _____   Assignor (2): _____

Assignee (1): _____   Assignee (2): _____

Recorded: _____ Bk/Pg: _____   Recorded: _____ Bk/pg: _____

TELS-000077

Order #: 819551

LIENS/JUDGMENTS/COURT CASES

[ ] For unreleased Lis Pendens, provide a copy of the case history and dismissal
[ ] Copy of all liens and judgments, including purchased tax liens.
  – Information only on purchased tax liens by Tax Ease Lien.
  – Do not rule out liens based on a woman's middle initial.

☐ None found

| Type: _Assigned Tax Lien_ | Bk/Pg/Doc/File# _1114 X 261_ | File Date: _11/2/09_ |
|  "    "    " | _1097 Y 487_ | _8/20/09_ |
| Type: _"    "    "_ | Bk/Pg/Doc/File# _1180 Y 651_ | File Date: _8/13/10_ |
| _Fed Tax Lien_ | _896 X 526_ | _896 X 526_ |
| Type: _"    "    "_ | Bk/Pg/Doc/File# _1007 X 340_ | File Date: _5/6/08_ |
| Type: _____ | Bk/Pg/Doc/File# _____ | File Date: _____ |
| Type: _____ | Bk/Pg/Doc/File# _____ | File Date: _____ |
| Type: _____ | Bk/Pg/Doc/File# _____ | File Date: _____ |
| Type: _____ | Bk/Pg/Doc/File# _____ | File Date: _____ |
| Type: _____ | Bk/Pg/Doc/File# _____ | File Date: _____ |

DIVORCE/PROBATE

List ALL names checked for probate (required) _Rose Harper,  Deddo Goldsmith_

Were any Probate cases found? ☑ No ☐ Yes  Case Number: _____
If yes, provide copies of: case history, will, petition, order appointing fiduciary/administrator/executor, and all docs pertaining to the property.

Is there a divorce case on the current owners? ☑ No ☐ Yes  Case Number: _____
If yes, provide case history, decree, property settlement pages

Were any marriage licenses found on current owner during their ownership? ☑ No ☐ Yes.  If yes, copy of marriage license

Special Notes:

    

**JEFFERSON COUNTY SHERIFF**

Louisville, Kentucky



Home
Start a New Search

## Property Tax Search

### Search by the Property ID

| Property ID: 03015F02320000 | Property Owner: HARPER ROSE 304 N 17TH ST LOUISVILLE KY 40203 | Tax Year: 2011 |
|---|---|---|
| Property Location Address: 304 N 17TH ST | | Invoice Number: 2111100 |
| Property's Taxable Assessment: $34000 | Gross Amt: $438.97 | Mortgage Company Name: NONE |

Scan Line: 03 015F 0232 0000 2111100 01 0000430207 0000438978 0000460910

| Homestead Exemption Amount: | $0 | |
|---|---|---|
| Disability Exemption Amount: | $0 | |
| **Payment Periods** | **Amount** | **If Paid By:** |
| Discount Amount: | $430.2 | 12/01/11 |
| Gross Amount: | $438.97 | 12/31/11 |
| 5% Penalty Amount: | $460.91 | 01/31/12 |
| 10% + 10% Penalty Amount: | $531.15 | 04/15/12 |
| Amount Paid: | $0 | |
| Paid on: | 00/00/0000 | |
| Balance Due: | $531.15 | |

### Would you like to run another Property ID search?

Property ID: 03015F02320000    [ Search ]

* When searching by Property ID, you must have all 14 digits exactly right.
Partial searches will not produce any results.

Disclaimer: The tax data found on this site is unofficial. For official
property tax information call: (502) 574-5479.

© 2011 Jefferson County Sheriff's Office          Home | Contacts | Site Map | Links

Jefferson County Sheriff's Office - Louisville, KY

   

JEFFERSON COUNTY SHERIFF
Louisville, Kentucky

### How We Serve

Property Taxes
Sex Offender Search
Criminal Division
    Process Unit
    Warrants / EPOs
    Auto Inspections
    Evictions
Court Security
Community Services
School Resource Officers
Concealed Deadly Weapons
Reserve Unit - Volunteer

### Other JCSO Links

Command Staff
History
Mission & Ethics Statements
Internal Affairs
Employment
Links

Home

**Property Taxes**
The Sheriff's Office is the primary property tax collector in Jefferson County. We collect approx. 550 million a year, from over 300 thousand tax...

Property Tax Search


**Process Unit**
The Sheriff's Office is responsible for the expedient service/execution of all court-ordered documents directed to the Sheriff of Jefferson...

Process Paper Search


**Sex Offender Search**
Find out if any Sex Offenders have moved in to your neighborhood or receive notifications if they do.

Sex Offender Search


**Auto Inspection**
Kentucky law requires all vehicles purchased in another state to be inspected by the Sheriff.....

Inspection Locations
What will be inspected?
What do I need to bring?


**Courts**
By order of KRS chapter 70.140, the Sheriff or a deputy, shall attend and keep order in any court of justice and shall obey the orders of said courts.

Court Docket
Items Not Allowed in Court


**Criminal Division**
The critical and timely service of 7,000 protective and domestic violence orders received annually, is of the highest priority...

Subpoenas, Summons,
Warrants, Evictions.....


© 2011 Jefferson County Sheriff's Office

Home | Contacts | Site Map | Links

http://www.jcsoky.org/

6/12/2012

Return to Bill Edit

1 / 1     100%     Business-Objects

# JEFFERSON COUNTY CLERK'S OFFICE
## TOTAL TAXES DUE STATEMENT

DESCRIPTION OF PROPERTY: 304 N 17TH ST
PARCEL ID: 03015F02320000
CALCULATED AS OF: 6/1/2012

OWNER NAME & ADDRESS:
TRINITY CHRISTIAN ACTION
INC. 628 N 19TH ST
LOUISVILLE, KY 40203

| Tax Year | Bill Number | Assessment Value | Tax | Penalties | Payments | Current Total | Jul-12 Total | Aug-12 Total | Sep-12 Total | Oct-12 Total | Suit |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2001 | 2001030814148 | 34,120.00 | 273.29 | 645.68 | 0.00 | 918.97 | 923.06 | 927.20 | 931.31 | 933.43 | |
| 2002 | 2002030015062 | 34,120.00 | 284.90 | 619.53 | 0.00 | 904.43 | 908.72 | 913.00 | 917.73 | 921.50 | |
| 2003 | 2003080459225 | 34,120.00 | 127.71 | 368.99 | 0.00 | 496.70 | 501.13 | 502.18 | 504.62 | 507.05 | |
| 2004 | 2004030002278 | 34,120.00 | 413.29 | 803.29 | 0.00 | 1,216.58 | 1,222.06 | 1,226.91 | 1,234.93 | 1,241.05 | |
| 2005 | 2005030002009 | 34,120.00 | 410.07 | 727.61 | 0.00 | 1,138.68 | 1,162.05 | 1,180.25 | 1,174.44 | 1,180.62 | |
| 2006 | 2006030001992 | 45,260.00 | 583.98 | 924.49 | 0.00 | 1,485.85 | 1,489.26 | 1,505.54 | 1,514.84 | 1,524.14 | |
| 2007 | 2007030002064 | 45,260.00 | 557.90 | 706.55 | 0.00 | 1,264.45 | 1,272.88 | 1,281.31 | 1,288.74 | 1,296.18 | |
| 2011 | 2011030002541 | 34,000.00 | 439.97 | 328.86 | 0.00 | 767.83 | 774.62 | 782.00 | 783.06 | 796.16 | |
| | | | | Totals: | 0.00 | 8,211.79 | 8,243.94 | 8,300.29 | 8,335.64 | 8,404.79 | |

MAIL CERTIFIED CHECK OR MONEY ORDER TO:

Jefferson County Clerk
Jefferson Co Clerk
527 West Jefferson St Room 100
Louisville, KY 40202

TELS-000081



## Jefferson County Clerk's Office
Louisville, KY

Bobbie Holsclaw
Jefferson County Clerk

527 W. Jefferson Street
Louisville, KY 40202
502.574.5700

| Home | Motor Vehicle & Boats | On-Line Renewal | Legal Records | Liens | Voter Info |

Search

About

Delinquent Taxes

Community Relations

E-mail Us

FAQ

Job Opportunities

Your County Clerk

Links

Contact Us

### Welcome to the
### Jefferson County Clerk's Office

Your Opinion is Valuable to Our Services

Comment Card

The Courier-Journal
courier-journal.com

Automobiles are licensed. People record legal documents. Businesses file property liens. Couples apply for marriage licenses. Notary publics are commissioned. Delinquent real estate taxes are collected. Citizens register to vote. These services, and many others, are offered at the Jefferson County Clerk's Office. By visiting our Web site, you get an up close and personal glimpse of our services and the records in our office. As you navigate your way through the site, keep in mind that while our duties are varied, our mission is clear - we are here to serve you. It is our goal to give you the type of service you deserve by handling each transaction with Value, Integrity and Performance. We believe all citizens deserve VIP service!

Chat service by BoldChat
Monday through Friday
10:00 A.M. until 2:00 P.M.

Where Do I Vote?

2012 Official Primary
Election Results

Delinquent Tax Search

Independence Day
Observance

VIP 2012 Spring
Newsletter Online

View Your Local Motor
Vehicle Branch LIVE!

