UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JAMES BROWN, et al.                                                    PLAINTIFFS


v.                                        CIVIL ACTION NO. 3:15-CV-00208-CRS


TAX EASE LIEN SERVICING, LLC, et al.                            DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court on three motions to dismiss for failure to state a claim.

Defendants Tax Ease Lien Servicing, LLC ("TELS"), Tax Ease Lien Investments 1, LLC
("TELI"), Blue Grass Abstract, LLC ("BGA"), Lien Data Services, LLC ("LDS"), and Philip S.
Migicovsky (collectively, the "Tax Ease Defendants") filed the first motion to dismiss.

Defendants Sherrow, Sutherland & Associates, PSC ("SSA") and Billy W. Sherrow
(collectively, the "Sherrow Defendants") filed the second motion to dismiss.

Hayden Craig & Grant, PLLC and Richard Eric Craig (collectively, the "Craig
Defendants") filed the third motion to dismiss. Together, the Court refers to the Tax Ease
Defendants, Sherrow Defendants, and Craig Defendants as the "Defendants."

Plaintiffs James Brown ("Brown"), Theresa Cambron ("Cambron"), Philip Leigh
("Leigh"), and Emil Walther III ("Walther") filed a response to each motion.

The Court will grant in part and deny in part Defendants' motions to dismiss as follows:

**Count 1** – Racketeering Influenced and Corrupt Organizations Act

1

- The Court will deny all Defendants' motions to dismiss all Plaintiffs' RICO claims.

**Count 2**: <u>Declaration of Rights</u>

- The Court will grant all Defendants' motions to dismiss Plaintiffs Theresa Cambron, Philip Leigh, and James Brown's declaratory judgment claims.
- The Court will deny all Defendants' motions to dismiss Plaintiff Emil Walther's declaratory judgment claim.

**Count 3**: <u>Injunctive Relief</u>

- The court will grant all Defendants' motions to dismiss all Plaintiffs' injunctive relief claims.

**Count 4**: <u>KRS § 446.070 – Negligence Per Se</u>

- The Court will grant all Defendants' motions to dismiss all Plaintiffs' KRS § 446.070 claims relying on KRS § 134.490 and KRS §§ 134.990(11)(a)(1)-(2).
- The Court will grant Phil Migicovsky's motion to dismiss all Plaintiffs' KRS § 446.070 claims.
- The Court will deny all Defendants' motions to dismiss all Plaintiffs' remaining KRS § 446.070 claims relying on KRS § 134.452.

**Count 5**: <u>Fraud</u>

- The Court will grant Tax Ease Defendants' motion to dismiss Plaintiffs James Brown, Theresa Camron, and Philip Leigh's fraud claims against TELS.
- The Court will grant Tax Ease Defendants' motion to dismiss Plaintiff Emil Walther's fraud claim against TELI.
- The Court will grant Tax Ease Defendants' motion to dismiss all Plaintiffs' fraud claims against Phil Migicovsky.
- The Court will grant Richard Eric Craig's motion to dismiss Plaintiffs Emil Walther and Theresa Cambron's fraud claims.
- The Court will deny all Defendants' motions to dismiss all Plaintiffs' remaining fraud claims.

**Count 6**: <u>Fraudulent Inducement</u>

- The Court will grant Tax Ease Defendants' motion to dismiss Plaintiffs James Brown, Theresa Camron, and Philip Leigh's fraudulent inducement claims against TELS.
- The Court will grant Tax Ease Defendants' motion to dismiss Plaintiff Emil Walther's fraudulent inducement claim against TELI.
- The Court will grant Tax Ease Defendants' motion to dismiss all Plaintiffs' fraudulent inducement claims against Phil Migicovsky.
- The Court will grant Richard Eric Craig's motion to dismiss Plaintiffs Emil Walther and Theresa Cambron's fraudulent inducement claims.
- The Court will deny all Defendants' motions to dismiss all Plaintiffs' remaining fraudulent inducement claims.

**Count 7**: <u>Kentucky Consumer Protection Act ("KCPA")</u>

- The Court will grant Tax Ease Defendants' motion to dismiss Plaintiffs James Brown and Theresa Camron's KCPA claims against TELS.
- The Court will grant Tax Ease Defendants' motion to dismiss Plaintiff Emil Walther's KCPA claim against TELI.
- The Court will grant Tax Ease Defendants' motion to dismiss Plaintiffs' KCPA claims against Phil Migicovsky.
- The Court will deny all Defendants' motions to dismiss Plaintiffs' remaining KCPA claims.

**Count 8**: Unjust Enrichment

- The Court will deny Sherrow Defendants' motion to dismiss all Plaintiffs' unjust enrichment claims.[1]

The Court will also dismiss Hayden Craig & Grant, PLLC from this action.

## BACKGROUND

The factual and procedural background of this case is lengthy and complex. Instead of reciting that history, the Court incorporates Magistrate Judge Dave Whalin's recent findings of fact.[2] Findings of Fact, Conclusions of Law, and Recommendation, ECF No. 21.

As an initial matter, Craig Defendants now move, unopposed, to dismiss the now-dissolved Hayden Craig & Grant, PLLC from this action. Craig Mot. Dismiss 2, ECF No. 18. The Court will dismiss Hayden Craig & Grant, PLLC from this action.

First, the Court will address all Defendants' affirmative defense of waiver and the issues of fraud and fraudulent inducement. Second, the Court will address the Racketeering Influenced and Corrupt Organizations Act ("RICO") claims. Third, the Court will address the Kentucky Consumer Protection Act ("KCPA") claims. Fourth, the Court will consider the KRS § 446.070 claims. Fifth, the Court will address the declaration of rights claims. Sixth, the Court will address the injunctive relief claims. Finally, the Court will address the unjust enrichment claims.

---

[1] Tax Ease and Craig Defendants did not move to dismiss Plaintiff's unjust enrichment claims.
[2] The Court notes it has substituted Denise Puckett, in her capacity as executrix, in place of Defendant Theresa Cambron. Substitution Order, May 14, 2014, ECF No. 20. For ease and continuity of discussion, this Court will refer to Executrix Puckett as "Cambron."

**STANDARD**

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the complaint need not contain "detailed factual allegations," "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted).