New Service! Renew
Vehicle Registration by
Phone: 569-3300

TELS-000082

Return to Bill Edit

  1/1 100% Business Objects

## Receipt Of Payment

Make Check Payable To:
Jefferson Co Clerk
527 West Jefferson St
Room 100
Louisville, KY 40202

Commonwealth of Kentucky
2005 Jefferson County Standard2 Bill
Today's Date: Friday, June 1, 2012



TRINITY CHRISTIAN ACTION
INC 329 N 19TH ST
LOUISVILLE, KY 40203

Vesta Holdings
1266 WEST PACES FERRY RD #517
ATLANTA, GA 30327
404-949-9755

Bill Number: 2005030002047
Map Number:
Parcel ID: 03010F02520000
Tax District: 03

Property Location:
304 N 17TH ST

Deed Book / Deed Page:
/

Property Description:
304 N 17TH ST

Farm Acres: 0
County Clerk: Jefferson Co Clerk

### Assessment:

| Property Class | Assessed Value Tax Authority | Rate / $100 | Tax |
|---|---|---|---|
| REAL_ESTATE | 46,280.00 STATE | 0.1310 | 59.32 |
| REAL_ESTATE | 46,280.00 COUNTY | 0.1290 | 57.56 |
| REAL_ESTATE | 46,280.00 SCHOOL | 0.8250 | 283.00 |
| REAL_ESTATE | 46,280.00 URBAN SERVICES | 0.3753 | 169.03 |
| | | Total Assessment: | 569.31 |

### Adjustments:

| Adjustment Type | Assessment Type | Assessed Value | Amount |
|---|---|---|---|
| Assignment Fee | | | 11.00 |
| Advertisement Fee | | | 18.00 |
| Advertisement Fee | | | 56.63 |
| Penalty - 10% | | | 5.00 |
| Sheriff Fee | | | 97.09 |
| Monthly Delinquent Fee | | | 144.67 |
| Co. Attorney Fee | | | 72.33 |
| Co. Clerk Fee | | | 19.00 |
| County Clerk Fee | | | |
| | | Total Adjustments: | 413.62 |

### Payments:

| Receipt Number | Check / MO Number | Paid By | Teller | Payment Method | Paid Date/Time | Amount |
|---|---|---|---|---|---|---|
| 200005-2005030002047-921 | | VESTA HOLDINGS AS NO | Conversion | Cash | 7/8/2007  12:00:00AM | $982.34 |
| | | | | | Total Payments: | $982.34 |

## Balance Due: 0.00

Comments:

TELS-000083

LB 9 1 1 1 4 PG 0 2 6 1



# JEFFERSON COUNTY CLERK'S OFFICE
Bobbie Holsclaw, Jefferson County Clerk

## ASSIGNMENT OF CERTIFICATE OF DELINQUENCY
PER KRS 134.480

Date of Assignment:  2007-07-08 00:00:00.000

**Assignee Information**
VESTA HOLDINGS AS NOMINEE FOR
1266 WEST PACES FERRY ROAD #51
ATLANTA GA 30327
HEARTWOOD 16  404-949-3850

**Description of Property**
304 N 17TH ST

**Parcel ID**
03015F02320000

| Year | Bill No. | Assessed in the name of | Original Assignment Fee | Total Paid |
|------|----------|-------------------------|-------------------------|------------|
| 2005 | 2005030002047 | TRINITY CHRISTIAN ACTION | | |
| | | | $11.00 | 982.34 |
| | | | TOTAL | 982.34 |

Assigned by: _____  Deputy Clerk

This instrument was prepared by: Bobbie Holsclaw, Jefferson County Clerk
527 W. Jefferson Street, Room 100.
Louisville, KY 40202

*Bobbie Holsclaw*
Clerk

Document No.: DH2009164149
Lodged By: VESTA HOLDINGS
Recorded On: 11/02/2009        08:18:46
Total Fees:                    .00
Transfer Tax:                  .00
County Clerk: BOBBIE HOLSCLAW-JEFF CO KY
Deputy Clerk: KELTAR

## END OF DOCUMENT

TELS-000084

## VESTA HOLDINGS I, LLC

### General Information

| | |
|---|---|
| Organization Number | 0642293 |
| Name | VESTA HOLDINGS I, LLC |
| Profit or Non-Profit | Unknown |
| Company Type | FLC - Foreign Limited Liability Company |
| Status | A - Active |
| Standing | G - Good |
| State | GA |
| File Date | 7/6/2006 |
| Authority Date | 7/6/2006 |
| Last Annual Report | 8/12/2011 |
| Principal Office | 1266 W PACES FERRY ROAD, #517 ATLANTA , GA 30327 |
| Registered Agent | UNITED STATES CORPORATION AGENTS, INC. 2333 ALEXANDRIA DRIVE LEXINGTON, KY 40504 |

### Current Officers

| | |
|---|---|
| Member | John E Ramsey |

### Individuals / Entities listed at time of formation

| | |
|---|---|
| Organizer | JOHN E. RAMSEY |

### Images available online

Documents filed with the Office of the Secretary of State on September 15, 2004 or thereafter are available as s... images or PDF documents. Documents filed prior to September 15, 2004 will become available as the images ar... created.

| | | | | |
|---|---|---|---|---|
| Registered Agent name/address change | 2/16/2012 2:20:20 PM | 1 page | PDF | |
| Annual Report | 8/12/2011 | 1 page | PDF | |
| Annual Report | 9/15/2010 | 1 page | PDF | |
| Annual Report | 9/15/2009 | 1 page | PDF | |
| Annual Report | 1/17/2008 | 1 page | PDF | |
| Annual Report | 5/21/2007 | 1 page | PDF | |
| Application for Certificate of Authority | 7/6/2006 | 2 pages | tiff | PDI |

### Assumed Names

Return to Bill Edit

  

## Receipt Of Payment
Commonwealth of Kentucky
2008 Jefferson County Standard 2 Bill
Today's Date: Friday, June 1, 2012

Make Check Payable To:
Jefferson Co Clerk
527 West Jefferson St
Room 100
Louisville, KY 40202

TRINITY CHRISTIAN ACTION
INC
1849 BAIRD ST
LOUISVILLE, KY 40203

Southern Tax Services, LLC
108 West Maple Street
Nicholasville, KY 40356
859-885-1515

Bill Number: 2008030002224
Map Number:
Parcel ID: 03015F03320300
Tax District: 03

Property Location:
304 N 17TH ST

Property Description:
304 N 17TH ST

Deed Book / Deed Page:
/

Farm Acres: 0
County Clerk: Jefferson Co Clerk

### Assessment:

| Property Class | Assessed Value | Tax Authority | Rate / $100 | Tax |
|---|---|---|---|---|
| REAL_ESTATE | 45,280.00 | STATE | 0.1220 | 55.24 |
| REAL_ESTATE | 45,280.00 | COUNTY | 0.1256 | 56.53 |
| REAL_ESTATE | 45,280.00 | SCHOOL | 0.6250 | 283.00 |
| REAL_ESTATE | 45,280.00 | URBAN SERVICES | 0.3656 | 166.00 |
| | | | Total Assessment: | 561.07 |

### Adjustments:

| Adjustment Type | Assessment Type | Assessed Value | Amount |
|---|---|---|---|
| Assignment Fee | | | 28.00 |
| Advertisement Fee | | | 30.00 |
| Penalty + 10% | | | 56.11 |
| County Clerks Ad Fee | | | 5.00 |
| Mail Fee - 30day | | | 1.00 |
| Monthly Delinquent Fee | | | 27.86 |
| Lien Fee | | | 10.20 |
| Co. Attorney Fee | | | 128.01 |
| Co. Clerk Fee | | | 64.50 |
| Ad Fee - 10% | | | 61.72 |
| Commission | | | 17.67 |
| Mail Fee - 60day | | | 1.00 |
| | | Total Adjustments: | 431.87 |

### Payments:

| Receipt Number | Check / MO Number | Paid By | Teller | Payment Method | Paid Date/Time | Amount |
|---|---|---|---|---|---|---|
| 200908-2008030002224-125 | 0 | Southern Tax Services, LL | Griffin | Check | 6/11/2009  6:14:15PM | $992.94 |
| | | | | | Total Payments: | $992.94 |

**Balance Due: 0.00**

Comments:

TELS-000086

IB 0 I 0 9 7 PG 0 4 8 7



# JEFFERSON COUNTY CLERK'S OFFICE
Bobbie Holsclaw, County Clerk

## ASSIGNMENT OF CERTIFICATE OF DELINQUENCY

PER KRS 134.480

Date of Assignment: 8/11/2009

**Assignee Information**
Southern Tax Services, LLC
108 West Maple Street
Nicholasville, KY 40356
859-885-1616

**Description of Property**
304 N 17TH ST

**Parcel ID**
03015F02320000

| Tax Year | Bill Number | Assessed in the name of | Assessment | Sale Amt | Fees & Int | Rel Fee | Total Paid |
|----------|-------------|------------------------|-----------|----------|-----------|---------|-----------|
| 2008 | 2008030002224 | TRINITY CHRISTIAN ACTION | 45,280.00 | 696.57 | 298.37 | 10.00 | 964.94 |
| | | | | Certification/Assignment Fee: | | | 28.00 |
| | | | | | | TOTAL: | 992.94 |

Assigned by: _____    Deputy Clerk

This instrument was prepared by:     Bobbie Holsclaw, Jefferson County Clerk
527 West Jefferson St Room 100
Louisville, KY 40202

_Bobbie Holsclaw_ _____  Clerk

Document No.: DN2009126897
Lodged By: SOUTHERN TAX SERVICES LLC
Recorded On: 04/30/2008      11:40:47
Total Fees:                    .00
Transfer Tax:                  .00
County Clerk: BOBBIE HOLSCLAW-JEFF CO KY
Deputy Clerk: CARRRR

## END OF DOCUMENT

TELS-000087

Welcome to Fasttrack Organization Search                          Page 1 of 2

## SOUTHERN TAX SERVICES, LLC

### General Information

| | |
|---|---|
| Organization Number | 0680813 |
| Name | SOUTHERN TAX SERVICES, LLC |
| Profit or Non-Profit | P - Profit |
| Company Type | KLC - |
| Status | A - Active |
| Standing | G - Good |
| State | KY |
| File Date | 12/13/2007 |
| Organization Date | 12/13/2007 |
| Last Annual Report | 6/9/2011 |
| Principal Office | 108 WEST MAPLE STREET NICHOLASVILLE, KY 40356 |
| Managed By | Members |
| Registered Agent | WILLIAM MILES ARVIN, JR. 108 WEST MAPLE STREET NICHOLASVILLE, KY 40356 |