The pleading standard for fraud claims is heightened under Fed. R. Civ. P. 9. The party asserting fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

In evaluating a motion to dismiss for failure to state a claim, the Court does not consider facts or additional documents included in a response to the motion that are not alleged in the pleadings. *See Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). The Court may consider evidence outside of the pleadings under Fed. R. Civ. P. 12(d). If the Court does so, the appropriate standard of review is under Fed. R. Civ. P. 56. The Court declines Plaintiffs' invitation to consider information outside the pleadings under this different standard. *See* Pls.' Resp. Sherrow Defs.' Mot. Dismiss 7, ECF No. 11.

## DISCUSSION

Defendants move to dismiss Plaintiffs' claims for failure to state a claim on which relief can be granted. The Court will assess each in turn as it applies to each group of Defendants.[3]

## 1. Waiver, Fraud, and Fraudulent Inducement

### 1.a. Tax Ease Defendants – Waiver, Fraud, and Fraudulent Inducement

Dismissal of a claim under Fed R. Civ. P. 12(b)(6) on the basis of an affirmative defense, such as waiver, is proper "where the undisputed facts conclusively establish an affirmative defense as a matter of law." *Estate of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013) (citations omitted). Waiver is the "voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party at his option might have demanded or insisted upon." *Conseco Fin. Serv. Corp. v. Wilder*, 47 S.W.3d 335, 344 (Ky. 2001). A party can expressly waive a known right or impliedly waive the right through conduct. *Id.* A court will not infer a waiver of rights lightly. *Id.*

Tax Ease Defendants argue that Plaintiffs waived all rights to challenge fees and charges paid to resolve Plaintiffs' unpaid taxes. *See* Tax Ease Defs.' Mot. Dismiss 10-17, ECF No. 5-1. Based on the undisputed facts, Tax Ease Defendants fail to conclusively establish an affirmative defense of waiver as a matter of law.[4]

Tax Ease Defendants argue that Plaintiffs waived any right to challenge the fees and charges when Plaintiffs received "detailed, line-item breakdown[s]" of the fees and charges, declined to question or challenge the demanded amounts, and then either (i) entered into a

---

[3] Sherrow and Craig Defendants adopt the arguments included in Tax Ease Defendants' motion to dismiss. *See* Sherrow Defs.' Mot. Dismiss 3, ECF No. 7-1; Craig's Mot. Dismiss 3, ECF No. 18. To the extent these Defendants adopt Tax Ease Defendants' motion, the discussion and resolution of that motion applies to Sherrow and Craig Defendants' motions.

[4] As the Court finds these Defendants cannot successfully assert the affirmative defense of waiver, the Court will not address Plaintiffs' estoppel argument.

forbearance agreement, (ii) voluntarily agreed to pay, or (iii) entered into an agreed judgment on the payment with either TELS or TELI, respectively. Tax Ease Defs.' Mot. Dismiss 11, ECF No. 5-1. Plaintiffs allege Tax Ease Defendants committed fraud when misrepresenting fees and charges which Plaintiffs relied upon to their detriment.  Third Am. Compl. 35, ¶¶ 182-85.

As waiver is the relinquishment of a *known* right, fraud is an exception to the affirmative defense of waiver. The Court finds Plaintiffs pleaded facts sufficiently to allege fraud with regard to BGA and LDS. Further, the Court finds Plaintiffs pleaded sufficient facts to allege fraud as to Plaintiff Walther's claims against TELS. Likewise, the Court finds that Plaintiffs' pleaded sufficient facts to allege fraud as to Plaintiffs Brown, Cambron, and Leigh's claims against TELI.

The Court finds Plaintiffs pleaded insufficient facts to allege fraud with regard to Migicovsky. Additionally, the Court finds Plaintiffs pleaded insufficient facts to allege fraud as to Plaintiff Walther's claim against TELI. Further, the Court finds Plaintiffs pleaded insufficient facts to allege fraud as to Plaintiffs Brown, Cambron, and Leigh's claims against TELS.

A claim of fraud in Kentucky requires "(1) that the declarant made a material representation to the plaintiff, (2) that this representation was false, (3) that the declarant knew the representation was false or made it recklessly, (4) that the declarant induced the plaintiff to act upon the misrepresentation, (5) that the plaintiff relied upon the misrepresentation, and (6) that the misrepresentation caused injury to the plaintiff." *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009). A plaintiff's reliance upon the misrepresentation must be "reasonable" or "justifiable." *Id.*; *see also* Restatement (Second) of Torts § 537 (1977).

Further, Plaintiffs may maintain a viable claim, under Kentucky law, based on a theory of civil conspiracy. *See Hogan v. Goodrich Corp.*, 2006 WL 2056586 (W.D. Ky. Mar. 1, 2006) (relying on *Davenport's Adm'x v. Crummies Creek Coal Co.*, 184 S.W.2d 887 (Ky. 1945)). Civil conspiracy requires: "1) an agreement or combination, 2) that is unlawful or corrupt, 3) entered into by two or more persons, 4) for the purpose of accomplishing an unlawful goal." *Ellington v. Fed. Home Loan Mortgage Corp.*, 13 F. Supp. 3d 723, 730 (W.D. Ky. 2014) (citations and quotations omitted); *see also*, *James v. Wilson*, 95 S.W.3d 875, 897 (Ky. Ct. App. 2002) (noting that a "proponent must show an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act"). Under Kentucky law, "when a complaint involves multiple defendants, each defendant's role must be particularized with respect to their alleged *involvement* in the fraud." *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 941 F. Supp. 2d 807, 822 (E.D. Ky. 2013) (citing *Coffey v. Foamex, L.P.*, 2 F.3d 157, 161–62 (6th Cir.1993)) (internal quotations omitted) (emphasis added).

Tax Ease Defendants move to dismiss all Plaintiffs' fraud claims in whole or part under Fed. R. Civ. P. 12(b)(6) on three grounds: (1) Plaintiffs cannot assert reasonable reliance on the alleged misrepresentations; (2) Plaintiffs fail to allege specific fraudulent acts of each Tax Ease Defendant; and (3) Plaintiffs do not allege BGA, LDS, or Migicovsky made misrepresentations.