### Current Officers

| | |
|---|---|
| Member | Daren Carter |
| Member | William Arvin, Jr. |

### Individuals / Entities listed at time of formation

| | |
|---|---|
| Organizer | WILLIAM MILES ARVIN, JR. |

### Images available online

Documents filed with the Office of the Secretary of State on September 15, 2004 or thereafter are available as scanned images or PDF documents. Documents filed prior to September 15, 2004 will become available as the images are created.

| | | | | |
|---|---|---|---|---|
| Annual Report | 6/9/2011 | 1 page | PDF | |
| Annual Report Amendment | 12/2/2010 | 1 page | PDF | |
| Annual Report | 3/13/2010 | 1 page | PDF | |
| Principal Office Address Change | 11/5/2009 10:47:49 AM | 1 page | PDF | |
| Annual Report | 1/16/2009 | 1 page | PDF | |
| Annual Report | 6/29/2008 | 1 page | PDF | |
| Principal Office Address Change | 6/4/2008 | 1 page | tiff | PDF |
| Articles of Organization (LLC) | 12/13/2007 | 2 pages | tiff | PDF |

### Assumed Names

### Activity History

| Filing | File Date | Effective Date | Org. Referenced |
|---|---|---|---|

TELS-000088

DB 09714 PG0619  ✓ 4

## DEED

THIS DEED, made and entered into this _26th_ day of April, 2011, by and between TRINITY

CHRISTIAN ACTION, INC., a Kentucky Corporation, of 1849 Baird Street, Louisville, Kentucky

40203, Party of the First Part, and ROSE HARPER, unmarried and DEDDO GOLDSMITH, unmarried,

of 304 N. 17th Street, Louisville, KY 40203, Parties of the Second Part, mail tax bills to 304 N. 17th

Street, Louisville, KY 40203:

### WITNESSETH

That for the valuable consideration of $3,900.00, to be paid by the Parties of the Second Part to

the Party of the First Part at the rate of $300.00 per month beginning on May 3, 2011 and continuing each

ands every month thereafter on the 3rd day of the month until the entire sum is paid in full, without

interest, the Party of the First Part hereby conveys unto the Parties of the Second Part for and during

their joint lives with remainder in fee simple to the survivor of them, with covenant of

GENERAL WARRANTY the following real estate located at 302 N. 17th Street and 304 N. 17th Street,

Louisville, KY 40203 situated in Jefferson County, Kentucky and described as follows to wit;

TRACT 1   BEGINNING at the point on the West line of 17th Street 23 feet North
of Duncan Street, thence Northwardly along the West side of 17th Street
20 feet, and extending back Westwardly 90 feet, between lines parallel
with Duncan Street, to a 10 foot alley.

BEING the same property acquired by the Party of the First Part by deed
dated _July 14, 1994_ and recorded in Deed Book _06540_ Page
_0063_ in the Office of the County Clerk of Jefferson County, Kentucky.

TRACT 2   BEGINNING on the West side of 17th Street 45 feet North of Duncan Street,
thence Northwardly along the West side of 17th Street 20 feet, and extending
back Westwardly of that width throughout between lines parallel with Duncan
Street, 90 feet.

BEING a portion of the same property acquired by the Party of the First
Part by deed dated March 21, 1994 and recorded in Deed Book 06431,
Page 0658 in the Office of the County Court Clerk of Jefferson County,
Kentucky.

BK 09714 PG 0620

The Party of the First Part further covenants that it is lawfully seized of the estate hereby conveyed, that it has full right and power to convey same and that said real estate is free and clear of all liens and encumbrances, except those filed of record.

PROVIDED HOWEVER, there is excepted from the foregoing warranty and covenants of title, and this conveyance is made subject to, any existing easements, restrictions and stipulations of record, zoning laws and regulations of Jefferson County, Kentucky which may affect the property and any and all real estate taxes and/or assessments owed for the tax years of 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009 and 2010, which the Parties of the Second Part do hereby assume and agrees to pay, jointly and severally, subsequent state, county, school, city and special district taxes, and all subsequent taxes, which the Parties of the Second Part do hereby assume and agrees to pay jointly and severally.

IN TESTIMONY WHEREOF, Witness the signature of the Party of the First Part, this 26th day of April, 2011.

TRINITY CHRISTIAN ACTION, INC.

By: _Shelly Rader_
SHELLY RADER, President
Party of the First Part

### CERTIFICATION OF CONSIDERATION

We, TRINITY CHRISTIAN ACTION, INC., Grantor, and ROSE HARPER and DEDDO GOLDSMITH, Grantees, do hereby certify, pursuant to KRS Chapter 382, that the fair cash value of the property herein conveyed is $4,000.00, and we understand that falsification of the stated full estimated value is a Class D felony, subject to one to five years imprisonment and fines up to $10,000.00.

TRINITY CHRISTIAN ACTION, INC.

By: _Shelly Rader_
SHELLY RADER, President
Grantor

2

DB 09714 PG 0622

NOTARY PUBLIC, STATE AT LARGE,
KENTUCKY

THIS INSTRUMENT PREPARED BY:
No Title Examination Requested or Completed.

BRYAN N. COOMER
Attorney at Law
605 Republic Building
429 West Muhammad Ali Blvd.
Louisville, Kentucky 40202
(502) 585-2115

Document No.: DN2011054347
Lodged By: RADER
Recorded On: 05/02/2011    10:29:39
Total Fees:          24.00
Transfer Tax:         4.00
County Clerk: BOBBIE HOLSCLAW-JEFF CO KY
Deputy Clerk: AMASKO

4

END OF DOCUMENT

TELS-000091

# TRINITY CHRISTIAN ACTION, INC.

## General Information

| | |
|---|---|
| Organization Number | 0272947 |
| Name | TRINITY CHRISTIAN ACTION, INC. |
| Profit or Non-Profit | N - Non-profit |
| Company Type | KCO - Kentucky Corporation |
| Status | I - Inactive |
| Standing | G - Good |
| State | KY |
| File Date | 5/16/1990 |
| Organization Date | 5/16/1990 |
| Last Annual Report | 5/10/1993 |
| Principal Office | 529 N. 19TH. ST.<br>LOUISVILLE, KY 40203 |
| Registered Agent | SHELLY RADER<br>529 N. 19TH. ST.<br>LOUISVILLE, KY 40203 |

## Current Officers

## Individuals / Entities listed at time of formation

| | |
|---|---|
| Director | ANDREW RADER |
| Director | SHELLY SCHMITT |
| Director | KATHERINE RADER |
| Director | PATRICIA RADER |
| Director | FAYE BAILEY |
| Incorporator | ANDREW RADER |

## Images available online

Documents filed with the Office of the Secretary of State on September 15, 2004 or thereafter are available as so images or PDF documents. Documents filed prior to September 15, 2004 will become available as the images ar created.

| | | | | |
|---|---|---|---|---|
| Dissolution | 3/28/1994 | 4 pages | tiff | PDI |
| Annual Report | 7/1/1993 | 1 page | tiff | PDI |
| Amendment | 6/30/1993 | 3 pages | tiff | PDI |
| Statement of Change | 2/2/1993 | 1 page | tiff | PDI |
| Annual Report | 7/1/1992 | 1 page | tiff | PDI |
| Annual Report | 7/1/1991 | 1 page | tiff | PDI |
| Amendment | 7/10/1990 | 4 pages | tiff | PDI |

TELS-000092

Welcome to Fasttrack Organization Search                                    Page 2 of 2

    Articles of Incorporation        5/16/1990              8 pages           tiff         PDI

## Assumed Names

## Activity History

| Filing | File Date | Effective Date | Org. Referenced |
|---|---|---|---|
| Dissolution | 3/28/1994 | 3/28/1994 | |
| Amendment - Miscellaneous amendments | 6/30/1993 | 6/30/1993 | |
| Amendment - Miscellaneous amendments | 7/10/1990 | 7/10/1990 | |

## Microfilmed Images

Microfilm images are not available online. They can be ordered by faxing a Request For Corporat Documents to the Corporate Records Branch at 502-564-5687.

| | | |
|---|---|---|
| Dissolution | 3/28/1994 | 4 pages |
| Annual Report | 7/1/1993 | 1 page |
| Amendment | 6/30/1993 | 3 pages |
| Statement of Change | 2/2/1993 | 1 page |
| Annual Report | 7/1/1992 | 1 page |
| Annual Report | 7/1/1991 | 1 page |
| Amendment | 7/10/1990 | 3 pages |
| Articles of Incorporation | 5/16/1990 | 7 pages |

TELS-000093

Trinity Christian Action Inc - Louisville. KY -- OnLineYellowPages.com                Page 1 of 1



**Business Datacard**

Your Ad/Logo Here

Business Name: TRINITY CHRISTIAN ACTION INC
Phone: 502-772-0018
Location: 525 N 19th St
Louisville, KY 40203-1638

View Map
Add to ePhoneBook
SMS listing to cell phone

Home | Company | Contact | Terms of Use | Site Map

Copyright © 2012 OnlineYellowPages.com
A Yellow Pages Online, Inc. site. All Rights Reserved.

http://www.onlineyellowpages.com/details_business.asp?id=32729&state=KY&location=4...    8/9/2012

TELS-000094

BOOK 6000 PAGE 191

## REAL ESTATE SALES AGREEMENT

This Real Estate Sales Agreement this __26th__ day of June, 1990 between:
ANDREW RADER and PATRICIA RADER, his wife, 2002 Portland Ave., Louisville, Kentucky 40203, hereafter referred to as Sellers, and
TRINITY CHRISTIAN ACTION, INC., 3109 Portland Ave., Louisville, Kentucky 40212, hereafter referred to as Buyer,

WITNESSETH: Sellers agree to transfer, convey and sell to Buyer the properties listed on the attached list, which is incorporated and made a part hereof by reference as reproduced in its entirety herein, subject to the following terms and conditions:

1.     Sellers agree to sell the above properties for the sum of Three Hundred Thousand Dollars ($300,000.00) with a Vendor's lien thereon in order to secure payment of the sum of Three Hundred Thousand Dollars ($300,000.00) payable at the rate of One Thousand Dollars ($1,000.00) per month with interest on the unpaid balance at the rate of two per cent (2%) per annum beginning on the First day of July, 1990.  Furthermore Buyer shall assume full responsibility for any and all outstanding expenses as well as any future expenses of the Sellers incurred in the interest of or on behalf of the incorporation of the Buyer or the subject properties herein.