First, Plaintiffs' Third Amended Complaint states that Tax Ease Defendants, acting together, mailed fee breakdowns to Plaintiffs that Tax Ease Defendants asserted were legally owed. 5-12, ¶¶ 17-50, ECF No. 1-1. These fees included administration fees, attorneys' fees, and title search fees. *Id.* Plaintiffs allege these representations were false because the amounts Defendants claimed were owed did not actually or reasonably reflect the services being charged as statutorily required. *Id.* Defendants argue that even if Plaintiffs alleged sufficient facts for the

7

other elements of fraud, Plaintiffs cannot maintain they reasonably relied on the misrepresentations because they had "ample opportunity to evaluate all amounts sought, to question any fee, charge, or other amount sought, or to seek additional support for any specific amount, fee, or charge identified." Tax Ease Defs.' Mot. Dismiss 13-15, ECF No. 5-1.

Based on Plaintiffs' allegations, the Court concludes Plaintiffs' reliance was reasonable. Indeed, it appears implausible to expect that Plaintiffs would be able to uncover without significant efforts and expert assistance the alleged conduct, which Plaintiffs allege included "bogus" attorney's fees and an additional $300 charged for title searches above the "actual or reasonable" cost. *See* Third Am. Compl. 6-12, ¶¶ 25-50, ECF No. 1-1. These Plaintiffs would not easily be able to uncover these alleged facts and, therefore, this Court infers from Plaintiffs' allegations that they relied on Tax Ease Defendants' representations "in making payments to the [Tax Ease] Defendants" and that such reliance would not be unreasonable under the circumstances alleged. *Id.* at 35, ¶ 184.

Although Tax Ease Defendants also argue that Plaintiffs fail to allege that Walther individually alleged reliance, Tax Ease Defs.' Mot. Dismiss 13, ECF No. 5-1, Plaintiffs do plead that TELS sent letters to Walther with "bogus" attorney's fees and subsequently entered into a settlement agreement, which Walther has paid and continues to pay, based on the fees outlined in those letters. Third Am. Compl. 27-28, ¶¶ 139-43, ECF No. 1-1. This Court finds these are sufficient facts to support the pleaded conclusion that "Defendants' representations to … Mr. Walther … constituted fraud" and Walther relied upon these representations "in making payments to the TELS Defendants." Third Am. Compl. 35, ¶¶ 183-85. The Court concludes that Tax Ease Defendants have not established that Plaintiffs waived any rights associated with the charges and fees.

Tax Ease Defendants also argue that Plaintiffs do not allege specific fraudulent acts of each Tax Ease Defendant or misrepresentation by BGA, LDS, or Migicovsky.

Plaintiffs allege these entities acted together in furtherance of the underlying fraud. *Id.* at 5, ¶ 17. Plaintiffs allege that TELS and TELI committed fraud and fraudulent inducement against all Plaintiffs. *Id.* at 35, ¶¶ 182-185. Plaintiffs allege that TELS and TELI share a common principle place of business and sole manager, and use the same attorneys and companies, BGA and LDS – which are also located in the same principle place of business with the same sole manager – to implement the same scheme to defraud property owners by charging various unreasonable and non-actual fees. *Id.* at 3-4, 21-28, ¶¶ 8-12, 104-143. TELS, however, only directly interacted with Walther and TELI only directly interacted with Brown, Cambron, and Leigh. *Id.* at 21-28, ¶¶ 104-143.

These pleaded allegations are insufficient for this Court to infer that TELS and TELI, respectively, were involved in pursuing each other's alleged unlawful goals. While each company may have been aware of the others' conduct based on the alleged facts, Plaintiffs did not allege sufficient facts to plead with particularity that each company gave the other substantial assistance in pursuing the other's fraudulent acts. Therefore, this Court will dismiss Plaintiff Walther's fraud and fraudulent inducement claims against TELI. The Court will also dismiss Plaintiffs Brown, Cambron, and Leigh's fraud and fraudulent inducement claims against TELS.

Plaintiffs further allege BGA unreasonably added approximately $300 to the cost of title searches it paid approximately $106 for a subcontractor to perform. *See* Third Am. Compl. 6-7, ¶¶ 25-28, ECF No. 1-1. Plaintiffs allege this additional cost did not represent any actual additional work, but allowed TELS and TELI to charge a higher price, which violated the

statutory ban of unreasonable and non-actual fees. *Id.* Assuming these pleaded factual allegations are true, the increased charge for a title search service that does not represent any reasonable or actual expense can be plausibly viewed as an action pursuant a common plan to fraudulently charge statutorily impermissible fees. As Plaintiffs allege TELS and TELI made particular misrepresentations of unreasonable and non-actual fees and charges in letters to Plaintiffs that constitute fraud, BGA's claimed participation by padding its cost is a proper basis for liability under a theory of civil conspiracy. Therefore, this Court will deny these Defendants' motion to dismiss the fraud and fraudulent inducement claims against BGA.

Plaintiffs also allege that LDS "pretend[ed]" to use lawyers by sending  letters purporting to be from those lawyers, but without any legal oversight, in order to obtain the maximum amount of fees under the statutory scheme. *See id.* at 8-11, ¶¶ 35-45. These pre-litigation costs, according to Plaintiffs, were unreasonable and not actual, because lawyers were not directly involved in any letter writing activity. *Id.* Assuming these pleaded allegations as true, LDS' alleged involvement in fabricating unreasonable and non-actual attorney's fees pursuant a common design with TELS and TELI to charge unreasonable and non-actual fees would be in violation of the statutory requirement. This constitutes a proper basis for liability under a theory of civil conspiracy. Therefore, this Court will deny these Defendants' motion to dismiss the fraud and fraudulent inducement claims against LDS.

Finally, Plaintiffs allege Migicovsky committed fraud due to his involvement with TELS, TELI, BGA, and LDS. Plaintiffs' only specific allegations in the complaint concerning Migicovsky are that he "controls TELS, TELI, BGA, and LDS and their business transactions in Kentucky either as a manager or sole manager of those entities, and was the organizer of TELS and TELI in Kentucky." *Id.* at 4, ¶ 12. These allegations are insufficient for this Court to

plausibly infer Migicovsky's involvement through a civil conspiracy in TELS or TELI's alleged fraudulent acts. Plaintiffs must plead more than conclusory allegations of involvement in a scheme or conspiracy to defraud. *See Twombly*, 550 U.S. at 555. Therefore, this Court will dismiss the fraud and fraudulent inducement claims against Migicovsky.