2.     Any and all tools, equipment and building materials in the possession of the Sellers, excluding personal items, shall become the property of the Buyer.  Sellers retain the right to use, dispose of, or add to such items in a manner deemed appropriate by Sellers in their sole discretion.

3.     In the event the Buyer cannot assume the management of said properties or fails to begin the payments aforesaid, then Sellers shall, at their sole option, reserve the right to retain control and management of the properties and the income and proceeds generated from said properties.

4.     Any future properties obtained by the Sellers may be sold to Buyer by Sellers at a price of no greater than twenty per cent (20%) more than the purchase price paid to obtain same by Sellers, plus expenses.  Such additional properties' prices are to be in addition to the sums mentioned in paragraph one above.

5.     Sellers reserve the right, in their sole discretion, not to take the full amount of said payment in any given month, allowing same to accumulate without interest, but capable of being withdrawn in the future.

6.     Upon the death of both of the Sellers, regardless of the amount, all indebtedness (accumulated or future amounts) owing to the Sellers shall be deemed paid in full and said properties are to be free and clear, except for any obligation owing to third parties to which all of such properties shall remain subject.

7.     Upon the deaths of the Sellers, a full release in conformity with paragraph 7 herein shall be delivered to Buyer by the personal representative of the Sellers.

8.     Additionally, Buyer shall provide for the well-being of the Sellers as follows:

     a.  Furnish a rent-free, appropriate residence with all maintenance and utilities paid.

     b.  Pay for all medical expenses not covered by Sellers' medical insurance, Social Security and/or Veterans' benefits.

BOOK 6000 PAGE 191

TELS-000095

BOOK 6000 PAGE 192

c.   Upon Seller's death(s), Buyer shall take full
responsibility for all burial expenses, including the
cost of future gravesite care and a modest headstone.

9.   Upon the execution and delivery of the Deed to the
subject properties by Sellers, Andrew Rader will continue to
advise consult and/or control the management and care of said
properties until the Buyer, through its Board of Directors,
determines that it can assume the responsibility of managing
the rental and sales of said properties, both financially and
knowledgeably.  Andrew Rader will continue to perform in the
same manner as he handled them previously, but according to
the authority vested in him as Chairman of the Board, as
provided for in the Constitution and Bylaws.

10.   Unless forced to do so due to an emergency, such complete
assumption by Buyer shall occur on the first of January of the
year mutually determined in advance for such an assumption.

11.   The name of the Buyers shall not be used in any way
with the management of said properties until the foregoing
transfer and assumption of responsibilities is completed.

12.   Sellers, as partial consideration for continuing to be
responsible for the management of said properties, shall
continue to collect all rents, profits and sale payments, to
maintain said properties and to pay any and all expenses and
taxes associated with same from such proceeds.

13.   Sellers shall hold Buyer harmless from any liability
during the transition period until the complete takeover by
Buyers is accomplished.

14.   After said takeover is complete, said management of
said properties shall be performed in accordance with the
Bylaws and the Articles of Incorporation and non-profit tax
regulations to insure that the tax-exempt status of Buyer is
kept intact.

Witness the signature of the Parties hereto this 26th
day of June, 1990.

_andrew Rader_                      _Patricia Rader_
ANDREW RADER                        PATRICIA RADER

TRINITY CHRISTIAN ACTION, INC.,
by its duly authorized agents

_Shelly Schmitt_                    _Katherine Rader_
President and its agent             Vice-President and its agent

Commonwealth of Kentucky)
County of Jefferson      )

The foregoing instrument was produced and acknowledged
by Andrew Rader and Patricia Rader, his wife, before the
undersigned this 26th day of June, 1990.

The foregoing instrument was produced and acknowledged
by Shelly Schmitt, President and duly authorized agent of
Trinity Christian Action, and Katherine Rader, Vice-President
and duly authorized agent of Trinity Christian Action, before
the undersigned this 26th day of June, 1990.

_Denver Mesker Jr._
NOTARY PUBLIC, State at Large
Kentucky
My Commission expires: 5-3-93

BOOK 6000 PAGE 192

BOOK 6000 PAGE 203

BEING the same property conveyed to Andrew Rader and Patricia Rader by Deed dated September 13, 1988, and recorded in Deed Book 5804, Page 323, in the Office of the Clerk of the County Court of Jefferson County, Ky.

Tract #47 - 2307-2309 Rowan Street

BEGINNING at a point in the North line of Rowan Street 55 feet 6 inches West of the Northwest corner of 23rd and Rowan Streets; thence Westwardly with said line of Rowan Street 60 feet, more or less, to the Southwestern corner of the tract of land described in Deed to Irving X. Small and others dated January 5, 1967, and recorded in Deed Book 4095, Page 319, in the Office of the Clerk of the County Court of Jefferson County, Kentucky; thence Northwardly and parallel with 23rd Street, 100 feet to a 20 foot alley; thence Eastwardly with the South line of said alley 46 feet, 5 inches, more or less, to the intersection of said line of said alley with a Southern line of the tract of land conveyed to Abraham Ralnick and others by Deed dated December 1, 1969, and recorded in Deed Book 4319, Page 470, in the Office of the Clerk aforesaid; thence Southwardly and parallel with 23rd Street 38 feet, 11 inches; thence Eastwardly and parallel with Rowan Street 13 feet, 6 inches; thence Southwardly and parallel with 23rd Street 161 feet, more or less, to the point of beginning.

BEING the same property conveyed to Andrew Rader and Patricia Rader by Deed dated January 5, 1988, and recorded in Deed Book 5742, Page 405, in the Office of the Clerk of the County Court of Jefferson County, Ky.

Tract #48 - 306 North 17th Street

BEGINNING on the West side of 17th Street 45 feet North of Duncan Street; running thence Northwardly along the West side of 17th Street 20 feet; and extending back Westwardly of that width throughout between lines parallel with Duncan Street. 90 feet.

BEING Parcel #1 conveyed to Andrew Rader and Patricia Rader by Deed dated February 22, 1988, and recorded in Deed Book 5976, Page 10, in the Office of the Clerk of the County Court of Jefferson County, Kentucky.

Tract #49 - 513 North 17th Street

BEGINNING on the East side of Seventeenth Street 460 feet South of Portland Avenue; thence Southwardly with the East side of 17th Street, 25 feet; thence Eastwardly at right angles to 17th Street 110 feet to an alley; thence Northwardly with the West line of said alley and said West line extended 25 feet; thence Westwardly 110 feet to the beginning.

BEING the same property conveyed to Andrew Rader and Patricia Rader by Deed dated May , 1988, and recorded in Deed Book 5858, Page 781, in the Office of the Clerk of the County Court of Jefferson County, Kentucky.

Tract #50 - 515 North 17th Street

BEGINNING on the East side of 17th Street 92-1/2 feet South of Lytle Street; running thence Southwardly with 17th Street 22-1/2 feet; thence Eastwardly at right angles to 17th Street 110 feet; thence Northwardly and parallel with 17th Street 22-1/2 feet; and thence Westwardly 110 feet to the point of beginning; together with the right to use the private alley as established in Deed dated February 8, 1870, and recorded in Deed Book 146, Page 518, in the Office of the Clerk of the County Court of Jefferson County, Kentucky.

-11-

BOOK 6000 PAGE 203

TELS-000097

BOOK 6000 PAGE 206

BEING the same property conveyed to Andrew Rader and
Patricia Rader by Deed dated November 4, 1987, and
recorded in Deed Book 5946, Page 45, in the Office of
the Clerk of the County Court of Jefferson County, Ky.

Tract #61 - 1343 South 28th Street

BEGINNING at a point in the East side of 28th Street
(formerly Amber Street) 525 feet South of Dumesnil Street;
thence Southwardly along the East line of 28th Street,
50 feet;  and extending back Eastwardly of that width
throughout, between lines parallel with Dumesnil Street,
150 feet to a 14-foot alley.  BEING Lots 59 and 60,
Block 5, Plat of Homestead Association, of record in
Deed Book 189, Page 640, in the Office of the County
Court Clerk of Jefferson County, Kentucky.

BEING the same property conveyed to Andrew Rader and
Patricia Rader by Deed dated February 5, 1985, and
recorded in Deed Book 5498, Page 275, in the Office of
the Clerk of the County Court of Jefferson County, Ky.

Tract #62 - 608 South 34th Street

BEGINNING at a point on the West side of 34th Street,
120 feet North of the Northwest corner of 34th and
Magazine Streets;  thence Northwardly along the West
side of 34th Street 40 feet;  thence Eastwardly parallel
with Magazine Street 77 feet 10 inches to the point of
beginning.

BEING the same property conveyed to Andrew Rader and
Patricia Rader by Deed dated February 25, 1977, and
recorded in Deed Book 5522, Page 295, in the Office of
the Clerk of the County Court of Jefferson County, Ky.

The Sellers, Andrew and Patricia Rader, deed with lien the
above listed properties to the aforesaid buyers, with the full
understanding that some of these properties have been previously
sold to individuals on Deed with Mortgage or on Contract for
Deed, and recorded as such.  Therefore the buyers assume the
responsibility of giving to these individual buyers a clear
Deed when they pay off the obligation in full.

The total consideration herein is $300,000.00.  The
foregoing properties are conveyed in an "as-is" condition and
subject to any contracts, liens and encumbrances of record,
all City of Louisville, Jefferson County and State taxes
presently due and that come due and payable hereafter.

IN TESTIMONY WHEREOF, witness the signatures of the
Parties of the First Part on the date above first written.