Accordingly, and for the reasons stated, this Court finds Tax Ease Defendants have not conclusively established based on undisputed facts that Plaintiffs knowingly and voluntarily waived any rights associated with the charges and fees. The Court will grant Tax Ease Defendants' motion to dismiss the fraud and fraudulent inducement claims against Migicovsky. The Court will also grant Tax Ease Defendants' motion to dismiss Plaintiff Walther's fraud and fraudulent inducement claims against TELI. The Court will grant Tax Ease Defendants' motion to dismiss Plaintiffs Brown, Cambron, and Leigh's fraud and fraudulent inducement claims against TELS. The Court will deny Tax Ease Defendants' motion to dismiss all remaining fraud and fraudulent inducement claims.

*1.b. Sherrow Defendants – Waiver, Fraud, and Fraudulent Inducement*

In addition to incorporating Tax Ease Defendants' arguments, Sherrow Defendants argue that the Court should dismiss Plaintiffs' fraud and fraudulent inducement claims because: (1) Plaintiffs did not rely on Sherrow Defendants' letters to Plaintiffs' detriment, so this Court should dismiss Plaintiffs' fraudulent inducement claim; and (2) Sherrow Defendants' attorney's fees were below the statutory maximum, and therefore objectively reasonable and actual.

Sherrow Defendants argue that the Court should dismiss Plaintiffs' fraudulent inducement claim because Plaintiffs were not "spur[red] to action" by these Defendants' letters. Sherrow Defs.' Mot. Dismiss 7, ECF No. 7-1. According to Sherrow Defendants, the only

fraudulent acts Plaintiffs allege on behalf of SSA or Sherrow are that Sherrow Defendants sent letters including pre-litigation attorney's fees to Plaintiffs. *Id.* These Defendants argue that Plaintiffs only entered into agreements to pay with TELS or TELI after receiving letters from attorneys other than Sherrow Defendants. *Id.* As the Plaintiffs are required to plead with particularity in alleging fraud, if the Plaintiffs did not plead sufficient facts to allege they relied on the Sherrow Defendants' letters, the Court should dismiss the fraudulent inducement claim. *Id.*

Plaintiffs allege these "representations have been made to some or all members of the Class, and have been relied upon in making payments to the TELS Defendants." Third Am. Compl. 35, ¶ 186, ECF No. 1-1. Particularly, Plaintiffs' complaint alleges Sherrow Defendants' letters notify property owners the total amount owed, including Sherrow's pre-litigation attorney's fees. Sherrow Letters, Ex. 11, ECF No. 1-1. The letters state the bill is a tax lien on the property and the amount is subject to change if not settled before a set date. *Id.*

Plaintiffs alleged reasonable reliance on representation*s*, including those of Sherrow Defendants. As this is the only additional argument Sherrow Defendants make in regard to Plaintiffs' fraudulent inducement claim, the Court will deny Sherrow Defendants' motion to dismiss that claim.

In regard to Plaintiffs' fraud claim, Sherrow Defendants argue that if their representations to Plaintiffs included attorney's fees below the statutory maximum, then Plaintiffs have not sufficiently alleged a fraud claim. Sherrow Defs.' Mot. Dismiss 7-12, ECF No. 7-1.  While equivocating reasonable with maximum may quickly fill Sherrow Defendants' coffers with unearned fees, the Kentucky statute requires these Defendants actually provide reasonable

service in exchange for payment. KRS § 134.452 requires attorney's fees to be actual and reasonable in *addition* to capping the maximum amount third-party purchasers may seek in pre-litigation attorney's fees. "[T]he statute as written does not automatically bestow upon a third-party purchaser whatever fees and costs it claims." *Tax Ease Lien Servicing, LLC v. Smith*, 2014 WL 7013251, at *4 (Ky. Ct. App. Dec. 12, 2014). Reasonable attorney's fees are imposed "based upon the facts, circumstances, and documentation provided," *id.*, "with a view to common sense realism." *In re Citizens Fidelity Bank & Trust Co.*, 550 S.W.2d 569, 570 (Ky. App. 1977).

Sherrow Defendants misinterpret the statute when construing "reasonable" to mean any fees up to the statutory maximum regardless of the services rendered. If this was the proper interpretation, it would render "reasonable" mere surplusage. *See Freeman v. Quicken Loans, Inc.*, 132 S. Ct. 2034, 2043 (2012) (noting that "the canon against surplusage merely favors that interpretation which avoids surplusage"). These Defendants further contort the statutory construction when asserting that the only basis for a fraudulent act premised on a knowing violation of KRS § 134.452 is if "reasonable" is an objective factor; and then arguing that the only objective reading of reasonable would be any fee not exceeding the statutory cap. Sherrow Defs.' Mot. Dismiss 7-12, ECF No. 7-1. Courts routinely apply objective analysis in determining what is reasonable in accord with common sense in the particular context. *See, e.g.*, *United States v. Easley*, 942 F.2d 405, 411 (6th Cir. 1991) (discussing the application of an "objective reasonable person standard"). In this fraud context, Plaintiffs must prove the *knowing* violation of the "reasonable" standard.

Sherrow Defendants argue that the fees charged are actual and reasonable. First, these Defendants argue they charged less than the statutory maximum per letter and therefore charged reasonable fees. Sherrow Defs.' Mot. Dismiss 9, ECF No. 7-1.Whether these Defendants charge

the statutory maximum or not has no impact on whether the fees charged were reasonable. Reasonable, as discussed above, has independent meaning apart from whether the attorney has charged more than the statutory maximum.

Sherrow Defendants also argue that Plaintiffs conceded the fees were reasonable when agreeing to settlement agreements. *Id.* This is a reiteration of Tax Ease Defendants' waiver argument this Court found lacks a sufficient basis. *See discussion supra* § 1.a.