_Andrew Rader_                  _Patricia Rader_
ANDREW RADER                     PATRICIA RADER

Prepared by:
Patricia Rader
202 Portland Ave.
Lous. Ky. 40203
778-8309

BOOK 6000 PAGE 205        EN...      -14-      ...ENT

LB 00896PG0526

1872

Department of the Treasury - Internal Revenue Service

**Notice of Federal Tax Lien**

Form 668 (Y)(c)
(Rev. February 2004)

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #2 Lien Unit Phone: (800) 913-6050 | Serial Number 307048506 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Document No.: 2006130368
Lodged By: INTERNAL REVENUE SERVICE
Recorded On: 08/16/2006 02:22:42
Total Fees: 12.00
Transfer Tax: .00
County Clerk: BOBBIE HOLSCLAW-JEFF CO KY
Deputy Clerk: EVEMAY

Name of Taxpayer TRINITY CHRISTIAN ACTION INC , a Corporation

Residence    1854 PORTLAND AVE
             LOUISVILLE, KY 40203-1060

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 940 | 12/31/2004 | 61-1183152 | 10/17/2005 | 11/16/2015 | 246.50 |
| 940 | 12/31/2005 | 61-1183152 | 05/01/2006 | 05/31/2016 | 230.35 |
| 941 | 06/30/2004 | 61-1183152 | 05/02/2005 | 06/01/2015 | 2171.74 |
| 941 | 09/30/2004 | 61-1183152 | 10/10/2005 | 11/09/2015 | 617.38 |
| 941 | 12/31/2004 | 61-1183152 | 10/10/2005 | 11/09/2015 | 1943.49 |
| 941 | 03/31/2005 | 61-1183152 | 04/10/2006 | 05/10/2016 | 4344.94 |
| 941 | 06/30/2005 | 61-1183152 | 04/10/2006 | 05/10/2016 | 3993.54 |
| 941 | 09/30/2005 | 61-1183152 | 04/10/2006 | 05/10/2016 | 2332.03 |
| 941 | 12/31/2005 | 61-1183152 | 04/17/2006 | 05/17/2016 | 1999.97 |

| Place of Filing | COUNTY COURT CLERK JEFFERSON COUNTY LOUISVILLE, KY 40202 | Total | $ 17879.94 |
|---|---|---|---|

This notice was prepared and signed at    DETROIT, MI    , on this,

the   02nd   day of   August   , 2006.

END OF DOCUMENT

Signature   R. A. Mitchell
for JANE RILEY

Title REVENUE OFFICER
(502) 420-1563

22-02-3141

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60026X

TELS-000099

LB01007PG0340

| Form 668 (Y)(c) | 6152 | Department of the Treasury - Internal Revenue Service | | |
|---|---|---|---|---|
| (Rev. February 2004) | | **Notice of Federal Tax Lien** | | |

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #2 Lien Unit Phone: (800) 913-6050 | Serial Number 440747908 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer TRINITY CHRISTIAN ACTION INC , a Corporation

Residence      1849 BAIRD ST
               LOUISVILLE, KY 40203-0000

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 940 | 12/31/2006 | 61-1183152 | 04/02/2007 | 05/02/2017 | 143.54 |
| 941 | 03/31/2006 | 61-1183152 | 08/14/2006 | 09/13/2016 | 598.70 |
| 941 | 06/30/2006 | 61-1183152 | 09/04/2006 | 10/04/2016 | 646.38 |
| 941 | 09/30/2005 | 61-1183152 | 06/11/2007 | 07/11/2017 | 1153.88 |
| 941 | 12/31/2006 | 61-1183152 | 04/02/2007 | 05/02/2017 | 1614.27 |
| 941 | 06/30/2007 | 61-1183152 | 10/01/2007 | 10/31/2017 | 54.39 |

| Place of Filing | COUNTY COURT CLERK JEFFERSON COUNTY LOUISVILLE, KY 40202 | Total $ | 4211.16 |
|---|---|---|---|

This notice was prepared and signed at    DETROIT, MI                    , on this,

the    24th   day of   April      , 2008

Document No.: DN200005723
Lodged By: IRS
Recorded On: 05/06/2008  08:55:58
Total Fees:                    12.00
Transfer Tax:               .00
County Clerk: BOBBIE HOLSCLAW-JEFF CO KY
County Clerk: TERHIG      22-02-3162

Signature  R. A. Mitchell
for KEVIN R. WOOLFOLK

Title  REVENUE OFFICER
       (502) 420-1558

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part  END OF DOCUMENT   Form 668(Y)(c) (Rev. 2-2004)
                                      CAT. NO 60025X

TELS-000100

Contact My Local Office in the District of Columbia          http://www.irs.gov/localcontacts/article/0,,id=98267,00.html



Contact My Local Office in the District of Columbia

**Face-to-face Tax Help**

IRS Taxpayer Assistance Centers are your source for personal tax help when you believe your tax issue cannot be handled online or by phone, and you want face-to-face assistance.

If you need to resolve a tax problem, have questions about how the tax law applies to your individual tax return, or you're more comfortable talking with someone face-to-face, visit your local Taxpayer Assistance Center where you can spread out your records and talk with an IRS representative across the counter. No appointment is necessary - just walk in. If you prefer, you may call a local number (see chart, below) to learn about available and alternate services, and to reschedule appointments with IRS personnel. If you have an ongoing, complex tax account problem or a special need, such as a disability, an appointment may be requested. All other issues will be handled without an appointment.

Note: Before visiting your local office click on "Services Provided" in the chart below to see what services are available. Services may vary from site to site. You can get these services on a walk-in, non-advance appointment basis.

Caution: Many of our offices are located in Federal Office Buildings. These buildings may not allow visitors to bring in cell phones with camera capabilities.

Multilingual assistance is available in every office. Hours of operation are subject to change.

* Note: The phone numbers in the chart above are not toll-free for all locations. When you call, you will reach a recorded business message with information about office hours, locations and services provided in that office. You may leave a message to request an appointment for help resolving a tax issue or to reschedule an existing appointment. You will receive a return call within two business days, if face-to-face assistance is not a priority for you, you may also get help with IRS letters or resolve tax account issues by phone, toll free 1-800-829-1040 (individuals) or 1-800-829-4933 (businesses).

| City | Street Address | Days/Hours of Service | Telephone* |
|------|----------------|------------------------|------------|
| Washington, DC | 77 K Street NE Washington, DC 20002 | Monday-Friday 8:30 a.m.-4:30 p.m. Services Provided | (202) 874-6748 |

For information on where to file your tax return please see Where to File Addresses.

The Taxpayer Advocate Service: Call (202) 874-7203 or 1-877-777-4778 or see Publication 1546 , The Taxpayer Advocate Service of the IRS.

For further information, see Tax Topic 104

**Partnerships**

IRS and organizations all over the country are partnering to assist taxpayers. Through these partnerships, organizations are also achieving their own goals. These mutually beneficial partnerships are strengthening outreach efforts and bringing education and assistance to millions.

For more information about these programs for individuals and families, contact the Stakeholder Partnerships, Education and Communication Office at:

Internal Revenue Service
Metro Plex 1
8401 Corporate Drive, Suite 300
Landover, MD 20785

For more information about these programs for businesses, your local Stakeholder Liaison office establishes relationships with organizations representing small business and self-employed taxpayers. They provide information about the policies, practices and procedures the IRS uses to ensure compliance with the tax laws. To establish a relationship with us, use this list to find a contact in your state:

Stakeholder Liaison (SL) Phone Numbers for Organizations Representing Small Businesses and Self-employed Taxpayers.

*Page Last Reviewed or Updated: July 22, 2011*

8/18/2011 9:56 AM

TELS-000101

# EXHIBIT

# 6

COMMONWEALTH OF KENTUCKY
SHELBY CIRCUIT COURT
CIVIL ACTION NO.: 09-CI-820

TAX EASE LIEN INVESTMENTS 1, LLC                              PLAINTIFF

v.

TERRY L. CARRISS, FLORA M. CARRISS,
WACHOVIA BANK, N.A., ARTHUR ROBERTS,
AND DON PRATHER, TRUSTEE                                      DEFENDANTS

## AFFIDAVIT OF ATTORNEY FEES, TITLE EXPENSES and COURT COSTS

The undersigned Attorney for the Petitioner, Tax Ease Lien Investments 1, LLC, being first duly sworn, states:

1. Wilensky & Jones, LLP, Attorneys, to date, has invoiced Petitioner, Tax Ease Lien Investments 1, LLC, in attorney's fees in exchange for the litigation of the collection of the amounts due and payable with respect to the 2004 Tax Bill made the basis of this suit and the foreclosure of its lien upon the Property described in these proceedings the following itemized amounts:

   A. $205.00 for issuance of a Warning Letter and Title Examination,
   B. $552.00 for drafting and filing of the Complaint,
   C. $395.00 for drafting and filing of the Summary Judgment and Order of Sale.
   D. Further, simultaneously with the Court's granting of its Summary Judgment and Order of Sale, Wilensky and Jones will bill Plaintiff $148.00 to attend the Master Commissioner sale herein

2. Wilensky & Jones, LLP, Attorneys, was invoiced by and has paid Blue Grass Abstract, LLC, and invoiced Petitioner, Tax Ease Lien Investments 1, LLC, $195.00 for a title search for the Property made the basis of this suit

3. Wilensky & Jones, LLP, Attorneys, to date, has paid and invoiced Petitioner, Tax Ease Lien Servicing, LLC, $619.37 in filing fees, court costs and service costs in these proceedings.

4. Wilensky & Jones, LLP, Attorneys, was invoiced by and has paid and invoiced Petitioner, Tax Ease Lien Servicing, LLC, $205.00 for (a) an abstract of title (b) vetting of title; (c) service of process information for each Defendant hereto, and (d) copies of all back-up documents including copies of mortgages and other year's tax bills and/or certificates and that, the additional title search information and research significantly reduces Wilensky & Jones, LLP's time and ultimately its attorney's fees for this matter..