Defendants offer no other argument why the pre-litigation attorney's fees are reasonable or why this Court should dismiss Plaintiffs' fraud claims. Plaintiffs' have claimed that these fees were not reasonable because the letters sent to various Plaintiffs "are nearly identical in format to the other collection letters," are "inflated by up to 900%," and are "based on work done by LDS" and not that of an attorney. Third Am. Compl. 9-11, ¶¶ 36-45, ECF No. 1-1. These are sufficient factual allegations, accepted as true, "to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.[5]

The Court will deny Sherrow Defendants' motion to dismiss Plaintiffs' fraud and fraudulent inducement claims.

*1.c. Defendant Craig – Waiver, Fraud, and Fraudulent Inducement*

Beyond Tax Ease Defendants' motion, Craig argues that Plaintiffs fail to allege any connection between Craig and a scheme to "mislead or defraud" Cambron or Walther. Craig's Mot. Dismiss 4, ECF No. 18. Craig did not represent Tax Ease Defendants in matters relating to Plaintiffs Walther or Cambron. *Id.* Plaintiffs fail to meet their burden to plead Craig's particular

---

[5] The Court need not address whether the fees were "actual" under KRS § 134.452 as pleading only unreasonable fees is sufficient to state a claim.

fraudulent actions involving Walther and Cambron, or Craig's direct or indirect involvement with TELS or TELI that would constitute sufficient facts to find civil conspiracy in regard to those underlying fraudulent acts.

The Court will grant Craig's motion to dismiss to the extent it pertains to Plaintiffs Walther and Camron's claims of fraud and fraudulent inducement. The Court will deny Craig's motion to dismiss Plaintiffs' remaining claims of fraud and fraudulent inducement.

## 2. Racketeering Influenced and Corrupt Organizations Act

*2.a. Tax Ease Defendants – Racketeering Influenced and Corrupt Organizations Act*

A claim brought under the RICO Act (18 U.S.C. § 1962(c)) requires: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012). If plaintiff alleges fraud as a basis for a RICO claim, "there must be proof of misrepresentations or omissions which were reasonably calculated to deceive persons of ordinary prudence and comprehension." *Id.* While a plaintiff does not need to prove his reliance on a defendant's fraudulent acts, he must prove that the fraudulent conduct is both a "but for" and proximate cause of the alleged injury. *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010); *Heinrich*, 668 F.3d at 404-05. Proximate cause for a RICO allegation requires proof of "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Group*, 559 U.S. at 9.

Plaintiffs allege Defendants, acting as an association-in-fact, used the mails and interstate wires to send fraudulent letters to further a fraudulent scheme that is part of an ongoing tax certificate delinquency collection business. As this is a claim of mail and wire fraud, Plaintiffs

must allege sufficient facts that would show the use of the mail or wire in furtherance of a scheme to defraud and an injury those actions caused.

Tax Ease Defendants' sole argument in moving to dismiss the RICO claim is that even if Plaintiffs could prove every other element of the RICO claim, Plaintiffs cannot establish any reliance on the notices or payoff letters because their choice "not to avail themselves of the opportunity to question the fees" "negates their ability to claim reliance." Tax Ease Defs.' Reply Supp. Mot. Dismiss 9, ECF No. 12. If Plaintiffs cannot show reliance, according to these Defendants, Plaintiffs cannot allege sufficient facts to establish causation. Tax Ease Defs.' Mot. Dismiss 19, ECF No. 5-1.

This argument mirrors these Defendants' reasonable reliance position in regard to waiver, fraud, and fraudulent inducement. *See discussion supra* § 1.a. The Court incorporates that discussion here and will deny Tax Ease Defendants' motion to dismiss Plaintiffs' RICO claims.

*2.b. Sherrow Defendants – Racketeering Influenced and Corrupt Organizations Act*

Beyond incorporating Tax Ease Defendants' motion, Sherrow Defendants fail to cite to a single legal authority relating to RICO in their argument to dismiss Plaintiffs' claims. Sherrow Defendants do refer to Count I, the RICO claim, when discussing Counts I-V and VIII generally. Sherrow Defendants argue that the claims should be dismissed as Plaintiffs could not have relied on Sherrow Defenants' particular mailed letters and that the fees included on those letters were actual and reasonable attorney's fees. Sherrow Defs.' Mot. Dismiss 8, ECF No. 7-1. These Defendants do not elaborate on (1) why this lack of reliance, which is not a required element for a RICO claim, should prompt the Court to dismiss the claim; or (2) how the legal validity of particular acts impact the RICO structure or the RICO enterprise's other acts.

The Court will deny Sherrow Defendants' motion to dismiss Plaintiffs' RICO claims.

*2.c. Defendant Craig – Racketeering Influenced and Corrupt Organizations Act*

Beyond incorporating Tax Ease Defendants' motion, Defendant Craig fails to develop a sufficient legal argument to dismiss Plaintiffs' RICO claims. Craig fails to cite to a single legal authority in his argument to dismiss Plaintiffs' claims and only mentions the RICO claims once: "Not a single word in the … complaint … alleges that … the Craig Defendants had any connection to Camron or Walther. Not a single word indicating or even insinuating that Craig committed any act of mail or wire fraud which might give rise to allege RICO liability … committed or attempted to defraud Cambron or Walther, etc." Craig's Mot. Dismiss 5, ECF No. 18. Craig argues Plaintiffs do not allege any connection between Craig and Cambron and Walther, but fails to elaborate on how this lack of association impacts the RICO structure or why it should prompt this Court to dismiss Plaintiffs' RICO claims against Craig.

The Court will deny Craig's motion to dismiss Plaintiffs' RICO claims.

**3. Kentucky Consumer Protection Act**

*3.a. Tax Ease Defendants – Kentucky Consumer Protection Act*

The Kentucky Consumer Protection Act ("KCPA") "is remedial legislation enacted to give consumers broad protection from illegal acts." *Arnold v. Microsoft Corp.*, 2000 WL 36114007, at *7 (Ky. Cir. Ct. July 21, 2000). To assert a KCPA cause of action, Plaintiffs must allege that Defendants engaged in "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," KRS § 367.170(1), and that Plaintiffs were persons who purchase[d] … services primarily for personal, family or household purposes and thereby

17

suffer[ed] … ascertainable loss of money or property, real or personal." *Id.* § 367.220(1).

Kentucky courts have stressed that the "Kentucky legislature created a statute which has the

broadest application in order to give Kentucky consumers the broadest possible protection for

allegedly illegal acts. In addition, KRS § 446.080 requires that the statutes of this

Commonwealth are to be liberally construed." *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d

819, 821 (Ky. 1988).