SHE100148 Master Stock Number
AFFIDAVIT OF ATTORNEY FEES, TITLE EXPENSES and COURT COSTS

5. Had the Defendant satisfied the claim at any given stage of the litigation prior hereto, Plaintiff would have only been invoiced the amount of attorney fees relative to that stage of the litigation.

BY: 

Donald R. Jones
Kentucky Bar #92833
Wilensky & Jones, LLP
3109 Carlisle St., Suite 100
Dallas, TX 75204
(214) 220-2130 Phone
(214) 220-2131 Fax
djones@wandjlaw.com
Attorneys for Plaintiff

STATE OF TEXAS              )
COUNTY OF DALLAS        )

Subscribed and sworn to before me by Donald R. Jones this 3rd day of November, 2011.

[SEAL]

RANDIE RAVKIND ELLIS
MY COMMISSION EXPIRES
June 25, 2015

_____
Notary Public

SHE100148 Master Stock Number
AFFIDAVIT OF ATTORNEY FEES, TITLE EXPENSES and COURT COSTS

# EXHIBIT

# 7

TENDERED ___11/7/11___

COMMONWEALTH OF KENTUCKY
SHELBY CIRCUIT COURT
CIVIL ACTION NO : 09-CI-820

TAX EASE LIEN INVESTMENTS 1, LLC                                      PLAINTIFF

v.

```
                                        ┌──────────────────────────────┐
                                        │            FILED             │
                                        │   LOWRY S. MILLER, CLERK     │
                                        │         DEC - 7 2011         │
TERRY L. CARRISS, FLORA M. CARRISS,     │ SHELBY CIRCUIT/DISTRICT COURT│
WACHOVIA BANK, N.A., ARTHUR ROBERTS,    │ BY:_____D.C.     │
AND DON PRATHER, TRUSTEE                └──────────────────────────────┘
                                                                  DEFENDANTS
```

---

## SUMMARY JUDGMENT and
## ORDER FOR SALE

---

Upon Motion for Summary Judgment by Plaintiff, Tax Ease Lien Investments 1, LLC against Defendant(s), Terry L. Carriss and Flora M. Carriss, it appearing that said Defendant(s) has failed to timely plead or otherwise defend this matter after having been served with process, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED AND ADJUDGED AS FOLLOWS:**
On motion of Plaintiff, IT IS ORDERED AND ADJUDGED THAT:

1. Plaintiff, Tax Ease Lien Investments 1, LLC, shall recover:

    a. Judgment against the against Defendant(s), Terry L. Carriss and Flora M. Carriss the following amounts:

        i. $933.64 being Plaintiffs' acquisition cost of the 2004 tax bill made the basis of this suit, plus twelve percent (12%) interest per annum from the date of Plaintiff's acquisition of said bill of August 15, 2005, (pursuant to KRS 134.500);

        ii. an administration fee of $100.00 for the preparation and filing of the Release of Lien and the Clerk's cost of recordation, (pursuant to KRS 134.452(4));

        iii. pre-litigation attorney fees of $~~751.50~~ *653.20* (pursuant to KRS 134.452(3)(a) & (b)).

    b. actual and reasonable attorney's fees of $~~1,300.00~~ *$1,000.00* arising in the prosecution of Collection Remedies and/or in Litigation (pursuant to KRS 134.452 (3)(c)); $~~400.00~~ *$100.00* *$1300.00* for (a) a title search for the Property made the basis of this suit (pursuant to KRS 134.452(3)(c)); (b) an

Page | 1

Lien Book E31, Page 76.

11. Wachovia Bank, Defendant, was made a party hereto, but failed to Answer herein and is not entitled to the protection of its interest.

12. In the event Plaintiff becomes the successful purchaser of said real estate at the commissioner's sale, and should the bid of Plaintiff be less than its liens herein, Plaintiff may comply with the terms of sale by taking credit upon its judgment without making the cash deposit or executing the sale bond as hereinabove provided.

13. This is a final and appealable judgment and there is no just reason for delay in its entry.

14. Jurisdiction is retained to confirm the sale; to distribute the proceeds; to adjudge junior liens; and for entry of such further orders as may be necessary.

15 Said property shall be sold subject to such right of redemption as may exist in favor of the Defendant.

16. Neither the Master Commissioner nor anyone in his/her employ including, but not limited to, office staff, auctioneers, or appraisers, shall act as surety on the bond of any purchaser of property at any judicial sale.

17 Sale date is set by the Master Commissioner as _____ .

Dated: _____ 12/7 _____ , 2011.

_Chas L. Ipekman_

JUDGE, SHELBY CIRCUIT COURT

CHECKED, EXAMINED AND APPROVED

BY: _____

SHELBY    CIRCUIT    COURT    MASTER COMMISSIONER

Master Stock Number SHE100148
SUMMARY JUDGMENT and
ORDER FOR SALE

# EXHIBIT

# 8

\*JEF300282-SFT-CL-0812\*

**TAX EASE LIEN SERVICING, LLC**
14901 QUORUM DRIVE, SUITE 900
DALLAS, TX 75254


HUMPHREY SAMUEL
3712 CUTLER RD
LOUISVILLE KY  40219-3712

August 6, 2012

### NOTICE OF OFFER OF SETTLEMENT

Dear Humphrey Samuel:

Our office recently sent a Notice of Delinquency and Impending Action to this mailing address. That letter stated that it was our final attempt to advise you of the status of your delinquent tax lien. Tax Ease Lien Servicing, LLC purchased the delinquent tax bill(s) from the Jefferson County taxing authorities. This bill was assessed against your property (land, house, building, or mobile home), which was located at 1525 Rowan St at the time of assessment. The parcel ID number for this property is 03015A00760000.

However, since we have not heard from you, it is clear that you may be experiencing some financial difficulties right now and you simply cannot afford to pay the outstanding balance as it stands. *We can assure you that if this account does not get settled in a timely manner, action will be taken against you and/or your property.*

However, we want to assist you in repaying this obligation and give you an opportunity for repayment while saving you money that you could use towards your other bills and obligations. With that said, *we can offer you several repayment options that may assist you in paying this obligation.* These options range from *settlements offers*, which would lower the amount due, to *payment plans* that would allow you to repay this account in smaller installments with terms agreeable to both parties. Call us today to let us know which option is best for you and your family. *We can settle this issue together as long as both parties are cooperative.*

Payment must be made in the form of a cashier's check or money order, not by personal check. Payment should be made payable to: **Tax Ease Lien Servicing, LLC** and mailed to **Tax Ease, Attn: Brandon, 14901 Quorum Drive, Suite 900, Dallas, Texas 75254.** Please reference master stock number JEF300282 on your payment.

We would prefer to provide you with the opportunity to resolve this delinquency short of litigation. You must make payment arrangements immediately to stop the filing of a legal action against you and to avoid further expenses, such as interest charges and legal fees. The next notice that you receive will be a foreclosure warning letter from our attorney.

If you have any questions, please visit our website at www.teliky.com or contact us directly at (214) 420-5999 or email us at collect@taxease.com

Sincerely,
Brandon Buchanan, Senior Loss Mitigation Analyst
Tax Ease Lien Servicing, LLC


# MASTER STOCK NUMBER:  JEF300282

# EXHIBIT

# 9

**\*ADR100002-NMR-C1-0812\***

TAX EASE LIEN INVESTMENTS 1, LLC
14901 QUORUM DRIVE, SUITE 900
DALLAS, TX 75254

JAMES R MURRAY
286 WINDHAVEN TRL
COLUMBIA KY 42728-8892

August 6, 2012

Dear James R Murray:

      Tax Ease Lien Investments 1, LLC purchased the delinquent tax bill(s) from Adair County, and the bill was assessed against your property (land, house, building, or mobile home), which was located at 170 Murray Ln at the time of assessment. The parcel ID number for this property is 51E-009.

      We know it is a brand new year, and now you may have some funds becoming available to take care of this obligation. And because it is a new year, we are ***READY TO MAKE A DEAL!!!*** I have been authorized to help you get this obligation paid in ***VERY favorable terms*** that will be in your best interest to accept.

      Call me today and let's make a deal!!! I'm wanting to sign up **hundreds of people** on payment plans and hoping to save them **thousands of dollars** with generous settlement offers to give you the best opportunity to stop the calls and letters.

      I understand bad things happen to good people and sometimes money is tight. I also understand a new year may be a golden opportunity to take care of this obligation. If you are excited about the New Year and want to settle this account once and for all – CALL ME TODAY at 214-420-5999 so I can get you qualified for savings!!!



      *I can assure you that if this account does not get settled in a timely manner; action could be taken against you personally and/or your property.* However, we still want to assist you in repaying this obligation. Call us today to let us know which option is best for you and your family.

      CALL NOW TO SAVE BIG!!! You will NOT be disappointed! All reasonable offers will be considered!

      Payment must be made in the form of a cashier's check or money order, not by personal check. Payment should be made payable to: **Tax Ease Lien Investments 1, LLC** and mailed to **Tax Ease, Attn: Brandon, 14901 Quorum Drive, Suite 900, Dallas, Texas 75254.** Please reference master stock number **ADR100002** on your payment.

      To set up payment arrangements, please contact us directly at (214) 420-5999 or email me at collect@taxease.com

Sincerely,

Brandon Buchanan, Senior Loss Mitigation Analyst

**MASTER STOCK NUMBER: ADR100002**

Tax    Ease    Lien    Investments    1,    LLC

# EXHIBIT

# 10

**\*CLY300096-HRD-CL-0812\***

TAX EASE LIEN SERVICING, LLC
14901 QUORUM DRIVE, SUITE 900
DALLAS, TX 75254

GRUBB TOLE & LAWRENCE
4880 TODD RD
LEXINGTON, KY 40515

August 6, 2012

### NOTICE OF DELINQUENCY & IMPENDING ACTION

Attention Grubb Tole & Lawrence:

This letter is our **FINAL ATTEMPT** to advise you of the status of your delinquent tax lien(s).  Tax Ease Lien Servicing, LLC purchased the delinquent tax bill(s) from the Clay County taxing authorities. This bill was assessed against your property (land, house, building, or mobile home), which was located at Hubbard Fork Rd at the time of assessment. The parcel ID number for this property is 158-00-00-004.00.