The KCPA creates a restricted private right of action. The Court must determine whether

when property owners pay third-party purchasers for KRS § 134.452 fees, those purchasers

provide "services" under the KCPA. This is a question of first impression in Kentucky. The

Court must predict how Kentucky's highest court would decide the issue based on available

information. *See Dinsmore Instrument Co. v. Bombardier, Inc.*, 199 F.3d 318, 320 (6th Cir.

1999).

Tax Ease Defendants argue that "TELS and TELI are not selling or leasing anything"

and that "enforcing and resolving legal obligations of the delinquent taxpayers" does not

constitute a "commercial setting."  Tax Ease Defs.' Reply Supp. Mot. Dismiss 10, ECF No. 12.

These Defendants, however, are not engaged in a public service. Indeed, based on the

allegations, these Defendants are operating a business venture providing a variety of services for

statutorily permissible fees.

The statutory framework that allows TELS and TELI to purchase certificates of

delinquency describes third-party purchasers buying these certificates as investments. *See, e.g.*,

KRS § 134.129 (describing registration requirements for those that "invest[] or plan[] to invest"

over certain amounts in purchasing certificates of delinquency). In entering into a forbearance

agreement or agreed judgment, Plaintiffs paid these defendants more than owed taxes and

statutory interest. Defendants paid for pre-litigation legal services, title search services, and a

processing fee for administrative services associated with paying the amount owed in a particular

way. *See id.* § 134.490(5) (noting that the fee charged covers administrative processing costs of

providing a payment plan). These additional services that the Kentucky statute allows third-party

purchasers to collect from property owners are bases to recoup an investment and are not part of

the owed taxes.

Liberally construing the relevant statutes, this Court finds that Kentucky's highest court

would determine that when property owners pay third-party purchasers for KRS § 134.452 fees,

those purchasers provide "services" under the KCPA.

Tax Ease Defendants also argue that all Defendants cannot allege claims against both

TELS and TELI, or allege a purchase or lease from BGA, LDS, or Migicovsky. The discussion

in Section 1.a concerning civil conspiracy liability applies here. As discussed in that Section,

TELS and TELI were only directly involved with certain Plaintiffs. Plaintiffs' pleaded

allegations are insufficient for this Court to plausibly infer that TELS and TELI, respectively,

were involved in pursuing each other's alleged illegal designs. The Court will grant these

Defendants' motion to dismiss Plaintiff Walther's KCPA claim against TELI. The Court will

also grant these Defendants' motion to dismiss Plaintiffs Brown and Cambron's KCPA claims

against TELS.

Also discussed in Section 1.a, this Court finds that Plaintiffs have alleged sufficient facts

that BGA's and LDS' involvement in furtherance of the fraudulent scheme, which includes this

underlying KCPA violation, forms a basis for liability under a theory of civil conspiracy. The Court will deny these Defendants motion to dismiss the KCPA claims against BGA and LDS.

Likewise, Plaintiffs have not alleged sufficient facts for this Court to infer Migicovsky's involvement through a civil conspiracy. The Court will grant Tax Ease Defendants' motion to dismiss the KCPA claims as they relate to Defendant Migicovsky.

Accordingly, and for the reasons stated, the Court will grant in part and deny in part Tax Ease Defendants' motion to dismiss the KCPA claims. The Court will grant these Defendants' motion to dismiss Plaintiff Walther's KCPA claim against TELI. The Court will also grant these Defendants' motion to dismiss Plaintiffs Brown and Cambron's KCPA claims against TELS. Furthermore, the Court will grant Tax Ease Defendants' motion to dismiss the KCPA claims as they relate to Defendant Migicovsky. The Court will deny Tax Ease Defendants motion to dismiss the remaining KCPA claims.

*3.b. Sherrow Defendants – Kentucky Consumer Protection Act*

Beyond incorporating Tax Ease Defendants' motion, Sherrow Defendants do not cite a single legal authority relating to the KCPA.  Sherrow Defendants do state that "the Plaintiff's [sic] have not pleaded reliance sufficient to support a claim against SSA and Mr. Sherrow on Counts VI [fraudulent inducement] and VII [KCPA] since those Counts relate exclusively to the circumstances surrounding the entrance of each Plaintiff into their respective settlement agreements." *Id.* at 7. Reliance is not a required element of a claim under the KCPA nor is a fraudulent practice. A qualifying Plaintiff must allege "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." KRS § 367.170(1). It is irrelevant

20

whether Plaintiffs were "spur[red] into action" by these Defendants' letters. Sherrow Defs.' Mot. Dismiss 7, ECF No. 7-1.

The Court will deny Sherrow Defendants' motion to dismiss the KCPA claims.

*3.c. Defendant Craig – Kentucky Consumer Protection Act*

Craig adopts and recites without any additional argument Tax Ease Defendants' motion to dismiss as it pertains to Plaintiffs' KCPA claims. The Court will deny Craig's motion to dismiss as it pertains to these claims.

**4. KRS § 446.070**

*4.a. Tax Ease Defendants – KRS § 446.070*

Under KRS § 446.070, "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation." The statute, Kentucky's codification of the negligence *per se* doctrine, applies when the alleged offender violates a Kentucky statute that provides no remedy for the aggrieved party and the victim is within the class of persons the statute intended to protect. *See St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 534 (Ky. 2011); *Thompson v. Breeding*, 351 F.3d 732, 737 (6th Cir. 2003). "The statute must have been specifically intended to prevent the type of occurrence that took place, and the violation must have been a substantial factor in causing the result." *Hargis v. Baize*, 168 S.W.3d 36, 46 (Ky. 2005).

Tax Ease Defendants argue that the statutes Plaintiffs identify do not exist to prevent injury, and thus cannot include Plaintiffs within a class of persons the statutes intend to protect. Tax Ease Defs.' Mot. Dismiss 28, ECF No. 5-1. The first statute, KRS § 134.452, among other

21

things, sets limitations on the amount third-party purchasers may collect for pre-litigation

attorneys' fees. The statute further limits these fees to only "actual reasonable fees incurred" up

to a set amount based on the amount "paid for a certificate of delinquency." *Id.* According to

Defendants, this statute creates substantive rights concerning acceptable fees and expenses third-

party purchasers of certificates of delinquency may collect.