To obtain the outstanding balance of the tax lien(s) you must call as soon as possible. Payment must be made in the form of a cashier's check or money order, not by personal check.  Payment should be made payable to: **Tax Ease Lien Servicing, LLC** and mailed to **Tax Ease, Attn: Brandon, 14901 Quorum Drive, Suite 900, Dallas, Texas 75254.**  Please reference master stock number **CLY300096** on your payment.

Under Kentucky law, the delinquent taxes are your responsibility, as you currently own or once owned the subject property. To date, there has been no response to our repeated attempts to contact you and to collect on the unpaid balance of the delinquent tax lien(s).

In such situations, the Commonwealth of Kentucky provides several remedies for third party purchasers, such as our company, to collect the outstanding delinquent tax lien(s). **A judicial foreclosure action may be filed against you forcing the sale of the property at public auction.  A deficiency judgment or personal judgment may be filed against you to collect on any of the bill that remains unpaid after a foreclosure action.  Such a judgment will attach to all other property you own in the Commonwealth of Kentucky.  Additionally, you may be subject to employer-mandated wage garnishments and the seizure of your personal funds held in your bank or other financial institution.**

Tax Ease would like to avoid the expensive legal actions above.  We would prefer to provide you with the opportunity to resolve this delinquency short of litigation.  You must make payment arrangements immediately to stop the filing of a legal action against you and to avoid further expenses, such as interest charges and legal fees.  The next notice that you receive will be a foreclosure warning letter from our attorney.

If you have any questions, please contact us directly at (214) 420-5999 or email us at collect@taxease.com.

Sincerely,
Tax Ease Lien Servicing, LLC

## MASTER STOCK NUMBER:  CLY300096

# EXHIBIT

# 11

**\*312483-CL-1110112\***

*LAW OFFICES*
**SHERROW, SUTHERLAND & ASSOCIATES, PSC**
200 SOUTHLAND DR., LEXINGTON, KY 40503

HOLLAND CALVIN L
2803 HOSKINS DR
JEFFERSONVILLE IN 47130-5923

November 3, 2010

To Holland Calvin L:

The purpose of this letter is to remind you that Tax Ease Lien Servicing, LLC purchased the 2009 delinquent tax bill number 2009230011275 from the Jefferson County taxing authority. This bill is a tax lien on your property located at 5521 Ailanthus Trl, which is further identified by map number 23091100640000 arising from the unpaid real estate taxes for the 2009 tax year (the "2009 Tax Lien").

The outstanding balance of the 2009 tax lien as of November 3, 2010 is $1,442.19. This payoff is good through November 30, 2010. If you are unable to pay the tax lien by November 30, 2010, please contact our client for a later payoff amount.

### PAYMENT INSTRUCTIONS:

Payment of the *2009* tax lien, accrued interest, and any additional charges must be made in the form of a cashier's check, certified check or money order, not by personal or company check. Payment must be received in our client's office by *November 30, 2010* for the payoff to be valid.

Please make the certified check, cashier's check or money order payable to: *Tax Ease Lien Servicing, LLC*, and mail to: **14901 Quorum Drive, Suite 900, Dallas, Texas 75254.** Reference stock number *312483* on your payment to ensure the prompt application of your funds.

If you have any questions or you wish to obtain a payoff amount for a date not covered above, please visit our client's website at www.teliky.com or contact our client directly at (214) 420-5927 or email to payoffs@teliky.com.

Sincerely,

Sherrow, Sutherland & Associates, PSC

Billy Sherrow

**STOCK NUMBER: 312483**

**\*312484-CL-1110112\***

*LAW OFFICES*
**SHERROW, SUTHERLAND & ASSOCIATES, PSC**
200 SOUTHLAND DR., LEXINGTON, KY 40503


JONES ROSS
2206 BLANKENBAKER RD
JEFFERSONTOWN KY 40299-2410


November 3, 2010


To Jones Ross:

The purpose of this letter is to remind you that Tax Ease Lien Servicing, LLC purchased the 2009 delinquent tax bill number 2009230011324 from the Jefferson County taxing authority. This bill is a tax lien on your property located at 5308 Regent Way, which is further identified by map number 23093405010000 arising from the unpaid real estate taxes for the 2009 tax year (the "2009 Tax Lien").

The outstanding balance of the 2009 tax lien as of November 3, 2010 is $1,495.02. This payoff is good through November 30, 2010. If you are unable to pay the tax lien by November 30, 2010, please contact our client for a later payoff amount.

### PAYMENT INSTRUCTIONS:

Payment of the *2009* tax lien, accrued interest, and any additional charges must be made in the form of a cashier's check, certified check or money order, not by personal or company check. Payment must be received in our client's office by *November 30, 2010* for the payoff to be valid.

Please make the certified check, cashier's check or money order payable to: *Tax Ease Lien Servicing, LLC,* and mail to: **14901 Quorum Drive, Suite 900, Dallas, Texas 75254.** Reference stock number *312484* on your payment to ensure the prompt application of your funds.

If you have any questions or you wish to obtain a payoff amount for a date not covered above, please visit our client's website at www.teliky.com or contact our client directly at (214) 420-5927 or email to payoffs@teliky.com.


Sincerely,

Sherrow, Sutherland & Associates, PSC


Billy Sherrow


**STOCK NUMBER: 312484**

**\*312487-CL-111012\***

*LAW OFFICES*
**SHERROW, SUTHERLAND & ASSOCIATES, PSC**
200 SOUTHLAND DR., LEXINGTON, KY 40503

THOMAS DAVID A DR & BECKY E
2217 BONNYCASTLE AVE
LOUISVILLE KY 40205

November 3, 2010

To Thomas David A Dr & Becky E:

The purpose of this letter is to remind you that Tax Ease Lien Servicing, LLC purchased the 2009 delinquent tax bill number 2009230011526 from the Jefferson County taxing authority. This bill is a tax lien on your property located at 4405 Newport Rd, which is further identified by map number 23201504240000 arising from the unpaid real estate taxes for the 2009 tax year (the "2009 Tax Lien").

The outstanding balance of the 2009 tax lien as of November 3, 2010 is $1,980.55. This payoff is good through November 30, 2010. If you are unable to pay the tax lien by November 30, 2010, please contact our client for a later payoff amount.

### PAYMENT INSTRUCTIONS:

Payment of the *2009* tax lien, accrued interest, and any additional charges must be made in the form of a cashier's check, certified check or money order, not by personal or company check. Payment must be received in our client's office by *November 30, 2010* for the payoff to be valid.

Please make the certified check, cashier's check or money order payable to: *Tax Ease Lien Servicing, LLC*, and mail to: **14901 Quorum Drive, Suite 900, Dallas, Texas 75254**. Reference stock number *312487* on your payment to ensure the prompt application of your funds.

If you have any questions or you wish to obtain a payoff amount for a date not covered above, please visit our client's website at www.teliky.com or contact our client directly at (214) 420-5927 or email to payoffs@teliky.com.

Sincerely,

Sherrow, Sutherland & Associates, PSC

Billy Sherrow

**STOCK NUMBER: 312487**

**\*312488-CL-1110112\***

*LAW OFFICES*
**SHERROW, SUTHERLAND & ASSOCIATES, PSC**
200 SOUTHLAND DR., LEXINGTON, KY 40503

BLUE LICK APARTMENTS LTD
9306 NEW LAGRANGE RD STE 100
LOUISVILLE KY 40242

November 3, 2010

To Blue Lick Apartments Ltd:

The purpose of this letter is to remind you that Tax Ease Lien Servicing, LLC purchased the 2009 delinquent tax bill number 2009230011717 from the Jefferson County taxing authority. This bill is a tax lien on your property located at 4902 Shumake Ct, which is further identified by map number 23203001250000 arising from the unpaid real estate taxes for the 2009 tax year (the "2009 Tax Lien").

The outstanding balance of the 2009 tax lien as of November 3, 2010 is $685.24. This payoff is good through November 30, 2010. If you are unable to pay the tax lien by November 30, 2010, please contact our client for a later payoff amount.

### PAYMENT INSTRUCTIONS:
Payment of the *2009* tax lien, accrued interest, and any additional charges must be made in the form of a cashier's check, certified check or money order, not by personal or company check. Payment must be received in our client's office by *November 30, 2010* for the payoff to be valid.

Please make the certified check, cashier's check or money order payable to: *Tax Ease Lien Servicing, LLC*, and mail to: **14901 Quorum Drive, Suite 900, Dallas, Texas 75254**. Reference stock number *312488* on your payment to ensure the prompt application of your funds.

If you have any questions or you wish to obtain a payoff amount for a date not covered above, please visit our client's website at www.teliky.com or contact our client directly at (214) 420-5927 or email to payoffs@teliky.com.

Sincerely,

Sherrow, Sutherland & Associates, PSC

Billy Sherrow

**STOCK NUMBER: 312488**

*312489-CL-1110112*

*LAW OFFICES*
**SHERROW, SUTHERLAND & ASSOCIATES, PSC**
200 SOUTHLAND DR., LEXINGTON, KY 40503


BLUE LICK APARTMENTS LTD
9306 NEW LAGRANGE RD STE 100
LOUISVILLE KY 40242


November 3, 2010


To Blue Lick Apartments Ltd:

The purpose of this letter is to remind you that Tax Ease Lien Servicing, LLC purchased the 2009 delinquent tax bill number 2009230011718 from the Jefferson County taxing authority. This bill is a tax lien on your property located at 4911 Shumake Ct, which is further identified by map number 23203001350000 arising from the unpaid real estate taxes for the 2009 tax year (the "2009 Tax Lien").

The outstanding balance of the 2009 tax lien as of November 3, 2010 is $685.24. This payoff is good through November 30, 2010. If you are unable to pay the tax lien by November 30, 2010, please contact our client for a later payoff amount.