The Court, however, agrees with Plaintiffs that these provisions are also intended to

protect property owners subject to collection by limiting the amount those owners can owe third-

party purchasers. In charging fees that are not actual or reasonable, the most obvious victim is

the individual erroneously paying those fees. Capping the fees protects property owners from

overcharging.

Defendants also argue KRS §§ 134.990(11)(a)(1)-(2) do not provide a basis for recovery

under KRS § 446.070. KRS §§ 134.990(11)(a)(1)-(2) outline penalties for knowingly demanding

costs or fees in excess of those in KRS § 134.452 and for failing to properly provide required

notices.[6] The statute penalizes a failure to comply with other statutes. According to these

Defendants, this statute does not impose any duty and does not intend to protect any class of

persons. Rather, the statute sets out penalties for violating *other* statutory duties. Plaintiffs argue

that third-party purchasers violate the statute when charging fees not authorized in KRS

§ 134.452.

The Court agrees with Defendants that KRS §§134.990(11)(a)(1)-(2) do not themselves

impose a duty that intentionally protects Plaintiffs. A Defendant does not violate KRS

---

[6] KRS §§ 134.990(11)(a)(1)-(2) state: "Any third-party purchaser who knowingly: 1. Demands costs or fees in excess of those permitted by KRS 134.452; 2. Fails to send notices as required by KRS 134.490, or to include in the notices the information required by KRS 134.490…. shall be subject to a fine of not less than one hundred dollars ($100) nor more than two hundred fifty dollars ($250) for the first offense, and for the second and any subsequent offenses, shall be fined not less than two hundred fifty dollars ($250) nor more than five hundred dollars ($500)."

§§ 134.990(11)(a)(1)-(2), but violates one of the corresponding statutes, such as KRS § 134.452, and then KRS §§ 134.990(11)(a)(1)-(2) dictates the penalty for violating the other statute. A failure to pay the penalty would not harm Plaintiffs in this case. The harm Plaintiffs suffer would be due to a demand of excess fees in violation of KRS § 134.452. The harm associated with not paying statutorily defined penalties in another section, however, would at most harm the Commonwealth.

Lastly, KRS § 134.490 sets forth various notice, data collection, and record-keeping requirements for third-party purchasers of certificates of delinquency, as well as payment plan criteria. Plaintiffs fail to identify in their complaint which provisions of the statute Defendants allegedly violated. Regardless, Defendants correctly conclude that "a failure to send any particular notice or to collect or preserve certain data or records could not have injured any Plaintiff." Tax Ease Defs.' Mot. Dismiss 30, ECF No. 5-1. A failure to comply with these requirements would suspend any interest accrual or fees until proper notice resumed. *See* KRS § 134.490(3)(e). Instead of injuring Plaintiffs, this would actually benefit the property owners as it would limit third-party purchasers' statutory recovery.[7]

Tax Ease Defendants also assert that Plaintiffs cannot allege a statutory violation by BGA, LDS, or Migicovsky as these defendants are not third-party purchasers, which is required for a violation of KRS § 134.452. The discussion in Section 1.a concerning civil conspiracy liability applies here.

As discussed in Section 1.a, this Court finds that Plaintiffs have alleged sufficient facts that BGA's and LDS' involvement in furtherance of the fraudulent scheme, which includes this

---

[7] The Court notes that Plaintiffs failed to address KRS § 134.490's basis for a KRS § 446.070 claim in their response to Tax Ease Defendants' motion to dismiss.

23

underlying KRS § 446.070 violation, forms a basis for liability under a theory of civil liability. Likewise, Plaintiffs have not alleged sufficient facts for this Court to plausibly infer Migicovsky's involvement through a civil conspiracy.

The Court will grant Tax Ease Defendants' motion to dismiss Plaintiffs' KRS § 446.070 claims to the extent they rely on KRS § 134.490 and KRS §§ 134.990(11)(a)(1)-(2). The Court will also dismiss the Plaintiffs' KRS § 446.070 claims against Defendant Migicovsky. The Court will deny Tax Ease Defendants' motion to dismiss as it pertains to Plaintiffs' remaining KRS § 446.070 claims.

*4.b. Sherrow Defendants – KRS § 446.070*

Beyond Tax Ease Defendants' motion to dismiss, Sherrow Defendants do not cite a single legal authority relating to Plaintiffs' KRS § 446.070 claims. While Sherrow Defendants do mention "Count IV," which is Plaintiffs' KRS § 446.070 claim, these Defendants do so in the context of discussing Counts I-V and VIII generally. Sherrow Defendants argue that these claims should be dismissed as Plaintiffs could not have relied on Sherrow Defendants' particular mailed letters and that the fees included on those letters were for actual and reasonable attorney's fees. *Id.* at 8. Sherrow Defendants make no effort to elaborate how these arguments impact Plaintiffs' pleaded KRS § 446.070 claim.

The Court will dismiss Plaintiffs' KRS § 446.070 claims to the extent they rely on KRS § 134.490 and KRS §§ 134.990(11)(a)(1)-(2). The Court will deny these Defendants' motion to dismiss Plaintiffs' KRS § 446.070 claims to the extent they rely on KRS § 134.452.

*4.c. Defendant Craig – KRS § 446.070*

Craig merely adopts and recites without any additional argument Tax Ease Defendants' motion to dismiss as it pertains to Plaintiffs' KRS § 446.070 claims. This Court will dismiss Plaintiffs' KRS § 446.070 claims to the extent they rely on KRS § 134.490 and KRS §§ 134.990(11)(a)(1)-(2). The Court will deny Craig's motion to dismiss Plaintiffs' KRS § 446.070 claims to the extent they rely on KRS § 134.452.

## 5. Declaration of Rights

*5.a. Tax Ease Defendants – Declaration of Rights*

The Court has broad discretion under both the Kentucky Declaratory Judgment Act, KRS Chapter 418,  and the Federal Declaratory Judgment Act, 28 U.S.C.A. § 2201, to declare the rights of parties in order to terminate the uncertainty or controversy prompting the action. *See Mammoth Medical, Inc. v. Bunnell*, 265 S.W.3d 205 (Ky. 2008). KRS § 418.040 allows a court to enter a binding declaration of rights "wherein it is made to appear that an actual controversy exists." The federal Declaratory Judgment Act states that in a "case of actual controversy within its jurisdiction, ... any court of the United States, ... may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Court must abstain from awarding declaratory judgment, however, under state or federal law, when adjudicating allegations of injuries arising from past conduct or to "secure a determination of substantive rights involved in a pending suit." *Id.* Regardless which act the Court acts upon, the result is the same.