### PAYMENT INSTRUCTIONS:

Payment of the *2009* tax lien, accrued interest, and any additional charges must be made in the form of a cashier's check, certified check or money order, not by personal or company check. Payment must be received in our client's office by *November 30, 2010* for the payoff to be valid.

Please make the certified check, cashier's check or money order payable to: *Tax Ease Lien Servicing, LLC,* and mail to: **14901 Quorum Drive, Suite 900, Dallas, Texas 75254.** Reference stock number *312489* on your payment to ensure the prompt application of your funds.

If you have any questions or you wish to obtain a payoff amount for a date not covered above, please visit our client's website at www.teliky.com or contact our client directly at (214) 420-5927 or email to payoffs@teliky.com.


Sincerely,

Sherrow, Sutherland & Associates, PSC


Billy Sherrow


**STOCK NUMBER: 312489**

# EXHIBIT

# 12

**COMMONWEALTH OF KENTUCKY**
**LINCOLN CIRCUIT COURT**
**CIVIL ACTION NO. 10-CI-00197**
**DIVISION I**

TAX EASE LIEN INVESTMENTS 1, LLC                    PLAINTIFF

v.      **AFFIDAVIT OF TREY GULLEDGE, CHIEF OPERATING OFFICER OF**
        **TAX EASE LIEN INVESTMENTS 1, LLC**

BETTY ANN MARTIN, et. al.                           DEFENDANTS

***** ***** ***** ***** ***** *****

Comes now the Affiant, Trey Gulledge ("Affiant"), and after being duly sworn and cautioned states as follows:

1.      Affiant is Chief Operating Officer of Tax Ease Lien Investments 1, LLC, Lien Division (hereinafter "Tax Ease").

2.      Affiant is familiar with the pre-litigation collection efforts of Tax Ease and the actual attorney's fees which Tax Ease incurs as a result of these collection efforts prior to litigation.

3.      Affiant states that Tax Ease has engaged the law firm of Sherrow, Sutherland & Associates, P.S.C. to send periodic notice letters in efforts to collect its certificates of delinquency prior to litigation.

4.      Tax Ease has incurred the following actual attorneys' fees for services performed by Sherrow, Sutherland & Associates, P.S.C. for collection efforts prior to litigation:

**2007 Lincoln County Tax Bill Number 8422**

| Date | Service | Attorney's Fee |
|------|---------|----------------|
| June 19, 2008 | 50-Day Notice Letter (KRS § 134.490) | $ 62.50 |
| August 12, 2009 | 1 Year Collection/Demand Letter (KRS § 134.452(3)(a)) | $ 0.00 |
| September 9, 2008 | Collection/Demand Letter (KRS § 134.452(3)(a)) | $ 69.50 |

EXHIBIT

**B**

| December 15, 2008 | Collection/Demand Letter (KRS § 134.452(3)(a)) | $ 69.50 |
| March 9, 2009 | Collection/Demand Letter (KRS § 134.452(3)(a)) | $ 65.83 |
| **Total** | | **$ 267.33** |

5.    Tax Ease has incurred Two Hundred Sixty-Seven Dollars and 33/100 ($267.33) in actual attorney's fees for efforts at collecting its Certificates of Delinquency prior to litigation.

6.    Tax Ease has incurred administrative fees for preparing and recording its Certificate of Delinquency in the Lincoln County Clerk's office, and will incur further administrative fees for releasing its Certificates of Delinquency. Tax Ease's total administrative fees are one hundred dollars and no/100 ($100.00) per certificate.

FURTHER AFFIANT SAYETH NAUGHT.

TREY GULLEDGE, AFFIANT

STATE OF TEXAS          )
                                         )
COUNTY OF Dallas )

Subscribed, sworn to, and acknowledged before me on this the 1st day of

Sept , 2010, by Trey Gulledge, Affiant.

My Commission Expires: 3/8/2011

Notary Public, State at Large, Texas

CATHRYN J.M. ABSHIER
MY COMMISSION EXPIRES
March 8, 2011

2

# EXHIBIT

# 13

*LAW OFFICES*
**SHERROW, SUTHERLAND**
**& ASSOCIATES, PSC**
215 SOUTHLAND DRIVE, SUITE 200
LEXINGTON, KENTUCKY 40503

**3/4/2009**

To:   132974-PF-0309B1
      C/O BETTY ANN MARTIN
      330 KY HWY 643
      WAYNESBURG KY 40489

Dear Betty Ann Martin:

This letter is our final attempt to make you aware that Tax Ease Lien Investments 1, LLC ("TELI1") purchased a lien for 2007 unpaid *ad valorem* taxes on your property located at 330 Ky Hwy 643 in Lincoln County. This is a lien of record against this property and it takes priority over virtually all other claims against the property. It cannot be defeated by a sale or other transfer of the property.

To date, neither we nor our client have received any positive response from our efforts to contact you and clear this lien against your property. Therefore, your file has been turned over to our offices for collection, which if unpaid, will result in a foreclosure being filed against the property. *The foreclosure process could and most likely will result in the court-ordered sale of your property.* If we are forced to collect through the foreclosure process, all court costs, sheriff's fees, attorney fees and master commissioner fees will be added to the amount that you already owe.

**It is imperative that you contact our client immediately at (214-)420-5927 for a payoff in order to avoid the accumulation of further collection fees and to prevent the foreclosure of your property.**

The outstanding balance of the 2007 Tax Lien as of 3/4/2009 is $664.03 ("March Payoff"), and that amount continues to accrue interest at the rate of 12% per annum as permitted by Kentucky law in KRS 134.500. However, in the event our client incurs additional expenses as the result of this or any other collection actions, those legal fees and costs will be added to the payoff figures set forth above as also permitted by Kentucky law. (KRS 134.520)

Payment of the 2007 Tax Lien, accrued interest, and any additional charges must be made in the form of a cashier's check, certified check or money order, not by personal or company check. Payment must be received in our client's office by the dates listed for the payoff to be valid. Postmarks are NOT accepted as the delivery date. **Please make the certified check, cashier's check or money order payable to: Tax Ease Lien Investments 1, LLC, and mail to: 14901 Quorum Drive, Suite 900, Dallas, TX 75254.**

If you need to contact our client about this tax lien please reference the information below:

| **Stock No. 132974** | | |
|---|---|---|
| Tax Bill Number 8422 | Map ID: | |

The following information is provided pursuant to KRS 134.490:

<u>Legal name of purchaser</u>:
    Tax Ease Lien Investments 1, LLC

<u>Purchaser's physical address and address for payments</u>:
    14901 Quorum Drive, Suite 900
    Dallas, TX 75254

<u>Purchaser's telephone number</u>:
    (214) 420-5927


    If you have any questions or you wish to obtain a payoff amount for a date not covered above, please visit our client's website at www.teliky.com or contact our client TELI directly at (214) 420-5927 or email to payoffs@TELIKY.com.

            Very truly yours,

            Sherrow, Sutherland & Associates, PSC



            Billy Sherrow


## NOTICE

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.   PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT, YOU HAVE THIRTY (30) DAYS FROM THE DATE OF RECEIPT OF THIS LETTER TO DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREON, OR ELSE THIS DEBT WILL BE ASSUMED VALID.  IF YOU DO HAVE A DISPUTE ABOUT THIS DEBT, WE WILL SEND YOU VERIFICATION FIGURES UPON WRITTEN REQUEST BY YOU WITHIN SAID THIRTY (30) DAY PERIOD.  THIS IS A COMMUNICATION FROM A DEBT COLLECTOR.

# EXHIBIT

# 14

*LAW OFFICES*
**SHERROW, SUTHERLAND**
**& ASSOCIATES, PSC**
215 SOUTHLAND DRIVE, SUITE 200
LEXINGTON, KENTUCKY 40503

**3/4/2009**

To:    030409-PF-0309B1
        MICHELLE LE
        14901 QUORUM DRIVE, SUITE 900
        DALLAS TX 75254

Dear Michelle Le:

       This letter is our final attempt to make you aware that Tax Ease Lien Investments 1, LLC ("TELI1") purchased a lien for 2009 unpaid *ad valorem* taxes on your property located at 123 Cloudy Road in Dallas County.  This is a lien of record against this property and it takes priority over virtually all other claims against the property.  It cannot be defeated by a sale or other transfer of the property.

       To date, neither we nor our client have received any positive response from our efforts to contact you and clear this lien against your property.  Therefore, your file has been turned over to our offices for collection, which if unpaid, will result in a foreclosure being filed against the property.  *The foreclosure process could and most likely will result in the court-ordered sale of your property.*  If we are forced to collect through the foreclosure process, all court costs, sheriff's fees, attorney fees and master commissioner fees will be added to the amount that you already owe.

       **It is imperative that you contact our client immediately at (214-)420-5927 for a payoff in order to avoid the accumulation of further collection fees and to prevent the foreclosure of your property.**

       The outstanding balance of the 2009 Tax Lien as of 3/4/2009 is $0 ("March Payoff"), and that amount continues to accrue interest at the rate of 12% per annum as permitted by Kentucky law in KRS 134.500.  However, in the event our client incurs additional expenses as the result of this or any other collection actions, those legal fees and costs will be added to the payoff figures set forth above as also permitted by Kentucky law. (KRS 134.520)

       Payment of the 2009 Tax Lien, accrued interest, and any additional charges must be made in the form of a cashier's check, certified check or money order, not by personal or company check.  Payment must be received in our client's office by the dates listed for the payoff to be valid.  Postmarks are NOT accepted as the delivery date.  **Please make the certified check, cashier's check or money order payable to: Tax Ease Lien Investments 1, LLC, and mail to: 14901 Quorum Drive, Suite 900, Dallas, TX 75254.**

       If you need to contact our client about this tax lien please reference the information below:

| **Stock No. 030409** | |
|---|---|
| Tax Bill Number 123 | Map ID:  123-456-789 |

# EXHIBIT

# 15