Plaintiffs' complaint seeks a declaration that "Defendants are not entitled to collect the fees and charges they have demanded under the liens they assert against Class member's [*sic*] real property and that the accrual of all interest and fees have been suspended." Third Am.

Compl. 33-34, ¶ 168, ECF No. 1-1. Defendants argue Plaintiffs are not entitled to declaratory relief because "every Plaintiff purports to seek declaratory relief regarding fees and charges that they already paid to TELS or TELI." Tax Ease Defs.' Mot. Dismiss 18, ECF No. 5-1. It is undisputed Cambron and Leigh have completed all payments on their payment plans. As these allegations concern past conduct, the Court will dismiss Plaintiffs Cambron and Leigh's claims for declaration of rights.

Plaintiffs argue Brown and Walther still owe fees and charges to TELS or TELI under the Plaintiffs' respective payment plans. *See* Resp. Tax Ease Defs.' Mot. Dismiss 29, ECF No. 9. Plaintiffs' complaint, however, only alleges sufficient evidence that Walther still owes fees and charges to TELS. Third Am. Compl. 26, ¶ 143, ECF No. 1-1. Plaintiffs' complaint lacks any factual allegation that Brown still owes TELI fees or charges and includes allegations that Brown "paid the TELS Defendants under the forbearance agreement" and that the Tax Ease Defendants "collected" the pre-litigations attorney's fees. *Id.* at 23, ¶¶ 116-17.

The Third Amended Complaint failed to plead sufficient facts that Brown still owes TELI fees or charges. The Court will grant Tax Ease Defendants' motion to dismiss Plaintiffs' claim for a declaration of rights as it applies to Brown.

The Court agrees with Plaintiffs that they have alleged sufficient facts for a claim of declaration of rights with regard to Plaintiff Walther. While Walther has experienced alleged past harm, Plaintiffs also allege future harmful conduct toward Walther in the form of continuing to pay alleged illegal payments to TELS. *Id.* at 28, ¶ 143. As these future payments do not constitute past conduct, the Court will deny Defendants' motion to dismiss the declaration of rights claim as it applies to Walther.

*5.b. Sherrow Defendants – Declaration of Rights*

Beyond Tax Ease Defendants' motion to dismiss, Sherrow Defendants do not cite a single legal authority relating to Plaintiffs' declaration of rights claims. While Sherrow Defendants do mention "Count II," which is Plaintiffs' declaration of rights claim, these Defendants do so in the context of discussing Counts I-V and VIII generally. Sherrow Defendants argue that these claims should be dismissed as Plaintiffs could not have relied on Sherrow Defendants' particular mailed letters and that the fees included on those letters were for actual and reasonable attorney's fees. Sherrow Defs.' Mot. Dismiss 8, ECF No. 7-1. Sherrow Defendants make no effort to elaborate how these arguments impact Plaintiffs' declaration of rights claims.

Based on the adoption of Tax Ease Defendants' motion to dismiss, the Court will dismiss Plaintiffs' claims for a declaration of rights to the extent they apply to Plaintiffs Cambron, Leigh, and Brown. The Court will deny Defendants' motion to dismiss the declaration of rights claims to the extent they apply to Walther.

*5.c. Defendant Craig – Declaration of Rights*

As Craig merely adopts and recites without any additional argument Tax Ease Defendants' motion to dismiss as it pertains to the declaratory judgment claims, this Court will dismiss Plaintiffs' claims for a declaration of rights to the extent they apply to Plaintiffs Cambron, Leigh and Brown, and deny Craig's motion to dismiss the declaration of rights claims to the extent they apply to Walther.

**6. Injunctive Relief**

"'Injunctive relief' is not a cause of action, it is a remedy." *Thompson v. JPMorgan Chase Bank, N.A.*, 563 F. App'x 440, 442 n.1 (6th Cir. 2014) *cert. denied*, 135 S. Ct. 494, 190 L. Ed. 2d 362 (2014) *reh'g denied*, 135 S. Ct. 1171, 190 L. Ed. 2d 927 (2015). As a claim for injunctive relief is a misnomer and appropriately pleaded as relief for a particular claim, the Court dismisses Plaintiffs' "claim" for injunctive relief as it pertains to all Defendants.

## 7. Unjust Enrichment[8]

### 7.a. Sherrow Defendants – Unjust Enrichment

Sherrow Defendants fail to develop a sufficient legal argument to establish granting their motion to dismiss Plaintiffs' unjust enrichment claims. Sherrow Defendants fail to cite to a single legal authority relating to unjust enrichment in their argument to dismiss Plaintiffs' claims and only mention "Unjust Enrichment" in the recitation of Plaintiffs' claims. Sherrow Defs.' Mot. Dismiss 5, ECF No. 7-1.

Sherrow Defendants' entire explicit reference to the claims is: "The Plaintiffs make no effort to elucidate the nature of the unjust enrichment beyond making a passing reference to 'the averments of all previous passages,' which, it is clear, make claim[s] based purely in alleged *fraudulent* conduct." *Id.* Although Sherrow Defendants do refer to Count VIII, the unjust enrichment claim, when discussing Counts I-V and VIII generally, they argue that these claims should be dismissed as Plaintiffs could not have relied on Sherrow Defendants' particular mailed letters and that the fees included on those letters were for actual and reasonable attorney's fees. *Id.* at 8. These Defendants do not elaborate on how this argument would impact a claim of unjust enrichment.

---

[8] Only Sherrow Defendants moved for this Court to dismiss Plaintiffs' claim alleging unjust enrichment.

The Court will deny Sherrow Defendants' motion to dismiss as it pertains to Plaintiffs' unjust enrichment claims.

A separate order will be entered in accordance with this opinion.

November 20, 2015

**Charles R. Simpson III, Senior Judge**
**United States District Court**