UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JAMES BROWN, et al.                                            PLAINTIFFS

v.                                          CIVIL ACTION NO. 3:15-CV-208-CRS

TAX EASE LIEN SERVICING, LLC, et al.                           DEFENDANTS

**ORDER**

    This matter is before the Court on the motion of the Defendants, Tax Ease Lien Servicing, LLC (TELS), Tax Ease Lien Investments 1, LLC (TELI), Blue Grass Abstract, LLC (BGA), Lien Data Services, LLC(LDS), and Philip Migicovsky (collectively "Tax Ease Defendants").  (DN 98, Motion to Compel).  The Tax Ease Defendants have moved the court to compel Plaintiffs, Denise Puckett, James Brown, Email Walther and Phillip Leigh to provide complete responses to their First Set of Interrogatories and Requests for Production.  Defendants argue that the information and documents being withheld contain facts directly relevant to the merits of the Plaintiff's RICO, declaratory judgment, fraud, KCPA and unjust enrichment claims, as well as, the class certification requirements found in Rule 23(a) and (g) – – commonality, typicality, adequacy and class counsel requirements.

*The Motion to Compel*

    The Tax Ease Defendants focus their motion to compel on those matters being withheld by the Plaintiffs based upon their claim that the requested documents and information are in the

possession of their counsel and therefore are not subject to discovery.[1]  Defendants argue that the

Plaintiffs cannot refuse to produce otherwise discoverable documents or information merely

because such items are within the possession, custody or control of Plaintiffs' counsel.  Such an

objection in the view of the Defendants is invalid.[2] Further, Defendants challenge the objections

of the Plaintiffs that are based on the attorney-client privilege and work product doctrine due to

the failure of the Plaintiffs to provide the necessary privilege log in accordance with Rule

26(b)(5).[3] Defendants protest that without the required log they cannot possibly determine

whether the claimed attorney-client privilege and/or work product protections are valid,

assuming momentarily that they even apply to the items sought by the Defendants such as

witness statements, class member related documents and third-party communications.

Defendants in their motion separately discuss 10 categories of information and

documents now sought which the Plaintiffs claim are nondiscoverable because they are in the

possession of Plaintiffs' counsel:

1).  First among these categories are those interrogatories and document requests that

seek all communications between the plaintiffs, their counsel, Ms. Cambron[4] and anyone else

---

[1] See Brown Responses to Int. Nos. 4, 5, 6, 7, 10, 12, 18 (DN 98,Ex. A); Walther Responses to Int. Nos. 4, 5, 6, 7, 10, 12, 17 (DN 98, Ex. B); Puckett Responses to Int. Nos. 4, 5, 6, 7, 11, 13, 19 (DN 98, Ex. C); Leigh Responses to Int. Nos. 4, 5, 6, 7, 11, 13, 16 (DN 98, Ex. D); All Responses to RFP Nos. 2, 4 (DN 98, Exs. A–D).
[2] In support of this argument Defendants cite *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 189–90 (S.D.N.Y. 2013); *Axler v. Scientific Ecology Group, Inc.,* 196 F.R.D. 210, 212 (D. Mass. 2000); *Nobles v. Jacobs/IMC,* No. 2002/26, 2003 U.S. Dist. LEXIS 24083, at *3–4 (D.V.I. July 7, 2003); *Coverdale v. CIGNA Life Ins. Co.,* 2010 U.S. Dist. LEXIS 126461, at *8, 11 (S.D. Ohio Nov. 16, 2010)7-34 Moore's Fed. Practice – Civil § 34.14[c].

[3] These objections relate to the following discovery requests: Brown Responses to Int. Nos. 4, 10, RFP Nos. 4, 11 (DN 98, Ex. A); Walther Responses to Int. Nos. 4, 10, RFP Nos. 4, 11 (second RFP No. 3) (DN 98, Ex. B);4 Puckett Responses to Int. Nos. 4, 11, RFP Nos. 4, 11 (second RFP No. 3) (DN 98, Ex. C); Leigh Responses to Int. Nos. 4, 11, RFP Nos. 4, 12 (DN 98, Ex. D).

[4] Theresa Cambron, a former plaintiff, is deceased. Her estate is represented in this action by Denise Puckett, in her capacity as Executrix.

including putative class members and third parties.[5] Defendants explain that these discovery requests seek only to obtain discoverable information that "concerns the factual circumstances of this litigation" rather than any communications between the Plaintiffs and their attorneys that would be subject to the attorney-client privilege. [6]

Such communications with third parties, i.e., nonparty putative class members, or a private opinion letter of the Kentucky Department of Revenue, for example, do not qualify for the attorney-client privilege according to the Defendants. Defendants cite to a number of court decisions that recognize that communications with putative class members are non-privileged as well as relevant to Rule 23 class certification considerations.[7] Defendants add that such communications between counsel and putative class members also may bear on possible misconduct by class counsel so as to be relevant to the adequacy of counsel under Rule 23(g). Finally, Defendants insist that no persuasive reason has been offered to withhold documents that concern putative class members, particularly given the history of the present lawsuit in which Plaintiffs have repeatedly produced such documents as deposition exhibits without any prior notice or prior production to the Defendants.[8] All such documents the Defendants explain should have been identified in the Plaintiff's initial Rule 26(a)(1)(A)(ii) disclosures.

---

[5]  Brown Responses to Int. Nos. 4, 5, 6, RFP No. 2 (Ex. A); Walther Responses to Int. Nos. 4, 5, 6, RFP No. 2 (Ex. B); Puckett Responses to Int. Nos. 4, 5, 6, RFP No. 2 (Ex. C); Leigh Responses to Int. Nos. 4, 5, 6, RFP No. 2 (Ex. D).

[6] (DN 98, Mot. To Compel, p. 10).
[7] *See In re Black Farmers Discrimination Litig.*, 856 F.Supp.2d 1, 21 (D.C. 2011); *Serrano v. Cintas Corp.*, 2010 U.S. Dist. LEXIS 18130, at *28 (E.D. Mich. Mar. 2, 2010); *Johnson v. Dow Employees' Pension Plan*, 2016 U.S. Dist. LEXIS 36825, at *16–18 (E.D. Mich. Mar. 22, 2016); *Schiller v. City of New York,* 245 F.R.D. 112, 116 (S.D. N.Y. 2007); *Penk v. Oregon State Bd. of Higher Educ.*, 99 F.R.D. 511, 516–17 (D. Or. 1983). *See also* ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 07-445 (Apr. 11, 2007) (providing that no attorney-client relationship exists with potential members of the class until a class has been certified and the opt out period has expired).

[8] Defendants cite as an example of such conduct the deposition of Michelle Le. (DN 98, Exh. E, pp. 83-86).

2). The 2nd category of discovery requests are those requests that concern communications with the Defendants themselves.[9] Defendants in this category seek any communications between the Plaintiffs, their counsel and any Defendant from January 1, 2007 to the present along with any documents reflecting such communications to or from the Defendants. Plaintiffs have indicated individually that each of them has no such documents so that the focus of the dispute falls upon that information and those documents in the possession of Plaintiffs' counsel. As an example of such a discoverable communication, Defendants point to the statements of Plaintiff's counsel on the record in the Jefferson Circuit Court which indicate that Plaintiff's counsel personally placed a telephone call directly to one or more employees of the Tax Ease Defendants, the circumstances of which have never been disclosed and, according to the Defendants, are directly relevant to the issues raised in light of the explicit reliance of the Plaintiffs on at least one such communication. While the Tax Ease Defendants concede that the Court previously has determined such communications to be inadmissible into evidence at trial, they nonetheless insist that such matters remain discoverable, citing the *Coverdale* decision.

Defendants also seek in this category of discovery all communications between the Plaintiffs' counsel and any Defendant that involve other foreclosure actions in which they have represented property owners against TELS and TELI, given the allegation of the Plaintiffs that TELS and TELI routinely abandon any such foreclosure cases in which the property owner retains counsel. Because the Plaintiffs have chosen to put at issue in the present lawsuit the litigation decisions of TELS and TELI in other legal proceedings, communications between Plaintiffs' counsel and the Defendants that are relevant to such allegations involving other foreclosure actions are argued to be discoverable. While the individual Plaintiffs insist they have

---

[9] This category includes the following: Brown Responses to Int. No.7, RFP No. 3
(DN 98, Ex. A); Walther Responses to Int. No. 7, RFP No. 3 (DN 98, Ex. B); Puckett Responses to Int. No.
7, RFP No. 3 (DN 98, Ex. C); Leigh Responses to Int. No. 7, RFP No. 3 (DN 98, Ex. D).

no such documents, Defendants counter that any such relevant, factual information or documents may not be shielded from discovery merely because it is in the possession of Plaintiffs' counsel.

3). The subject of the 3rd category of discovery requests in dispute involves information about the Plaintiff's involvement in other, prior civil, criminal or administrative legal proceedings.  Defendants in their interrogatories request that the individual Plaintiffs identify all cases or legal proceedings in which each of them has been a party including the full case caption, action number and jurisdiction along with a description of how the proceeding was resolved.[10] Defendants explain that this information is relevant due to the possibility that one or more of the Plaintiffs may previously have filed for bankruptcy, so as to call into question the adequacy of that individual as class representative, or have been involved in a prior similar action resolved by binding settlement agreement that may limit their recourse now, as well as, for potential impeachment under the Federal Rules of Evidence in the case of any prior criminal convictions. Consequently the Defendants ask that plaintiffs Puckett, Walther and Leigh be ordered to furnish such information about their personal litigation history, including the wholly-owned company of Mr. Leigh, which Defendants explain owns properties encumbered by tax liens.

4). In their 4th category, Defendants seek information that allegedly concerns the prior experience of the Plaintiffs' counsel as class counsel along with any prior litigation experience against TELS and TELI.  These interrogatories request that the Plaintiffs identify by caption, party, civil action number and jurisdiction all of those cases in which their counsel, John Dwyer Jr. and/or Karen Jaracz have sought to represent the class or been approved by class counsel, as well as, all of those cases involving TELS or TELI in which either of these attorneys has entered

---

[10] Included in this category of discovery requests are the following: Walther Response to Int. No. 8 (DN 98, Ex. B); Puckett Response to Int. No. 8 (DN 98, Ex. C); Leigh Responses to Int. Nos. 8, 9 (DN 98, Ex.D).

an appearance on behalf of any party.[11] The Tax Ease Defendants explain that such discovery requests are relevant, proportional and discoverable because they run to "the crucial question of whether Plaintiffs' counsel is adequate to serve as class counsel under [Rule 23(g)].[12]

5). Category 5 of the disputed discovery centers on those interrogatories, or document requests, that seek statements "from any person concerning any matter relating to this action."[13] In Response to these particular discovery requests, the Plaintiffs again raised their general objection to providing any discovery from their counsel, and additionally asserted the attorney work product doctrine under Rule 26(b)(5). Defendants protest that the work product doctrine, first, applies only to tangible documents prepared in anticipation of litigation,[14] rather than merely identifying information such as the identity of those individuals who have provided statements, which ordinarily would be required to be disclosed under the provisions of Rule 26(a)(1), and second, must be asserted by the means of an appropriate privilege log as mentioned above. To the extent that any witness statements are merely facts statements that do not involve the mental impressions of counsel subject to attorney work product protection, such statements in the view of the Defendants are fully discoverable and otherwise are subject only to redaction of those limited portions that otherwise might arguably be work product if they do contain such mental impressions, which Defendants insist they do not now seek.[15]

---

[11] This category of requests includes: Brown Responses to Int. Nos. 9, 18 (DN 98, Ex. A); Walther Responses to Int. Nos. 9, 17 (DN 98,Ex. B); Puckett Responses to Int. Nos. 10, 19 (DN 98,Ex. C); Leigh Responses to Int. Nos. 10, 16 (DN 98, Ex. D).

[12] *See Butto v. Collecto, Inc.*, 290 F.R.D. 372, 385 (E.D.N.Y. 2013); Kingsepp v. Wesleyan Univ., 142 F.R.D. 597, 600 (S.D.N.Y. 1992).

[13] These requests and responses are found at Brown Responses to Int. No. 10, RFP No. 4 (DN 98, Ex. A); Walther Responses to Int. No. 10, RFP No. 4 (DN 98, Ex.B); Puckett Responses to Int. No. 11, RFP No. 4 (DN 98, Ex. C); Leigh Responses to Int. No. 11, RFP No. 4 (N 98, Ex. D).

[14] *See Murphy v. Kmart Corp.*, 259 F.R.D. 421, 426–27 (D.S.D. 2009).

[15] *See Murphy*, 259 F.R.D. at 427.

6). Category 6 includes those interrogatories that request the factual basis for various paragraphs of the Plaintiffs' complaint to include ¶¶ 45, 50, 110, and 125.[16] In Response, Plaintiffs either denied personal knowledge of such facts, maintained that additional discovery was required before a response could be made, or otherwise merely generally cited the Defendants to those documents produced in response to subpoenas Plaintiffs served on the Bank of the Bluegrass and Bluegrass Business Services, along with the previously taken depositions of Nathan Miller, Billy Sherrow and Michelle Leigh.[17]

The Tax Ease Defendants argue that the separate and complete response requirement of Rule 33 (b) is not satisfied when a responding party merely refers to previously provided documents in a generic fashion.[18] Defendants insist that the professed personal ignorance of the responding Plaintiffs is no excuse since a factual basis for each of the material allegations of the complaint must exist in order to meet the requirements of Rule 11 of the Federal Rules of Civil Procedure and SCR 3.130 (3.1). Accordingly, the Defendants conclude that they are entitled to know the factual basis for the allegations raised against them in the aforementioned paragraphs of the complaint.

7). Discovery requests for documents that concern the prior payment or nonpayment of real estate taxes by the Plaintiffs are the subject of category 7 of the discovery at issue. Defendants have requested that the Plaintiffs produce all the documents that reflect their payment, or nonpayment, of taxes on any property in which they hold an ownership interest from 2003 to the present. In each case, the plaintiffs objected that the discovery request fell outside of

---

[16] Category six includes Brown Responses to Int. Nos. 11–14 (DN 98,Ex. A); Walther Responses to Int. Nos. 11–13 (DN 98, Ex. B); Puckett Responses to Int. Nos. 12–15 (DN 98, Ex. C); Leigh Responses to Int. Nos. 12–15 (DN 98, Ex. D).

[17] Puckett Interrogatory no.14 response; Brown Interrogatory No 14 response.

[18] *Essex Builders Group, Inc. v. Amerisure Ins. Co.,* 230 F.R.D. 682, 685 (M.D. Fla. 2005); *Myers v. Anthem Life Ins. Co.,* No. 3:14-cv-948-JHM-CHL, 2016 U.S. Dist. LEXIS 37411, at *24–30 (W.D. Ky. March 22, 2016).

the scope of discovery under Rule 26(b)(1).[19] Defendants counter that the scope of discovery under the cited Rule is broad and that, at a minimum, the habits of the Plaintiffs with respect to the payment or nonpayment of their property taxes "bear directly on their adequacy as class representatives and on whether their claims are typical of those of the putative class."[20] Defendants in this regard point to Plaintiff Leigh, "a real estate investor who has owned numerous properties and failed to pay taxes on numerous occasions"[21] so that his "greater level of sophistication and experience in the view of the Defendants would undermine his claim to have relied upon certain alleged misrepresentations of the Tax Ease Defendants.

8). Tax returns are the subject of category 8 of the discovery requests in dispute. The Defendants in their requests for production ask each of the Plaintiffs to produce his or her federal and state tax returns from 2005 to the present, along with copies of any letters or correspondence received from any individual during the same time frame that concern delinquent debt or obligations of any kind, i.e., dunning letters or past-due notices etc. Plaintiffs objected to these document requests as being outside the scope of Rule 26(b)(1). As to the late Ms. Cambron, Plaintiffs further responded that none of them were in possession, custody or control of any of her tax returns.[22]

The Tax Ease Defendants argue in response that the financial status of each representative Plaintiff is relevant to determine whether that individual may adequately and fairly

---

[19] Brown Response to RFP No. 6 (DN 98, Ex. A); Walther Response to RFP No. 6 (DN 98, Ex. B); Puckett Response to RFP No. 6 (DN 98, Ex. C); Leigh Response to RFP No. 6 (DN 98, Ex. D).

[20] DN 98, Motion to Compel pp. 22-23.
[21] Id.

[22] Brown Responses to RFP Nos. 10, 12 (DN 98, Ex. A); Walther Responses to RFP Nos. 10 (second RFP No. 2), 12 (second RFP No. 4) (DN 98, Ex. B); Puckett Responses to RFP Nos. 10 (second RFP No. 2), 12 (second RFP No. 4) (DN 98, Ex. C); Leigh Responses to RFP Nos. 10, 11, 13 (DN 98, Ex. D).

represent the interests of the putative class as a whole.[23]  Additionally, the Defendants argue that

those particular Plaintiffs who are shown to be habitually delinquent in their debts reasonably

may be presumed to have more extensive experience negotiating with creditors and therefore be

less likely to reasonably rely on the alleged misrepresentations of the Defendants that form the

basis of certain of the Plaintiffs' current claims.

9). Category 9 includes those document requests that seek to obtain each of the plaintiff's

attorney retainer agreements concerning the present lawsuit.[24] Plaintiffs in response objected that

the information sought was protected by the attorney-client privilege, while at the same time

each produced an extensively redacted agreement, but no accompanying privilege log related to

the redacted portions of the agreements.  Defendants protest that, absent such a log, it is

impossible for them to determine whether the redacted information is actually privileged.

Additionally, Defendants argue that case law confirms that such fee agreements are relevant and

discoverable in their entirety given that they relate to the adequacy of the Plaintiffs to serve as

class representative, as well as whether Plaintiffs' counsel is eligible to act as class counsel.[25]

10). The 10th and final category involves those requests for documents that support "any

damages sought by you, whether individually or on behalf of any putative class member in this

action."[26] Plaintiffs in their response to this document request objected based on the alleged

---

[23] *See In re ML-Lee Acquisition Fund II, L.P.*, 149 F.R.D.506, 508–09 (D. Del. 1993); *Rode v. Emery Air Freight Corp.*, 76 F.R.D. 229, 232–33 (W.D. Pa. 1977).
[24]  Brown Response to RFP No. 11 (DN 98, Ex. A); Walther Response to RFP No. 11 (second RFP No. 3) (DN 98, Ex. B); Puckett Response to RFP No. 11(second RFP No. 3) (DN 98, Ex. C); Leigh Response to RFP No. 12 (DN 98, Ex. D).

[25] *See In re Grand Jury Proceedings*, 33 F.3d 1060, 1063 (9th Cir. 1994); *Epstein v. Am. Reserve Corp.,* 1985 U.S. Dist. LEXIS 15842, at *7 (N.D. Ill. Sept. 18, 1985); *Ferrero v. Gen. Motors Corp.*, 105 F.R.D. 429, 433 (D.N.J. 1984).

[26] Brown Response to RFP No. 13 (DN 98, Ex. A); Walther Response to RFP No. 13 (second RFP No. 5) (DN 98, Ex. B); Puckett Response to RFP No. 13 (second RFP No. 5) (DN 98, Ex. C); Leigh Response to RFP No. 14 (DN 98, Ex. D).

refusal of the Defendants in certain instances to produce the documents that would establish such recoverable damages.  Otherwise, Plaintiffs again merely generally referred the Defendants to the documents produced in response to the Plaintiffs' subpoenas to the Bank of the Bluegrass and Bluegrass Business Services along with the depositions of Nathan Miller, Michelle Le and Billy Sherrow.  Defendants in reply insist that if the Plaintiffs are not currently in possession of such documents then they must say so and supplement their response at a later date should they obtain any such documents.  Additionally, any Plaintiffs that are currently withholding potentially responsive documents must so indicate.  Mere generic references to categories of documents, as earlier noted, in the view of the Defendants are not sufficient.[27]

*Plaintiffs' Response to the Motion*

Plaintiffs argue in their response that the "bulk of the dispute" actually centers on whether the Tax Ease Defendants can obtain discovery directly from counsel for the Plaintiffs and not whether the responses provided by the Plaintiffs are themselves complete.  As for those discovery requests that the Defendants maintain relate to the adequacy of class counsel, Plaintiffs counter that the 2003 amendments to Rule 23(g) place such an inquiry directly in the "hands of the Court" rather than those of the Defendants.[28]

Plaintiffs begin with the observation that because the Tax Ease Defendants in their discovery requests defined the term "you" to include the Plaintiffs' counsel, any discovery request for "all documents [that] in any way concern any Defendant" is in essence a discovery request that seeks production of the entire litigation file of the Plaintiffs' counsel, irrespective of the source of the documents whether it be from a plaintiff, another attorney, a government office

---

[27] *See Essex*, 230 F.R.D. at 685.

[28] (DN 105, Response p.  1).

or a third-party.  Likewise, Plaintiffs interpret those discovery requests that seek the identity of anyone who has given a statement as asking for "identification of every potential witness contacted by counsel" along with counsels' interview notes resulting from such witness contacts.

Such an indiscriminate request for a litigation file of opposing counsel, according to the Plaintiffs, has expressly been noted to fall outside the scope of discovery, as explained in *Hickman vs. Taylor*, 329 US 495, 499 (1947).  Plaintiffs include within this group of disputed discovery requests all interrogatories Nos. 4, 5, 6, 7 and all document production requests Nos. 2, 3 and 4, along with interrogatory nos. 10 to Brown and Puckett, and interrogatory Nos. 11 to Walther and Leigh.

Plaintiffs compare such requests to those condemned in *Cobble v. Value City Furniture,* No. 3:06-CV-631, 2008 WL 114937 at*1 (W.D. Ky. Jan. 10, 2008), wherein the Court concluded that witness statements obtained by an attorney or by an investigator represent "classic work product" protected from disclosure under Rule 26(b)(5).  Further, Plaintiffs point out that even in the case of factual information, Defendants are still required by the Rule to show that they have a substantial need for the requested information or materials and cannot obtain the substantial equivalent of them by other means.[29] As a result of *Cobble*, and its progeny, [30] Plaintiffs claim that draft affidavits and attorney correspondence concerning such drafts are deemed to be work product, which is not subject to discovery.[31]  Indeed, Plaintiffs claim that even fully executed affidavits of witnesses receive the same protection from discovery.[32]

---

[29] *Baker v. Gen. Motors Corp.,* 209 F.3d 1051, 1054 (8th Cir. 2000) (cited by *Cobble*).

[30] *Randleman v. Fid. Nat. Title Ins. Co.*, 251 F.R.D. 281, 287 (N.D. Ohio 2008).

[31] *Clemmons v. Acad.for Educ. Dev*., 300 F.R.D. 6, 7–8 (D.D.C. 2013).

[32] *SFEG Corp. v. Blendtec, Inc.,* No. 3:15-0466, 2016 WL 2770661, at *3 (M.D. Tenn. May 13, 2016).

Plaintiffs dispute that the case authority cited by the Defendants supports any type of broad "all facts" discovery from the file of opposing counsel.  In particular, Plaintiffs challenge the *Coverdale* decision by pointing out that the issue in *Coverdale* involved the mailing and delivery of a letter critical to the resolution of the Court's jurisdiction, unlike the present case. While the Court in *Coverdale* held that the date of delivery of the letter was essential, citing the Eighth Circuit in *Shelton vs. American Motors Corp.*, 805 F ,2d 1323, 1327 (8th Cir. 1986), it refused to allow a discovery deposition of opposing counsel while instead holding that well-crafted written discovery could obtain the information concerning the letter.

In the Plaintiffs' view the narrowly defined request in *Coverdale* stands in sharp contrast to "wide-open" discovery propounded by the Tax Ease Defendants.  Because much of the information concerning the identity of putative class members, and the individual Plaintiffs' history concerning property tax payment, is already in the possession of the Tax Ease Defendants, Plaintiffs now insist that under no circumstances can the Defendants hope to show that they are unable to obtain the substantial equivalent of such materials by any other means as required by the provisions of the work product doctrine incorporated in Rule 26(b)(5).

Likewise, Plaintiffs distinguish the facts of *Chevron Corp. v. Donziger*, 296 F RD 168, 190 (SDNY 2013), which involved an individual, Steven Donziger, a party to the lawsuit, who apparently was attempting to hide, or otherwise shelter from production, plainly discoverable documents by placing them into the hands of his Ecuadorian attorneys, unlike the present Plaintiffs who have previously produced all responsive documents in their own possession, custody or control.  Plaintiffs also contrast their situation with those cases which involve the production of questionnaires sent by parties in class actions such as *Serrano vs. Cintas Corp.*,

12

2010 WL 746430 (E.D. Mich. Mar. 2, 2010), given that no such questionnaires have been used by the Plaintiffs here.

Plaintiffs contend that they have expressly asserted the work product doctrine in response to interrogatory No 10 and document request No 4 along with their general objection to those discovery requests directed to Plaintiffs' counsel.  Plaintiffs acknowledge that such an objection could have been raised in response to other discovery requests, but conclude that counsel for the Tax Ease Defendants are fully aware of the entire nature of their objections.  Plaintiffs concede that they did not prepare a privilege log as required by Rule 26(b)(5)(A)(ii) as to do so in their view would be "futile, unduly burdensome and inconsistent with the concept of work product in general" given the broad scope of the Defendants discovery requests.

Indeed, they maintain that to prepare a privilege log in response to document request No 3 and interrogatory No 4 would require the preparation of a log that included virtually every item contained in counsels' litigation file, as well as, risk the disclosure of the very information that is otherwise subject to such protection, thereby providing a virtual "roadmap of counsel's' investigation."[33]  Plaintiffs point out that they produced all the documents that they individually possessed along with redacted copies of their fee agreements even in the face of legal authority in the Six Circuit that production of such agreements is not required.[34]  Based on the authority of *Hickman, Baker, Cobble* and *Randleman*, Plaintiffs explain that they have "drawn the line" at the production of documents and protected information found in the files of their counsel.

The next specific item discussed in the Plaintiffs' response is the affidavit of the late Karyn Julian, an affidavit prepared by the Plaintiffs' current counsel prior to Julian's death.

---

[33] (DN 105, p.5).

[34] *Stanich v. Travelers Indem. Co*., 259 F.R.D. 294, 322 (N.D. Ohio 2009).

Plaintiffs explain that at one time she was a counterclaim plaintiff in the present suit prior to its removal from state court.  The counterclaims of Karyn and those of her husband, Phillip Julian, however, were dismissed prior to their deaths.  The Tax Ease Defendants also voluntarily dismissed their own claims against the Julians.  Plaintiffs now argue that the only potential relevance of Karyn Julian's affidavit would be at a sanctions or disciplinary hearing "involving one of the defense counsel."[35]  Nevertheless, Plaintiffs are willing to submit her affidavit for in camera review "along with any courtroom video or other contextual information," that the Court may require to evaluate the affidavit in the context of the present discovery dispute.

As for those discovery requests by which the Tax Ease Defendants ostensibly seek to evaluate the adequacy of class counsel,[36] Plaintiffs insist that the duty for any such evaluation falls squarely on the Court, not the Defendants, given the language of Rule 23(g) following the 2003 amendment to the Rule.   Plaintiffs explain in this respect that evaluation of the adequacy of class counsel is a separate matter from the adequacy of the class representatives so that nothing under Rule 23(g), or Rules 33 and 34, exposes putative class counsel to such discovery requests as those presently directed at their attorneys.  In other words, the Defendants have no role to play in vetting class counsel, as opposed to the Court under Rule 23(g), and neither of the two cases cited by the Defendants so holds in the view of the Plaintiffs.

Plaintiffs next argue that those interrogatories that seek to obtain the factual basis for ¶ 50 of the complaint, as it relates to the prior settlements of other legal actions that involve the Tax Ease Defendants, are now moot given the prior ruling of the Magistrate Judge, who held such

---

[35] (DN 105,p. 6).
[36] Brown Int. No. 9, 18(DN 98, Ex. A) ; Walther Int.Nos. 9, 17(DN 98, Ex. B) ; Puckett Int. Nos.10, 19 (DN 98, Ex. C); Leigh Int. Nos.10, 16 (DN 98, Ex. D).

information to be inadmissible into evidence under Rule 408 of the Federal Rules of Evidence.[37] Further, Plaintiffs add that the Tax Ease Defendants have in their response to requests for admissions conceded that the factual representations made in ¶ 50 are accurate in this respect.[38] As for those interrogatories that seek to obtain all facts that support ¶ 45 of the complaint, Plaintiffs maintain that their general reference to the previously cited depositions is sufficient, given the broad nature of the information sought.  Paragraph 45 according to the Plaintiffs is essentially "a summary of the entire complaint" so that the specific references made in the response of the Plaintiffs to the three prior depositions, and to the documents produced in response to the bank subpoena, provide a sufficiently detailed response to the interrogatory.[39]

Plaintiffs next contend that the request of the Tax Ease Defendants for tax returns, credit reports, debt payment history and litigation status, ostensibly made to gauge the adequacy of the class representatives, are all disfavored in class actions as the Manual for Complex Litigation (4th ed.) explains at §21.141[40] Plaintiffs also cite to the *Sanderson* decision in their response as another example of the rejection of such a request by a federal appellate court, along with the decision *Stanich vs. Travelers Indemnity Co*., 259 F. R.D. 294, 321 (N.D. Ohio 2009) [41]

---

[37] Brown Int. 12(DN 98, Ex. A); Puckett Int. 13(DN 98, Ex. C); Walther Int. 12(DN 98, Ex. B); Leigh Int. 13(DN 98, Ex. D).

[38] (DN 90, Ex.  2).

[39] Puckett Interrogatory 12, the first half of Puckett Interrogatory 14 (DN 98, Ex. C), and Brown Interrogatory 14 (DN 98, Ex A).

[40] *Sanderson v. Winner*, 507 F.2d 477, 479-80 (10th Cir. 1974).

[41] See *Roberts v. Source for Republic* Data, 2009 W.L. 3837502 *4 (Nov. 17, 2009 WD. Mo.)(discussing *Sanderson*).

Plaintiffs continue that, as to their fee agreements with counsel,[42] both *Sanderson* and *Stanich* hold that such fee agreements are not subject to discovery during the pre-class certification proceedings, although Plaintiffs concede that other judicial authority exists which does hold such agreements to be discoverable – – a circumstance that led the Plaintiffs to produce to the Defendants the appropriately redacted versions of their fee agreements, agreements that according to the Plaintiffs set forth the entire basis for all fees and costs.  Only because the fee agreement was set forth in an engagement letter that itself "contains specific legal advice to the plaintiffs regarding their rights and duties" did the plaintiffs redact certain portions of the engagement letter that they maintain are protected by the attorney-client privilege.[43]

Finally, Plaintiffs conclude their response to the motion to compel with their contention that their discovery responses adequately identify their claimed damages "to the penny."[44] Plaintiff Puckett in her interrogatory answer, for example, identified $938 of "non-actual prelitigation attorney's fees" along with the difference between the $400 amount charged by BGA for its title report concerning her property and what the vendors who actually performed the title search actually were paid.  Plaintiffs seek treble damages pursuant to 18 U.S.C. § 1964(c), punitive damages and an award of reasonable attorneys' fees.  Puckett adds that she already has provided to the Defendants 60 documents most of which are letters that bear the signature of Billy Sherrow, in response to other requests for documents.  On the question of class damages, Plaintiffs argue that the only numbers available will most likely be contained in the

---

[42] Brown RFD 11 (DN 98, Ex. A); Puckett RFD 3 (DN 98, Ex C.); Walther RFD 3 (DN 98, Ex B); and Leigh RFD 12(DN 98, Ex D).

[43] Plaintiffs have offered to provide unredacted copies of the fee agreement to the Court for its *in camera* review if requested.

[44]  (DN 105, p. 10).  See Puckett second RFD 5 (DN 98, Ex.C); Brown RFD 13 (DN 98, Ex. A); Walther RFD 13 (DN 98, Ex. B), and Leigh RFD 14 (DN 98, Ex. D).

16

Bank of the Bluegrass bank statements of the Sherrow law firm.  In sum, Plaintiffs reiterate that

the bulk of the dispute is the result of efforts by the Tax Ease Defendants to obtain directly from

their counsels' files irrelevant or otherwise protected information and/or documents.


*The Controlling Standards*

In this portion of our opinion, the Court turns temporarily from the arguments of the

parties to set out the law as it relates to relevancy under Rule 26(b)(1), the assertion of the

attorney-client privilege under Rule 501 in conjunction with Kentucky law and the work product

doctrine as established by Rule 26(b)(3). The Court also summarizes the privilege log

requirements imposed by Rule 26(b)(5) after which it addresses the substance of the primary

arguments raised in the context of each of the ten categories previously identified.


*Relevancy*

The scope of discovery is set out in Rule 26(b)(1) of the Federal Rules of Civil

Procedure.  The Rule explicitly states that a party "may obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense and proportionate to the

needs of the case...." Fed. R. Civ. P. 26(b)(1).  It is well established by now that this language is

broadly construed by the federal courts to include "any matter that bears on, or that reasonably

could lead to other matter[s] that could bear on, any issue that is or may be in the case."

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329

U.S. 495, 501 (1947)).  See also, *Schlagenhauf v. Holder*, 379 U.S. 104, 114-115 (1964)

("Discovery rules are to be accorded a broad and liberal treatment ... to effectuate their purpose

that 'civil trials in the federal courts no longer need be carried out in the dark.'") (quoting *Hickman*, 392 U.S. at 501).

Sixth Circuit federal district courts have echoed the same viewpoint in various published decisions over the years. *See Hemlock Semiconductor Corp. v. Deutsche Solar GmbH,* 116 F. Supp. 3d 818, 835(E.D. Mich. 2015)( "The Federal Rules of Civil Procedure are in place to facilitate discovery of all relevant evidence. Rule 26 authorizes a broad scope of discovery, provided the material sought has some probative value in proving or disproving a claim or defense." ); *Reitz v. City of Mt. Juliet,* 680 F.supp.2d 888, 891 (M.D. Tenn. 2010)(" "[T]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad," and Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.")( quoting, *Conti v. Am. Axle & Mfg*., 326 Fed.Appx. 900, 904 (6th Cir.2009)); *In re Richardson-Merrell, Inc*., 97 F.R.D. 481, 483 (S.D. Ohio 1983) (Rule 26(b) to be accorded broad and liberal treatment). *Dunn v. Midwestern Indemnity*, 88 F.R.D. 191, 194-195 (S.D. Ohio 1980) ("The general discovery provisions of the Federal Rules of Civil Procedure are to be liberally construed."); *Laufman v. Oakley Building & Loan Co*., 72 F.R.D. 116, 120-121 (S.D. Ohio 1976) (same).  In fact, this Court previously has written on the broad scope of discovery in *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380-381 (W.D. Ky. 2007).  *See also, Groupwell Int'l (HK), Ltd. v. Gourmet Exp., LLC*, 227 F.R.D. 348, 358-359 (W.D. Ky. 2011) (discussing Invesco).

What the cited decisions confirm is that the scope of inquiry permitted by Rule 26(b)(1) is significantly broader than that permitted at trial. *See Mellon v. Cooper-Jarrett, Inc*., 424 F.2d 499, 500-501 (6th Cir. 1970) (discussing the scope of discovery in the context of a deposition); Grant v Target Corp, 281 F.R.D. 299, 306-07 (S.D. Ohio 2012)("Information

subject to disclosure during discovery need not relate directly to the merits of the claims or defenses of the parties. Rather, it may also relate to any of the myriad of fact-oriented issues that arise in connection with the litigation.")  When faced with questions over, or disputes about, what information or documents may be obtained based on their relevancy, it is axiomatic that the trial court is afforded broad discretion to determine the boundaries of inquiry.  *Chrysler v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981), cert. denied, 454 U.S. 893 (1981).  *See also, In re Care Source Management Group Co*, 289 F.R.D. 251, 252 (S.D. Ohio 2013)("The trial court has broad discretion in determining theproper scope of discovery."); *Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002) ("The court has broad discretion in determining the scope of discovery and in setting limits.").  Absent a clear abuse of the trial court's discretion, its decisions regarding the scope of discovery will not be disturbed on review.  *Chrysler Corp.*, 643 F.2d at 540; *Chemical & Industry Corp. v. Druffel*, 301 F.2d 126, 129 (6th Cir. 1962) ("Under the rules, the extent of discovery and the use of protective orders is clearly within the discretion of the trial judge.").

Ordinarily, once the relevancy of the requested information or documents sought by a party is established, then the focus of the court will fall on whether sufficient reasons are offered by the responding party to justify withholding these items from disclosure.  The nature of the responding party's duty in such circumstances has been described by this Court previously:

> When the discovery material sought appears to be relevant, the party who is resisting production has the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure. *Horizon Holdings, LLC v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 211-212 (D.Kan. 2002).  A party who seeks to avoid disclosure of requested materials "bears a heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury..." *Empire of Carolina, Inc. v. Mackle*, 108 FRD. 323, 326 (S.D.Fla, 1985) (citing *Citicorp v. Interbank Card Association,* 478 F.Supp. 756 (S.D.N.Y. 1979)).  Courts generally do not grant

protective orders without a strong showing of good cause, and the burden of establishing good cause falls on the party who seeks such an order.  *Howard v. Galesi*, 107 F.R.D. 348, 350 (S.D.N.Y. 1985) (citing 8 Charles Alan Wrights & Arthur Miller, *Federal Practice & Procedure*, §2035 (1st ed. 1970)).  See also, *Cipollone v. Liggett Group, Inc.* 106 F.R.D. 573 (D.N.J. 1985) ("The party seeking a protective order under this section bears the burden of proving its necessity.").

*Invesco*, 244 F.R.D. at 380. *See gen., Surles v Greyhound Lines, Inc.,* 474 F.3d 288, 305 (6th Cir. 2007)("Although a plaintiff should not be denied access to information necessary to establish [its] claim, neither may a plaintiff be permitted to 'go fishing'"); *Ward v. Am. Pizza Co*., 279 F.R.D. 451, 458 (S.D. Ohio 2012) ("[T]he Court has discretion to limit or even preclude discovery which meets the general standard of relevance found in Rule 26(b)(1) if the discovery is unreasonably duplicative, or the burden of providing discovery outweighs the benefits, taking into account factors such as the importance of the requested discovery to the central issues in the case, the amount in controversy, and the parties' resources."); *Davis v. Creditors interchange Receivable Mgmt., LLC*, 585 F. Supp.2d 968, 970 (N.D. Ohio 2008)(same).


*The Attorney-Client Privilege*

Claims of attorney-client privilege in a civil case are governed by state law where such law supplies the rule of decision for a claim or defense.  See, Fed.R.Evid. 501.  *See gen., SBAV LP v. Porter Bancorp, Inc.,* No. 3:13-CV-00710-TBR, 2015 WL 1471020 at *6 (W.D. Ky. Mar. 31, 2015) ("District courts within the Sixth Circuit have applied Rule 501's principle - - that is, that state law governs privilege or state law supplies the rule of decision - - in a broad spectrum of cases."); *Snyder v. Fleetwood RV, Inc.*, 303 F.R.D502, 504-505 (S.D. Ohio 2014) ("State law supplies the rule of decision in diversity actions such as the action before the court.").

Where the parties are before the Court based on diversity of citizenship and the claims

raised are primarily ones of state law, we look to Kentucky law and its provisions regarding the

attorney-client privilege to guide us in our review. *See gen., Arapahoe Res., LLC v. Professional*

*Land Res., LLC*, No. CIV. 15-10-ART, 2015 WL 4887321 at *2 (E.D. Ky. Aug. 17, 2015)

("Under Kentucky law, a choice-of-law analysis is only required if the state laws conflict.")

(citing *Asher v. Unarco Material Handling, Inc.*, 737 F.Supp.2d 662, 667 (E.D. Ky. 2010)).

Under Kentucky law, the party that asserts the privilege has the burden to prove that the

communications at issue satisfy the requirements of the lawyer-client privilege now codified in

Kentucky at Kentucky Rule of Evidence (KRE) 503. *See, St. Luke Hosps., Inc. v. Kopowski*,.

160 S.W.3d 771, 775 n. 13 (Ky. 2005) (citing *Haney v. Yates*, 40 S.W.3d 352, 355 (Ky. 2001)).

By operation of KRE 503, the attorney-client privilege will attach to a confidential

communication made for the purpose of facilitating the rendition of professional legal services to

a client, where the communication is made between: the client or representative of the client and

the client's lawyer or representative of the lawyer; the lawyer and a representative of the lawyer;

the client or its representative or the client's lawyer or representative of the lawyer to a lawyer or

representative of a lawyer that represents another party in a pending action and concerns a matter

of common interest; representatives of the client or the client and a representative of the client; or

lawyers and their representatives who are representing the same client. See KRE 503(3)(b)(1)-

(5). *See, Lexington Public Library v. Clark*, 90 S.W.3d 53-59 (Ky. 2002) (discussing the

adoption of the federal standard under which a communication made by an employee acting

within the scope of employment also is potentially protected by the attorney-client privilege). A

communication will be considered to be "confidential" under KRE 503(a)(5) if it is "not intended

to be disclosed to third persons other than those to whom disclosure is made in furtherance of the

rendition of professional legal services to the client or those reasonably necessary for the transmission of a communication." *Id*., *St. Luke Hosps.*, 160 S.W.3d at 776.

As *Lexington Public Library* explains the privilege works to protect only those disclosures needed to obtain legal advice which otherwise would not have been made absent the privilege. *Lexington Public Library*, 90 S.W.3d at 60 (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976). The trigger for the privilege is the client's request for legal, as opposed to business, advice. *Id*. (citing *In re Grand Jury Subpoena Decus Tecum*, 731 F.2d 1032, 1037 (2nd Cir. 1984)). Mere business advice or business documents that happen to be given to or sent by an attorney are not automatically recipients of the attorney-client privilege. *Id*. (citing *United States v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984). Only in those situations in which client communications otherwise intended to apprise an attorney of business matters contain an implied request for legal advice on such matters will the attorney-client privilege apply. *Id*. (citing *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 403-04 (8th Cir. 1986)).

The attorney-client privilege may be claimed by the client, or by the lawyer or lawyer's representative at the time of the communication, but only on behalf of the client. KRE 503(c). A client who voluntarily discloses or consents to the disclosure of any significant part of an otherwise protected confidential communication made to facilitate the rendition of legal services will be held to have waived the privilege. *3M Co. v. Engle*, 328 S.W.3d 184, 189 (Ky. 2010) (citing *St. Clair v. Commonwealth*, 140 S.W.3d 510, 548-49 (Ky. 2004)). See also, KRE 509 ("A person upon whom these rules confer a privilege against disclosure waives the privilege if he or his predecessor while owner of the privilege voluntarily discloses or consents to disclosure of any significant part of the privilege matter.") *See gen., Collins v. Braden*, 384 S.W.3d 154, 161-162 (Ky. 2012) (discussing the attorney-client privilege in Kentucky under KRE 503).

*The Work Product Doctrine*

Plaintiffs rely in certain instances not only upon the attorney-client privilege to withhold disclosure of materials.  They also assert the work product doctrine under Rule 26(b)(3) of the Federal Rules of Civil Procedure.  Federal law, rather than state law, governs the application of the doctrine.  See *360 Construction Co., Inc. v. Atsalis Bros. Painting Co.*, 280 F.R.D. 347, 353 (E.D. Mich. 2012) ("the work product doctrine is governed by federal law, therefore, Federal Rule of Civil Procedure 26 governs.") (citing *Taylor v. Temple & Cutler*, 192 F.R.D. 552, 559-60 (E.D. Mich. 1999)).  The work product doctrine first recognized in *Hickman v. Taylor*, 329 U.S. 495 (1947) is "distinct from and broader than the attorney-client privilege."  *Gruenbaum v Werner Enterprises, Inc.*, 270 F.R.D. 298, 303 (S.D. Ohio 2010). *See also*, *Invesco*, 234 F.R.D. at 385-86 (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)); *Hait v. Clark*, 194 S.W.3d 324, 329 (Ky. 2006)("The work product privilege provided in CR 26.02(3)(a) is nearly identical to that contained in Fed. R. Civ. P. 26(b)(3) and provides that the court "shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.");*St. Luke Hospital v. Kopowski*, 160 S.W.3d at 777(distinguishing between the attorney-client privilege and the work product doctrine).

The attorney-client privilege involves only confidential communications between attorney and client or their representatives.  In contrast, the work product doctrine protects any document prepared by or for an attorney in anticipation of litigation.  *In re Antitrust Grand Jury*, 805 F.2d 163 (citing *In re Special Sept. 1978 Grand Jury*, 640 F.2d 49, 62 (7th Cir. 1980)).  The rationale for the doctrine, as discussed in *United States v. Roxworthy*, 457 F.3d 590, 593-94 (6th Cir. 2006) is to permit an attorney "to assemble information, sift what he considers to be relevant

from the irrelevant facts, prepare his legal theories and plan his strategy without undue or needless interference...." *Id.; Tennessee Laborers Health & Welfare Fund v. Columbia/HCA Healthcare Corp.,* 293 F.3d 289, 294 (6th Cir.2002)(same). The doctrine has been incorporated into Rule 26(b)(3). *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) ("Rule 26(b)(3) protects (1) documents and tangible things; (2) prepared in anticipation of litigation or for trial; (3) by or for another party or its representative."). *See, In re Powerhouse Licensing LLC*, 441 F.3d 467, 472 (6th Cir. 2006).

A party that hopes to rely upon the work product doctrine to prevent disclosure of materials first must show that the documents at issue were prepared in anticipation of litigation. *Roxworthy,* 457 F.3d at 594 (citing *In re Powerhouse Licensing, LLC,* 441 F.3d at 473). In *Roxworthy*, the Sixth Circuit adopted the "because of" standard by which the court asks whether the disputed document was "prepared or obtained because of the prospect of litigation." *Id.* Documents that are prepared in the ordinary course of business or created due to public requirements unrelated to the litigation are not covered by the work product privilege. *Roxworthy,* 457 F.3d at 594 (citing *United States v. Adlman,* 134 F.3d 1194, 1205 (2nd Cir. 1998)); *Lexington Public Library v. Clark*, 90 S.W.3d 53, 60 (Ky. 2002)(communications made for business purposes are not protected). The "because of" test has both a subjective and an objective component with the party seeking to avoid disclosure being required to establish a subjective belief that litigation was a real possibility and demonstrate that such belief was objectively reasonable. *Id.* (citing *In re OM Group Securities Litigation*, 226 F.R.D.579, 584-85 (N.D. Ohio 2005)).

Only after the party seeking the protection of the doctrine has established its eligibility via the "anticipation of litigation" requirement is the requesting party required to show

24

substantial need and undue hardship in order to obtain production of the documents at issue. *Biegas v Quickway Carriers, Inc*., 573 F.3d 590, 593 (6th Cir. 2009); *In re Powerhouse Licensing LLC*, 441 F.3d 467, 473 (6th Cir. 2006); *Gruenbaum*, 279 F.R.D at 303("these "documents and tangible things" may nevertheless be discovered if the party seeking the information establishes that: (1) the documents are otherwise discoverable under Rule 26(b)(1); and (2) the requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.").

The Sixth Circuit has recognized two categories of work product: (1) ordinary or fact work product which is the written or oral information transmitted to an attorney and recorded, which the courts have held to be discoverable under certain circumstances, and (2) opinion work product which includes those materials that reflect an attorney's mental impressions, opinions, conclusions, judgments or legal theories.  *See, In re Antitrust Grand Jury*, 805 F.2d at 163; *Randleman v Fidelity Nat. Title Ins. Co*. 251 F.R.D. 281, 287 (N.D. Ohio 2008)(discussing the distinction between fact and opinion work product).  Attorney opinion work product ordinarily receives an extraordinarily high level of protection as indicated by the language of Rule 26(b)(3)(B) and "can be discovered only in very rare and extraordinary circumstances." Id.(citing *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 2977)); *Cobble v. Value City Furniture*, 2008 WL 114937, at *2 (W.D.Ky.2008)(opinion work product enjoys almost absolute protection).  Yet, even "attorney opinion work product is not sacrosanct ...".  *Invesco*, 244 F.R.D. at 386.  *See gen*., *The Attorney-Client Privilege and Work product Doctrine*, ( ABA  3d ed. 1997) ("generally speaking, when a lawyer's activities are instrumental in proving an issue in dispute, discovery of opinion work product is accorded.").

The work product doctrine similar to the attorney-client privilege may be waived if the work product is disclosed to a third party. *In re ClassicStar Mare Lease Litigation*, No. 5:07-CV-353-JMH, 2012 WL 1158747 at *2 (E.D.Ky. Apr. 6, 2012); *United States v. Weldon*, 541 F. Supp2d 890, 900 (E.D. Ky. 2006). The third party to whom such disclosure is made, however, must be an adversary. *Id*. (citing *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 305 (6th Cir. 2002), a requirement that distinguishes waiver in this context from the waiver of the attorney-client privilege under which disclosure need not be limited to an adversary to result in waiver.

*The Privilege Log Requirement*

A party that claims the protection of the attorney-client privilege or the attorney work product doctrine by withholding information otherwise discoverable based on a claim under either protection must not only expressly raise the claim, but also in accordance with Rule 26(b)(5)(A)(ii) prepare a privilege log that generally describes the nature of the documents not produced to enable the other parties to assess the merits of the claim. Fed. R. Civ. P. 26(b)(5)(A)(ii).

The log required by Rule 26(b)(5) must describe the nature of the documents withheld and do so in a manner that will enable the requesting party to assess the validity of the claim. *See Coohey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010) ("The privilege log must be detailed enough to provide that the communications in question were in fact confidential communications relating to legal advice."). *See also In re Universal Service Fund Tel. Billing Practices Litig*. 232 F.R.D. 669 (D. Kan. 2005)( "[t]he information provided [in a privilege log]

must be sufficient to enable the court to determine whether each element of the asserted privilege or protection is satisfied.")

As *Coohey* more fully explains: "Courts require the following to be included in privilege logs:

1. A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;

2. The date upon which the document was prepared;

3. The date of the document (if different from # 2);

4. The identity of the person(s) who prepared the document;

5. The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, "including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;"

6. The purpose of preparing the document, including an evidentiary showing, based on competent evidence, "supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;" a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, "that the documents do not contain or incorporate non-privileged underlying facts;"

7. The number of pages of the document;

8. The party's basis "for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and

9. Any other pertinent information necessary to establish the elements of each asserted privilege."

*Cooey*, 269 FRD at 649(citing *In re Universal Serv.*, 232 F.R.D. at 673 (quoting *Hill*, 2002 WL 598331, at *2, 2002 U.S. Dist. LEXIS 6637, at *8.))

The complete failure of a responding party to provide a privilege log may in certain situations result in a waiver of the claimed privilege. *Surgery Center at 900 N. Mich Ave, LLC v. American Physicians Assurance Corp. Inc.,* ___F.R.D. ___, 2016 WL 6962840 at *9-11 (N.D. Ill Nov. 29, 2016); *S.E.C. v. Yorkville Advisers, LLC*, 300 F.R.D 152, 157-58 (S.D.N.Y. 2014);.*Ritacca v. Abbott Lab.*, 203 F.R.D. 332, 334-335 (N.D. Ill. 2001) (citing *Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir. 1991).  Such a waiver, however, is not automatic given the harshness of such a sanction. *First Savings Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F.Supp. 1356, 1361-1363 (D. Kan. 1995) (collecting cases).  *See also, EEOC v. Safeway Store, Inc.*, 2002 WL 31947153 at *2 (N.D. Cal. Sept. 16, 2002) ("Finding that a party has waived its right to assert a privilege objection due to its conduct (or lack thereof) is a harsh sanction utilized where the party has unjustifiably delayed discovery.") (quoting *Ritacca*, 203 F.R.D. at 335).  Given the harshness of the waiver sanction in this context, it has been held:

> Minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver.  In contrast, evidence of foot-dragging or a cavalier attitude towards following court orders and the discovery rules supports finding waiver.

*Ritacca*, 203 F.R.D. at 335. *See Johnson v. Gross*, 611 Fed. Appx 544, 547 (11th Cir. 2015)(nonparty attorney did not meet his burden of establishing that the work product doctrine applied to protect the disclosure of  his communications with former criminal defendant client where attorney did not describe the nature of the undisclosed communications in a manner that

allowed the civil plaintiffs or the court to evaluate the claimed privilege, did not provide a reason

why the privilege applied to the undisclosed communications and did not provide a privilege log)

In *Ritacca*, the court concluded that the defendant's 5-month delay in raising its privilege

objection was inexcusable and unjustified, where the defendant had never even previously

mentioned the assertion of the privilege.  *Ritacca*, 203 F.R.D. at 336.  In contrast, if the

defendant in good faith makes an effort to correct the oversight, then certain courts have excused

an improper blanket assertion of attorney-client privilege made without the timely provision of a

privilege log.  *See Eureka  Financial Corp. v. Hartford Acc. & Indem. Co*., 136 F.R.D. 179, 184

(E.D. Cal. 1991).  Also, mere delay in producing a privilege log, standing alone, has been held

not to justify waiver.  *Bud Antle, Inc. v. Grow-Tech, Inc*., 131 F.R.D. 179, 182-183 (N.D.Cal.

1990).

Simply put, no per se rule compels the waiver of the attorney-client privilege or work

product doctrine if the required privilege log is not initially produced.  *See Burlington Northern

& Sante Fe R.R. Co. v. U.S. District Court for Montana,* 408 F.3d 1142, 1149 (9th Cir. 2005);

*Surgery Center at 900 N. Mich. Ave*., 2016 WL 6962840 at *9 ("Since Rule 26(b)(5)(A) does not

contain a time limit within which a privilege log must be submitted, the cases are not harmonious

as to when a privilege log is impermissibly late and whether forfeiture of a claimed privilege is a

consequence of a belated filing."). Ultimately, the matter involves a reasoned exercise of the

court's discretion. *Id*. at *10. Nevertheless, blanket claims of privilege made without the required

support under the Rule are strongly disfavored.  *Price v. Board of Educ. Of City of Chicago,* 755

F.3d 605, 608 (7th Cir. 2014).

*Categories of Discovery at Issue*

*Category One*

We began our consideration of the disputed discovery requests with those requests in the first category under review – – requests that seek to obtain from the Plaintiffs, or counsel for the Plaintiffs, facts that are contained in communications with third-parties to include putative class members.[45] The Tax Ease Defendants, as noted, insist that the repeated objection of the Plaintiffs-- that such otherwise discoverable documents or information are not subject to production merely because they are in possession of the Plaintiffs' counsel-- is not a proper basis on which to withhold the requested information or documents, particularly where Defendants insist that they do not seek any items protected by the attorney-client privilege or the attorney work product doctrine.

The Court agrees with the Defendants in principle.  Otherwise discoverable facts are not rendered immune from production merely because they are to be found in the office or the case files of a party's attorney.  Indeed, the law is quite clear on this point.  See, *See In re Grand Jury Subpoena (Mr. S.),* 662 F.3d 65, 69 (1st Cir. 2011)("It is well-established that documents and things in the possession of a lawyer that are not privileged and are not work product must be produced in response to a properly served subpoena."); *CSX Transp., Inc. v. ABC&D Recycling, Inc.*, No. CV 11-30268-FDS, 2016 WL 6561551, at *3 (D. Mass. Nov. 3, 2016) ("Nor is it a basis of protection from discovery that the documents are in the files of a law firm. "Rather, '[a] party is charged with knowledge of what its agents know, or what is in records available to it... A party must disclose facts in its attorneys' possession even though those facts have not been

---

[45] Brown Int. Nos. 4, 10, RFP Nos. 4, 11 (DN 98, Ex. A); Walther Int. Nos. 4, 10, RFP Nos. 4, 11 (second RFP No. 3) (DN 98, Ex. B);4 Puckett Int. Nos. 4, 11, RFP Nos. 4, 11 (second RFP No. 3) (DN 98, Ex. C); Leigh Int. Nos. 4, 11, RFP Nos. 4, 12 (DN 98, Ex. D).

transmitted to the party.' ")(quoting *Axler v. Scientific Ecology Grp., Inc.*, 196 F.R.D. 210, 212 (D. Mass. 2000) (quoting 8A C.A. Wright & A.R. Miller, <u>Federal Practice and Procedure</u>, § 2177 (1994) at 318-19)( " . . . a party must produce otherwise discoverable documents that are in his attorneys' possession, custody or control." )) .

This well-established principle applies not only to attorneys, but to any non-party entity if a party has the legal right to obtain the document or information sought, or has control over the entity that is in possession of it, to include an attorney. *A.V. v. Panama-Buena Vista Union Sch. Dist.,* No. 115-CV-00246MCEJLT, 2016 WL 3670004, at *2 (E.D. Cal. July 11, 2016). Such fundamental, widely followed principles cannot be swept aside merely because the Plaintiffs are potentially able to point out several, relatively minor, factual distinctions in two of the cases cited by the Defendants, the *Coverdale* and *Donziger* decisions.[46] The argument of the Tax Ease Defendants in this regard is not solely dependent upon the facts of either *Coverdale* or *Donziger* so that the validity of their position does not rise or fall with either one. Accordingly, we overrule all of the Plaintiffs objections that rest on this foundation – – the mere possession of otherwise discoverable information or documents by counsel – – as being invalid.[47]

The next question is what specific information or documents in the possession of the Plaintiffs' counsel are "otherwise discoverable." In other words, which categories of discovery requests among the various ones now in dispute seek to obtain relevant, nonprivileged information or the documents that contain such information. An area that is particularly contentious in this first category of discovery involves the Defendants' efforts to obtain communications between Plaintiffs' counsel and putative class members, such as solicitation of

---

[46] *See gen.*, *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 189–90 (S.D.N.Y. 2013); *Coverdale v. CIGNA Life Ins. Co.,* 2010 U.S. Dist. LEXIS 126461, at *8, 11 (S.D. Ohio Nov. 16, 2010).

[47] Were we to rule otherwise such an unprecedented conclusion inexorably would transform the files and offices of opposing counsel into the hidden repository of otherwise discoverable information.

representation inquiries by counsel.  One of the ongoing theories of the Defendants in support of

such discovery is that Plaintiffs' counsel improperly solicited potential class members to join in

the present lawsuit and therefore should be rendered ineligible to act as class counsel under the

provisions of Rule 23(g)(1)(B) of the Federal Rules of Civil Procedure.[48] This argument brings

up yet another, among many, related areas of dispute.

Plaintiffs maintain that the Tax Ease Defendants seek to usurp the exclusive role of the

Court under Rule 23(g), as expressed in the 2003 Amendments to the Rule.  Put differently,

Plaintiffs argue that in so far as the conduct of opposing counsel is concerned Defendants have

no right under Rule 23(g), or any other of the rules of discovery, to substitute themselves for the

Court, whose function is to determine exactly who is, and is not fit, to act as class counsel.

Again based on our own review of the law we are compelled to disagree with the Plaintiffs on

this and the related points. Communications with putative class members of a factual nature are

"otherwise discoverable," including solicitation letters, and are relevant to the considerations

under both Rule 23(a) and (g).

Discovery has been permitted under Rule 23(g) by a number of federal courts and for

good reasons.  First, nowhere in the cited Advisory Committee Notes to the 2003 Amendment to

Rule 23(g) is there to be found any language that expressly precludes a party from seeking

discovery from opposing party counsel on any of the factors set forth in subsection (g)(1)(A) or

(B) of the Rule.  At most, it may be said that the court "must consider" the various factors, i.e.,

work, experience, knowledge and resources of counsel along with "any other matter pertinent to

counsel's ability to fairly and adequately represent the interests of the class," which it "may

consider" as well.  Fed.R.Civ.P. 26(g)(1).

---

[48] Defendants relied upon this argument among others as a basis on which to attempt to take the deposition of the
Plaintiffs' counsel.  The Magistrate Judge denied the Defendants the opportunity to do so, which in part, resulted in
their current efforts to obtain information related to potentially improper solicitation by Plaintiffs' counsel.

This duty of the court to consider, whether mandatory or permissive under subsection (1)(A) or (1)(B), respectively, places no limitation on the means by which information concerning the factors of either subsection is to be gathered; nor would such a limitation if judicially imposed further the overall goals of Rule 23, which is precisely why Plaintiffs' argument in this regard has been rejected in other cases.   *See E. Maine Baptist Church v. Regions Bank,* No. 4:05CV962 CAS, 2007 WL 1445257, at *3 (E.D. Mo. May 10, 2007) (rejecting the argument that discovery of Rule 23(g) factors pertinent to the ability of counsel to fairly and adequately represent a proposed class would "pervert the intent of the process contemplated by Rule 23(g)").

The *Stock* decision cited by the Tax Ease Defendants speaks directly to this point. *Stock v. Integrated Health Plan, Inc.,* 241 F.R.D. at 623 ("[C]ourts are allotted sufficient discretion to allow defendants discovery on any consideration, mandatory or optional, pertinent to an inquiry made under Rule 23(g).")  Similar to the present Court, *Stock* likewise was "aware of no binding authority, apart from the limitations set forth in Rules 26(b) and 45(d), limiting its discretion to permit discovery on key inquiries related to whether the Court should certify proposed class." *Id.*

In fact, *Stock* rejected the very type of "perversion" of Rule 23(g) argument rejected in *E. Maine Baptist Church, supra.  Id.*(Rejecting the argument that allowance of discovery on the adequacy of counsel would be "an improper delegation of the Courts Rule 23(g) power . . . .").See gen *Montano v. Chao*, No. CIVA07CV-00735CMAKMT, 2008 WL 5377745, at *4–5 (D. Colo. Dec. 19, 2008) (upholding enforcement of a request for production seeking information on the amount of fees paid to counsel for the putative class by a nonparty client of the same counsel based on the reasoning that "Rule 23 (g) directs this court to consider all

matters which may be germane to whether or not proposed class counsel, as well as named plaintiffs, are able to fairly and adequately protect the interests of the class.").

If indeed the Court is bound to consider all "matters which may be germane" under Rule 23(g) then it should have the benefit of the parties' efforts at full discovery on such matters so that its exercise of judgment in this important regard is fully informed.  Otherwise, the Court would find itself limited to the provisions of Rule 23(g)(1)(C) to "order potential class counsel to provide information on any subject pertinent to the[ir] appointment." We would therefor of necessity be forced to rely exclusively on the very counsel who potentially have had the ethics of their litigation -related conduct called into question to provide us with information about such alleged conduct.  Such an approach hardly seems logical or effective in gathering the broadest range of pertinent information "to counsel's ability to fairly and adequately represent the interests of the class" as Rule 23(g)(1)(B) dictates.  Accordingly, we again agree with the Defendants and reject the view of the Plaintiffs' counsel that they are the sole source for Rule 23(g)(1) information to be provided only upon direct inquiry of them by the Court.[49]

Defendants likewise may have discovery of the solicitation of representation letters sent to potential class members and factual communications with potential class members by Plaintiffs' counsel.  Such letters are relevant not only to the Rule 23(g) considerations mentioned

---

[49]  Our attitude on this matter is well summarized by the quoted language below:

It does not follow, however, that in a non-frivolous case a district court may rule on the class action question without affording the parties notice and an opportunity to make a record on the issue. The propriety of class action status can seldom be determined on the basis of the pleadings alone. *See Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975); Weathers v. Peters Realty Corp., 499 F.2d 1197, 1200 (6th Cir. 1974); *Huff v. N.D. Cass Co. of Alabama*, 485 F.2d 710, 713 (5th Cir. 1973). The District Court must have before it "sufficient material . . . to determine the nature of the allegations, and rule on compliance with the Rule's requirements . . . ." *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975*), cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). Securing this material does not always require a formal evidentiary hearing. *See Jones v. Diamond, supra*, 519 F.2d at 1098-99. Where, however, the pleadings themselves do not conclusively show whether the Rule 23 requirements are met, the parties must be afforded the opportunity to discover and present documentary evidence on the issue.

*Walker v. World Tire Corp.*, 563 F.2d 918, 921 (8th Cir. 1977).

34

above, but also potentially bear on the credibility of the class members.  Although Plaintiffs

suggest in passing that such matters may be subject to work product protection, they have not

submitted the required privilege log dictated by Rule 26(b)(5)(A)(ii) and therefore cannot

presently assert a work product protection, nor criticize the Defendants for their supposed failure

to show a substantial need and inability to otherwise obtain such documents under Rule

26(b)(3)(A)(ii).  See *Fangman v. Genuine Title, LLC,* No. CV RDB-14-0081, 2016 WL

3362538, at *2–3 (D. Md. June 17, 2016)(collecting cases that hold solicitation letters sent by

plaintiffs' counsel to potential class members in a putative class action to be discoverable despite

claims of work product protection)(citing *Petry v. Prosperity Mortgage Co*., No. WMN-08-1642

(Gauvey, J.)(D. Md. Aug. 13, 2010) and *Marshall v. James B. Nutter & Co*., No. RBD-10-3596

(D. Md. Nov 26, 2012)); *E.E.O.C. V. CRST Van Expedited, Inc.,* No. c07-0095, 2009 WL

136025 at *3  (N.D. Iowa 2009)(holding that solicitation letters sent to potential class members

in anticipation of litigation prior to the establishment of any attorney-client relationship are

discoverable where the letters did not contain counsel's mental impressions or legal theories, but

were at most ordinary work product which the opposing party had a substantial need for and

could not obtain by other means).[50]


*Category Two*

        The next category of discovery to be discussed involves those discovery requests that

seek communications with the defendants, or employees of the Defendants, by the Plaintiffs or

---

[50] The Court has not, and indeed cannot, hope to set out in this portion of its order all of the various types of third-party communications involving Plaintiffs' counsel that may be potentially discoverable. At best, we have addressed those communications directly discussed in the motion papers of the parties.  But without the benefit of a privilege log that specifically identifies those documents in this first category being withheld on a claim of privilege or work product protection it is impossible to be more specific in our initial ruling.

their counsel from January 1, 2007 to the present, along with any documents that reflect such communications.[51]  Although the individual Plaintiffs have responded that each of them have no such documents, an open question remains as to whether any such documents are in the possession of the Plaintiffs' counsel.

No question exists that counsel for the Plaintiffs directly contacted an employee of Defendant Tax Ease prior to or during the pendency of the state court proceedings to inquire about matters directly related to the allegations of the lawsuit.  Plaintiffs' counsel acknowledged such communication during an open court proceeding in the Jefferson Circuit Court during oral argument.  While the Court previously held that such communications could not be the basis for taking the deposition of opposing counsel, attorney Dwyer, the same order never held that such communications were otherwise nondiscoverable. The exact language related to this issue provides:

> The same is true of the reputed statements of attorney Dwyer made during the earlier state court proceedings held in February of 2015.  During a court hearing in Jefferson Circuit Court on February 19, Dwyer stated that he had a prior telephone conversation on an unidentified date, apparently some three years ago now, with an un-named employee of one of the Tax Ease entities. This unidentified employee, as related by Dwyer, supposedly told him that all of the Tax Ease business entities are "all the same." Because the Plaintiffs have brought a civil RICO claim against the Tax Ease Defendants, who insist that they are each distinct business entities, they maintain that they are entitled now to depose attorney Dwyer.
>
> The Court must disagree. Dwyer's prior unsworn statements regarding this nebulous conversation, made as counsel of record in the prior state court proceedings, are purely inadmissible hearsay that is precluded from consideration at trial in accordance with Federal Rule of Evidence 802.  Given both the remote and the nondescript nature of such an alleged conversation, we cannot conclude that its substance, whatever that may be, is so crucial as to meet the *Sheldon* test. Indeed, the minimal probative worth of such hearsay, even if it were otherwise

---

[51]Brown Responses to Int. No.7, RFP No. 3(DN 98, Ex. A); Walther Responses to Int. No. 7, RFP No. 3 (DN 98, Ex. B); Puckett Responses to Int. No. 7, RFP No. 3 (DN 98, Ex. C); Leigh Responses to Int. No. 7, RFP No. 3 (DN 98, Ex. D).

admissible, counsels strongly against its admission given the constraints of Rule 403, as cited above.

(DN 97, Protective Order, p. 4).

Nowhere in the above quoted language is there any indication that attorney Dwyer's contact or contacts with employees of any of the Tax Ease Defendants is otherwise nondiscoverable. What the Court did conclude is that the single conversation discussed would not be a sufficient basis for taking the deposition of Dwyer given the stringent requirements of *Sheldon*. The Court also observed that this specific communication, as described in the motion papers of the parties at that time, did not appear to the Court to be admissible given Rules 403 and 802 of the Federal Rules of Evidence, an observation that certainly is subject to any future rulings of the District Court should this matter proceed to trial at some point.

Neither ruling was a "free pass" for Dwyer, or for the Plaintiffs, to avoid discovery on the issue, or on the substance of the factual communications between Plaintiffs' counsel and the Defendants that relate to the claims and defenses set forth in the parties' pleadings[52], along with the factors related to class certification and appointment of class counsel. At this point neither the Court nor the Defendants know the full extent of any such communications between Dwyer and any Tax Ease employees beyond what attorney Dwyer himself chose to interject in the state court phase of the proceedings. Defendants are fully entitled to know all of the facts related to such contacts and communication, as distinguished from attorney Dwyer's intra-office notes, case file memos, recorded mental impressions or other attorney opinion work product resulting therefrom, which Defendants steadfastly and repeatedly maintain that they are not interested in obtaining through their discovery requests. In this regard we are persuaded by *Coverdale*.

---

[52] Those communications that do not relate to either the claims or defenses of the parties, or to the Rule 23 factors earlier discussed obviously do not fall within even the broad scope of Rule 26(b)(1).

The next matter included within this second category are those communications between Plaintiffs' counsel and any of the Tax Ease Defendants that involved prior foreclosure actions in which Plaintiffs' counsel represented property owners against TELS and/or TELI. Plaintiffs have alleged that TELS and TELI routinely dismissed, or immediately settled, any such foreclosure actions in which the property owner had retained counsel. Defendants strongly dispute this contention and insist that it is unsupported by any evidence. Accordingly, they now seek to require Plaintiffs' counsel to provide communications with the Defendants relating to these prior foreclosure actions involving Plaintiffs' counsel.

Once again, the Court is in agreement. Plaintiffs chose to call into question the litigation conduct of the Defendants in prior foreclosure proceedings. The obvious implication of Plaintiffs' allegation is to suggest that either the legal position of the Defendants in such prior proceedings lacked substantial merit or that counsel for the Defendants were disinclined to "work the case" when circumstances required more demanding legal services than merely sending default notice letters or obtaining a judgment by default. Having raised these inferences by their allegations, Plaintiffs and their counsel cannot now sidestep their obligation to provide any communications with the Defendants on the very issue that they chose to raise.[53]

We do not suggest by this ruling that such communications are inevitably admissible into evidence, but admissibility, as the Defendants correctly point out, is not the controlling standard in these circumstances, although it was undeniably a factor with regard to the prior unsuccessful efforts of the Defendants to take the deposition of Plaintiffs' counsel, Mr. Dwyer. The factual communications related to prior foreclosure proceedings that involved both the counsel of the

---

[53] Included within the scope of this ruling would be those communications from Plaintiffs' counsel related to settlement of the prior foreclosure proceedings involving the Defendants. Such communications while perhaps inadmissible, given the strictures of Rule 408 of the Federal Rules of Evidence, are nonetheless discoverable given the election of the Plaintiffs to make them an issue in the litigation.

Plaintiffs and any of the Tax Ease Defendants are discoverable.  We accept once again the representation of the Defendants that their discovery requests in this regard are limited solely to factual matters that do not involve attorney work product or attorney-privilege protected matters.

*Category Three*

The third category of discovery at issue is more limited in nature.  These discovery requests seek to obtain information about the involvement of the named Plaintiffs in any prior civil, criminal or administrative legal proceedings.[54]  Defendants by interrogatory have asked for the Plaintiffs to identify all such cases by case caption, action number, jurisdiction and manner of resolution.  Defendants, as noted, argue that this information potentially relates to the adequacy of any individual Plaintiff to serve as class representative, if such individual has previously taken personal bankruptcy, or entered into a prior litigation settlement agreement that might in some fashion now limit his or her recourse.  Defendants add that to the extent any of the named Plaintiffs have a prior criminal felony conviction that satisfies the requirements of Rule 609 of the Federal Rules of Evidence such information would be directly relevant to potential impeachment at trial.

The Court has considered these arguments.  Discovery regarding prior litigation involving a party is absolutely appropriate in certain circumstances.  The most obvious examples include those disputes that involve issues of res judicata, or collateral estoppel, both of which require a prior legal action between the same parties, or those in privity with them, where claims raised in the later court case could have been, or were actually, resolved in the former one.  *See gen.*, *Bates v. Twp. of Van Buren*, 459 F.3d 731, 734 (6th Cir. 2006)(discussing the requirements

---

[54] Walther Response to Int. No. 8 (DN 98, Ex. B); Puckett Response to Int. No. 8 (DN 98, Ex. C); Leigh Responses to Int. Nos. 8, 9 (DN 98, Ex.D).

of res judicata); *Evans v. Pearson Enterprises, Inc.,* 434 F.3d 839, 852 (6th Cir. 2006)(discussing

the requirements of collateral estoppel).   Another clear example of appropriate discovery

involving prior litigation arises in the context of products liability litigation that involves issues

of "substantially similar" accidents due to the same allegedly defective products. *Rye v. Black &*

*Decker Mfg. Co.,* 889 F.2d 100, 101 (6th Cir.1989).   Finally, such discovery is equally relevant

in those instances in which prior litigation has resulted in a settlement that arguably precludes or

otherwise limits the ability of a party to maintain a specific claim or to bring any claims

whatsoever.   See *Vibo Corp. v. Conway,* 594 F. Supp. 2d 758, 784 (W.D. Ky. 2009), *aff'd,* 669

F.3d 675 (6th Cir. 2012); *Luttrell v. Cooper Indus., Inc.,* 60 F. Supp. 2d 629, 631-32 (E.D. Ky.

1998).

      Discovery requests, however, that essentially seek to obtain information or documents

that relate to any lawsuit, civil or criminal, or any administrative action that involved the plaintiff

over a substantial span of years often are rejected as being overbroad and not reasonably

calculated to lead to the discovery of admissible evidence. *Johnson v. Kraft Foods North*

*America, Inc.*, 236 F.R.D. 535, 543 (D. Kan. 2006) ("Defendants' request, however, seeks

documents related to any lawsuit, complaint, or charge involving Plaintiff over the span of

Plaintiff's entire life. Simply put, Defendants have failed to adequately explain how this very

broad request is relevant or reasonably calculated to lead to the discovery of admissible

evidence."); *AKH Co., Inc. v. Universal Underwriters Ins. Co.*, 300 F.R.D. 684, 690-91(D. Kan.

Jun 18, 2014) ("The Court will, however, opine that the effect of requiring Defendant to respond

[to discovery requests seeking all prior complaints against Defendant regarding delayed

payments, refusal to provide independent counsel and reimbursement for defense costs] would

be to subject it to undue burden in light of topics which, at best, have limited evidentiary value in this case given the broadly worded nature of the information requested.").

Here, the challenged discovery request falls closer to the nature of the requests condemned in *Johnson* and *AKH*. It is difficult for the Court to conceive how, for example, the prior divorce proceeding of a named Plaintiff can have any relevance to the fitness of that Plaintiff to serve as a representative of the class. The same observation could be made with equal force with regard to prior automobile personal injury lawsuits. Such legal proceedings offer little to nothing of relevance in this putative class action. Accordingly, the Court in the exercise of its discretion shall limit these particular discovery requests to prior bankruptcy proceedings, felony criminal proceedings, civil actions to enforce collection of a debt and actions that otherwise involve claims directly related to real property, i.e., prior foreclosure actions. This limitation affords the Tax Ease Defendants knowledge of all of the potentially relevant legal proceedings without sweeping up other, legal matters unrelated to any claim or defense or to Rule 23 considerations.

*Category Four*

The Tax Ease Defendants in this discovery category seek to obtain information related to the prior experience of Plaintiffs' counsel as class counsel and their experience in any prior litigation involving TELS and TELI. More specifically, the interrogatories at issue ask Plaintiffs to identify by caption, party, civil action number and jurisdiction all of those cases in which John Dwyer and Karen Jaraczz have sought to represent a class or been approved as class counsel along with all cases involving the Tax Ease Defendants in which either attorney has entered an

41

appearance on behalf of a party.[55]   The theory of the Defendants is that such discovery runs to

the question of the adequacy of class counsel under Rule 23(g).

The Court once again is in agreement with Defendants for many of the reasons previously

discussed above.  The language of Rule 23 contains no prohibition against discovery nor do the

Advisory Committee Notes to the 2003 Amendments.  Further, given the allegations of the

Plaintiffs that involve the alleged litigation conduct of TELS and TELI in prior foreclosure

actions involving Kentucky certificates of delinquency purchased by the Defendants, the

interrogatories at issue are appropriate.  Plaintiffs must provide full and complete responses.


*Category Five*

In category five of the disputed discovery requests the Court considers whether the Tax

Ease Defendants are entitled to obtain information about, or documents containing, statements

made by "any person concerning any matter relating to this action."[56]  Plaintiffs generally argue

that such statements, or information about them, fall within the category of classic attorney work

product under Rule 26(b)(5) of the Federal Rules of Civil Procedure.  Plaintiffs, however, have

not provided the Defendants or the Court with any privilege log that would permit us to evaluate

this blanket claim of work product protection beyond the following general observations.

Defendants are correct that the work product doctrine offers a party "no shield" against

discovery of the facts learned by an attorney who represents an opposing party, nor the identity

of those individuals from whom the attorney has learned such facts. *E.E.O.C. v. Jewel Food*

---

[55] Brown Responses to Int. Nos. 9, 18 (DN 98, Ex. A); Walther Responses to Int. Nos. 9, 17 (DN 98,Ex. B); Puckett Responses to Int. Nos. 10, 19 (DN 98,Ex. C); Leigh Responses to Int. Nos. 10, 16 (DN 98, Ex. D).

[56] Brown Responses to Int. No. 10, RFP No. 4 (DN 98, Ex. A); Walther Responses to Int. No. 10, RFP No. 4 (DN 98, Ex.B); Puckett Responses to Int. No. 11, RFP No. 4 (DN 98, Ex. C); Leigh Responses to Int. No. 11, RFP No. 4 (N 98, Ex. D).

*Stores, Inc.*, 231 F.R.D. 343, 346-47 (N.D. Ill. Sep 13, 2005) ("[i]t is settled law... that the work product concept furnishe[s] no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he has learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery.")  (Quoting *Board of Edu. of Evanston, Township High School District No 202 vs. Adm. Heating and Ventilating Inc. et al*, 104 F RD 23, 32 (N.D. Ill. 1984) (citing8 Wright & Miller, <u>FEDERAL PRACTICE AND PROCEDURE</u>, § 2023, at 194 & n. 16 (1970)). *See also Penk v. Oregon State Board of Higher Education*, 99 F.R.D. 511 (D.Or.1983) ("it is necessary to effective litigation for relevant facts to be available to both parties. 'To that end, either party may compel the other to disgorge whatever facts he has in his possession.'")(quoting *Hickman*, 329 U.S. at 507).

As *Jewel Food Stores* explains "Competent counsel routinely obtain information through interviewing witnesses and reviewing documents, and are able to provide interrogatory responses that set forth only that factual information without revealing 'mental processes, impressions and strategies.'" *Id.* Put more directly, the information that counsel learns as the result of his or her interactions with third-parties concerning the claims or defenses raised in a lawsuit is not protected in any fashion from disclosure by the work product doctrine. *Dobbs v. Lamonts Apparel, Inc.*, 155 F.R.D. 650, 651–52 (D. Alaska 1994).

The same considerations apply to documents that attorneys obtain from third-parties in the course of their investigation.  *In re Grand Jury Subpoenas Dated October 22, 1991 and November 1, 1991*, 959 F.2d 1158, 1166 (2d Cir.1992) (the work product doctrine does not protect from production those documents obtained from third-parties during the course of an attorney's investigation).  The mere assembly of documents by an attorney, without more, does

not automatically reveal the thought processes, strategies or mental considerations of counsel.

*Jewel Food Stores*, 231 F. R.D. at 347.

A decidedly different outcome, however, ordinarily results when a party seeks to obtain

through discovery documents that are prepared in anticipation of litigation by counsel.  Such

documents, as opposed to the relevant facts contained therein, are frequently protected absent a

substantial showing of need and unavailability without undue hardship, as explained earlier.  The

discoverability of sworn fact statements and affidavits obtained in anticipation of litigation by an

attorney from a third-party raises a particularly difficult question under Rule 26(b)(3), one that

has divided the courts as the parties herein acknowledge.

The matter is perhaps best summarized by *Nam v U.S. Xpress*, 2012 WL 12840094 at *

2-3 (E.D. Tenn. May 15, 2012), wherein Magistrate Judge Lee explains:

> In the pleadings, Plaintiffs concentrate their arguments on Defendants' lack of
> hardship and ability to obtain statements of their own from the witnesses.
> Defendants concentrate their arguments on prior rulings of this Court holding that
> "sworn witness statement[ ] and affidavits are evidence; they are not protected by
> the work product doctrine[ ]", quoting *Trustees of Plumbers v. Crawford*, 573 F.
> Supp. 2d 1023 (E.D. Tenn. 2008) (Collier, J.) and *Basaldu v. Goodrich Corp.,* No.
> 4:06-cv-23, 2009 WL 1160915 (E.D. Tenn. Apr. 29, 2009) (Mattice, J.).
>
> As argued by Plaintiffs, this Court is not bound by its prior holdings in *Crawford*
> or *Basaldu* that witness statements and affidavits are not protected from discovery
> by the work product doctrine. In addition, and as noted in *Basaldu*, the United
> States Court of Appeals for the Sixth Circuit has not yet spoken on this issue and
> district courts across the country are split on whether signed witness statements
> and affidavits obtained in anticipation of litigation must be produced to the
> opposing side. *Basaldu*, 2009 WL 1160915, at *1 (comparing *Tuttle v. Tyco
> Electronics Installation Servs.,* No. 2:06-cv-581, 2007 WL 4561530, at *2 (S.D.
> Ohio Dec. 21, 2007) ("Affidavits are not normally protected by the work product
> doctrine for the very reason that an affidavit 'purports to be a statement of facts
> within the personal knowledge of the witness, and not an expression of the
> opinion of counsel.' ") with *Lamar v. Williams Commc'ns, LLC*, No. 04-CV-847-
> TCK-PJC, 2007 WL 445511, at *2 (N.D. Okla. Feb. 6, 2007) (production of
> affidavits would be "intruding into the heart of attorney trial preparation.")).
> However, a majority of courts considering this issue have reached the same
> conclusion as this Court and have required disclosure of witness affidavits and

sworn statements prepared in anticipation of litigation. *Basaldu*, 2009 WL 1160915, at *1 (citing *Murphy v. Kmart Corp.*, 259 F.R.D. 421, 430 (D.S.D. 2009) (noting that the majority of district courts have held that affidavits are not protected by the work product privilege)). *3

Applying the majority view and the previous holdings of this Court, nonparty witness statements and affidavits, at least those that are mere recitations of facts within the knowledge of the witnesses and which do not contain "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation", are not protected from disclosure under the work product doctrine. *Crawford,* 573 F. Supp. 2d at 1028 (quoting Fed. R. Civ. P. 26(b)(3)(B)).

*Nam v. U.S. Xpress, Inc.*, No. 1:11-CV-116, 2012 WL 12840094, at *2–3 (E.D. Tenn. May 15, 2012). See also, *Kyoei Fire & Marine Ins. Co. v. M/V Maritime Antalya*, 248 F.R.D. 126, 155 (S.D.N.Y.2007)(explaining that draft affidavits and notes take during interviews typically remain covered by the work product doctrine) (citing *Ideal Elec. Co. v. Flowserve Corp.*, 230 F.R.D. 603, 608–09 (D.Nev.2005)).

At the other end of the spectrum as Plaintiffs point out is the following language expressed four years earlier in *Cobble v. Value City Furniture*,

Further, in its application of the work product doctrine, the Second Circuit has observed that a "lawyer talks to a witness to ascertain what, if any, information the witness may have relevant to his theory of the case, and to explore the witness' knowledge, memory and opinion-frequently in light of information counsel may have developed from other sources. This is part of an attorney's so-called work product." *International Business Machines Corp. v. Edelstein*, 526 F.2d 37, 41 (2d Cir.1975)(citing *Hickman v. Taylor*, 329 U.S. 495 (1947)(see also *In re Convergent Technologies Second Half 1984 Securities Litigation*, 122 F.R.D. 555, 557(N.D.Cal.1988)("a statement a lawyer or an investigator takes from a witness is classic work product and is presumptively protected against disclosure, whether it is included in a separate memorandum written by counsel or not.")(citing *Hickman v. Taylor* ) Accordingly, discovery of witness statements to an attorney is generally not allowed if that witness is available to the other party and the sought-after information may obtained by other methods of discovery, such as by taking the deposition of said witness. *See, e.g., Baker v. GMC*, 209 F.3d at 1054; *Arney v. Geo. A. Hormel & Co.*, 53 F.R.D. 179, 181 (D.Minn.1971).

*Cobble v. Value City Furniture*, No. CIV.A. 3:06-CV-631, 2008 WL 114937, at *2 (W.D. Ky. Jan. 10, 2008).

Upon reflection, we conclude that the better rule is the majority rule discussed in *Nam* rather than the more restrictive approach of *Cobble*. Once a sworn witness statement or affidavit prepared by an attorney has been reviewed and signed by the third-party declarant such document is a matter of evidence to the extent that it contains facts relevant to the claims or defenses of the action rather than the mental processes of the attorney involved. As such, it is discoverable and not subject to protection by the work product doctrine.

A good example of this approach in practice involves the signed affidavit of the late, former plaintiff, Karyn Julian obtained by counsel for the Plaintiffs. Julian is now unavailable. Her recorded factual recollections to the extent that they involve any matters deemed relevant under Rule 26(b)(1) are therefore discoverable. While the Plaintiffs suggest that the contents of Julian's affidavit are not relevant, or if relevant are protected by the work- product doctrine, their failure to prepare a privilege log directly calls into question the latter proposition; while their somewhat amorphous suggestion-- that the contents of the affidavit relate to alleged ethical issues involving defense counsel-- likewise render equally suspect the former proposition. Given the broad scope of Rule 26(b)(1), along with the evidentiary nature of Julian's affidavit, the Court concludes that such sworn statements or affidavits executed by third-parties at the request of Plaintiffs' counsel fall outside the scope of the work product doctrine. In contrast, items such as unexecuted drafts of third-party statements prepared by counsel and notes of attorney conversations with such third-parties remain within the potential protection of Rule 26(b)(3) and the work product doctrine, once properly asserted.

Ordinarily, our normal analysis would first require that we determine whether the documents sought are relevant, after which the party withholding the same upon a claim of privilege would have the burden to come forward by way of privilege log in compliance with Rule 26(b)(5) to establish its claim of privilege or work product protection.  *Bowling v Scott County, Tenn.,* No. 3:04-CV-554,  2006 WL 2336333 at *3 (E.D. Tenn. 2006)( "When a claim of work product is made, the party seeking discovery must first demonstrate that the material sought is relevant to the subject matter of the litigation and not privileged pursuant to Rule 26(b)(1). If the court determines that the material sought is relevant and not otherwise privileged, "the burden shifts to the objecting party to demonstrate that the material was 'prepared in anticipation of litigation or for trial' by or for that party or that party's representative.")(quoting *Toledo Edison Co. v. G.A. Technologies, Inc.,* 847 F.2d 335, 339 (6th Cir.1988)). Only then after those two preliminary matters transpired would the moving party, in the case of ordinary fact work product, have the final burden to show that the items sought were necessary to prepare its case and could not otherwise be obtained without undue hardship. Fed.R.Civ.P. 26(b)(3)(A)(ii).

Without the production of a privilege log, however, both the Defendants and the Court are entirely stymied in their efforts to properly apply the Rules. The Tax Ease Defendants can hardly show the relevance of a document or contest its protection as attorney-work product if they are not made aware of the fundamental nature of the document being withheld, its author, the basics of its creation and its distribution.  While failure to provide such a log, of itself, could justify a finding of waiver, we have decided to afford Plaintiffs a final opportunity to properly assert the work product doctrine in accordance with the fundamental requirements of Rule 26(b)(5) with the understanding of the views of the Court expressed above as to fully executed

affidavits of third-parties being outside the protection of Rule 26(b)(3)(A) along with the other ruling set forth in this Order.

Plaintiffs shall have twenty (20) days in which to serve and file a detailed privilege log and supplemental memorandum in support for any documents or portions of documents that they continue to maintain in the face of the present Order are subject to attorney-client privilege or to work product protection.  The Defendants shall then have twenty days thereafter in which to supplement their own motion papers, after which the Court will resolve any remaining claims of privilege based on the contents of the log and the supplemental memoranda of each of the parties, which shall be limited to 10-pages in length each.

*Category Six*

This category  includes a series of interrogatories by which the Tax Ease Defendants hope to obtain the factual basis for the allegations contained in paragraphs 45, 50, 110 and 125 of the Plaintiffs' third amended complaint.[57] Plaintiffs as earlier discussed responded with a denial of personal knowledge, an objection that additional discovery would be required before a response could be made, or otherwise generally cited the Defendants to the records of the Bank of the Bluegrass and Bluegrass Business Services accompanied by a general reference to the depositions of Nathan Miller, Billy Sherrow and Michelle Leigh.  Defendants insist that such responses do not satisfy the requirements of Rule 33(b).

We agree to the extent that the mere general reference to a mass of documents, i.e., such as "bank records," or to the entire deposition of a named witness without more are not sufficient to satisfy the dictates of Rule 33, as we have noted in at least one prior order entered in this case.

---

[57] Brown Responses to Int. Nos. 11–14 (DN 98,Ex. A); Walther Responses to Int. Nos. 11–13 (DN 98, Ex. B); Puckett Responses to Int. Nos. 12–15 (DN 98, Ex. C); Leigh Responses to Int. Nos. 12–15 (DN 98, Ex. D).

*See Kuriakose v Veterans Affairs Ann Arbor Healthcare system*, No. 14-cv-12972, 2016 WL 4662431 at *3 (E.D. Mich. Sept 7, 2016)( "Because Rule 33(b)[3] requires a party to answer each interrogatory "fully," it is technically improper and unresponsive for an answer to an interrogatory to refer to outside material, such as pleadings, depositions, or other interrogatories." )( *Equal Rights Ctr. v. Post Properties, Inc*., 246 F.R.D. 29, 35 (D.D.C. 2007) (citing 7–33 <u>Moore's Federal Practice–Civil</u> § 33.103); *see also Williams v. Sprint/United Mgmt. Co.,* 235 F.R.D. 494, 501 (D. Kan. 2006) ("Plaintiffs may not answer the interrogatory by generally referring Defendant to the pleadings filed in this case, documents produced, opt-in questionnaires, depositions, or declarations.").

Plaintiffs must specifically respond with facts to each of the contention interrogatories and provide to the full extent possible the known facts that underlie each of the cited paragraphs. *See, Myers v. Anthem Life Insurance Co.,* 316 F RD 186, 199 (W.D. March 22, 2016) (response to interrogatory that requested the factual basis for defendant insurance company's affirmative defenses was insufficient where defendant merely responded that such factual basis could be found in the "administrative record").

Simply put, contention interrogatories are not inappropriate and the Defendants are entitled to know the factual basis of each of the cited paragraphs of the Plaintiffs' current complaint. *Starcher v. Correctional Medical Services, Inc.,* 144 F 3d 418, 421 n. 2 (6th Cir. 1998) ("Contention" interrogatories are interrogatories that seek to clarify the basis for or scope of an adversary's legal claims. The general view is that contention interrogatories are a perfectly permissible form of discovery, to which a response ordinarily would be required")(citing *Taylor v. FDIC*, 132 F.3d 753, 762 (D.C.Cir.1997)).  To the extent that the Plaintiffs have yet to discover all of the facts that relate to the cited paragraphs, they remain able pursuant to Rule

26(e) to supplement their current responses to the affected interrogatories.  Once again, the Court is in agreement with the Defendants on this category of discovery.

*Category Seven*

The payment or nonpayment of real estate taxes is the subject of this category of disputed discovery.  The Tax Ease Defendants now seek to obtain from the Plaintiffs all documents that reflect their payment or nonpayment of property taxes on any property in which they held an ownership interest from 2003 to the present.  Plaintiffs insist that this category of discovery falls outside even the broad scope of Rule 26(b)(1).[58] The Court concludes that the scope of relevancy is sufficiently broad so that the Defendants are entitled to know the property tax payment history of each of the named Plaintiffs in this regard, especially given the potential relationship of such information to the requirements of Rule 23 in the case of Plaintiff Leigh, apparently a professional real estate investor who according to the Defendants has a checkered history of property tax payment.  For these reasons, the Court once again agrees with the Defendants that such information is discoverable particularly in the context of the putative class action.

*Category Eight*

Defendants in this category of discovery seek by their requests for production to obtain from each of the named Plaintiffs his or her federal and state tax returns from 2005 to the present, as well as any correspondence received by each of them during the same time that

---

[58] Brown Response to RFP No. 6 (DN 98, Ex. A); Walther Response to RFP No. 6 (DN 98, Ex. B); Puckett Response to RFP No. 6 (DN 98, Ex. C); Leigh Response to RFP No. 6 (DN 98, Ex. D).

concerns delinquent debt or financial obligations of any kind.[59]  Defendants maintain that the

financial status of each representative plaintiff is discoverable to properly determine whether

such plaintiffs can adequately  represent the interests of the putative class.  Plaintiffs insist that

such document requests falls well outside the scope of Rule 26(b)(1) and are disfavored in class

actions.

We are in agreement with the Plaintiffs.  Discovery of a party's tax returns requires

special considerations.  While tax returns are subject to discovery in civil litigation, *BM

Investments, LLC v. Hamilton Family, L.P.*, 2008 WL 1995101 at *4 (E.D. Mich. May 06, 2008),

given their highly sensitive nature a number of courts have adopted a qualified privilege, or

stricter relevancy standard for their production. *Bricker v. R & A Pizza, Inc.,* 2011 WL 1990558

at * 2-3 (S.D. Ohio May 23, 2011).  The party who hopes to obtain such returns must meet a

two-prong test to determine first whether the returns are relevant to the issues raised and then

whether the information sought is not otherwise obtainable from other less intrusive sources. *See,

e.g., Smith v. Mpire Holdings*, LLC, 2010 WL 711797 (M.D. Tenn. Feb.22, 2010).

Tax returns ordinarily will be considered to be potentially discoverable when a party's

income is an issue such as, for example, a claim for lost wages has been asserted in an

employment-related action. *See, e.g., Reed v. Tokio Marine and Nichido Fire Ins. Co. Ltd*., 2010

WL 420921 (W.D.La. Feb.1, 2010); *Glenford Yellow Robe v. Allender*, 2010 WL 1780266

(D.S.D. April 30, 2010); *Twilley v. International Bedding Corp.,* 2009 WL 2970407 (N.D.Ind.

Sept.10, 2009); *Burns v. St. Clair Housing Authority,* 2008 WL 4837614 (S.D.Ill. Nov.6, 2008);

*Burket v. Hyman Lippitt, P.C.,* 2007 WL 2214302 at *2-3 (E.D. Mich. Jul 27, 2007) ("Once the

---

[59] Brown Responses to RFP Nos. 10, 12 (DN 98, Ex. A); Walther Responses to RFP Nos. 10 (second RFP No. 2), 12
(second RFP No. 4) (DN 98, Ex. B); Puckett Responses to RFP Nos. 10 (second RFP No. 2), 12
(second RFP No. 4) (DN 98, Ex. C); Leigh Responses to RFP Nos. 10, 11, 13 (DN 98, Ex. D).

party seeking production [of tax returns] has made the required showing of relevancy, ... the burden then shifts to the party opposing production to show that sources other than the tax returns exist from which the information sought may readily be obtainable.")

Here the Defendants have not satisfied either showing.  Federal and state tax returns most directly relate to the taxable income, deductible expenses and exemptions claimed by the tax filer.  A tax return on its face says little about the adequacy of a potential class representative.  Further, the Court has already ruled that the Defendants may obtain the history of property tax payments made by the named Plaintiffs, information that would seem to the Court to be far more relevant in this regard.

The same observation can be made with equal force as to the unrelated personal debts of each of the Plaintiffs.  Whether a Plaintiff has timely paid on his or her credit card simply does not matter in any meaningful respect to the substance of the Plaintiffs' claims nor the considerations of Rule 23(g) as far as the Court can determine.  Because the Defendants have not convinced the Court otherwise their motion to compel is denied as to this category of discovery.  *See Sanderson vs. Winner*, 507 F.2d 477, 479-80 (10th Cir. 1974) (Court declined to order the Plaintiffs to provide income tax returns and financial statements in an antitrust class action).

*Category Nine*

Attorney retainer fee agreements are the subject of this discovery category.[60]  The document requests under review seek the production of each of the Plaintiffs attorney retainer agreements in the present lawsuit.  Although the Plaintiffs objected based on the attorney-client

---

[60] Brown Response to RFP No. 11 (DN 98, Ex. A); Walther Response to RFP No. 11 (second RFP No. 3) (DN 98, Ex. B); Puckett Response to RFP No. 11(second RFP No. 3) (DN 98, Ex. C); Leigh Response to RFP No. 12 (DN 98, Ex. D).

privilege, they each produced an extensively redacted retainer agreement, without an accompanying privilege log.  Defendants as noted object that without the required privilege log they cannot determine whether the undisclosed portions of the retainer agreements are actually privileged.  Accordingly, our role is not to determine in the first instance whether such retainer agreements are discoverable in the context of a putative class action, a question on which the case law is divided. [61] Rather, we must determine if the excluded portions of the agreements produced by the Plaintiffs are protected by the privilege.

Plaintiffs maintain that the agreements were drafted in the context of an engagement letter format which contains certain otherwise privileged instructions and directives beyond the scope of the retainer agreement itself.  Given this argument, a privilege log once again is essential and the parties are subject to the same direction with respect to production of the log and the supplemental memoranda set out earlier in this Order. Plaintiffs shall have twenty (20) days in which to serve and file a detailed privilege log and supplemental memorandum in support of their position on this issue.  The Defendants shall then have twenty days thereafter in which to supplement their own motion papers. The memorandums shall be limited to 10-pages in length each.  Once the Court receives the privilege log and supplemental memoranda, it can determine whether the redacted portions of the attorney retainer agreements are indeed privileged from disclosure.

---

[61] See *In re Grand Jury Proceedings*, 33 F.3d 1060, 1063 (9th Cir. 1994); *Ferrero v. Gen. Motors Corp.,* 105 F.R.D. 429, 433 (D.N.J. 1984).  *Contra, Stanich vs. Travelers Indemnity Co*., 259 F. R.D. 294, 321 (N.D. Ohio 2009);  *Sanderson v. Winner*, 507 F.2d 477, 479-80 (10th Cir. 1974).

*Category Ten*

The final category of discovery in dispute concerns those request for production of documents that seek to obtain damages -related materials of the representative Plaintiffs and putative class.[62] Plaintiffs once again in their response generally referred the Defendants to the documents produced in response to their subpoena to the Bank of the Bluegrass and Bluegrass Business Services along with the three earlier mentioned depositions of Miller, Sherrow and Le. The Tax Ease Defendants again protest that a mere general reference to a group of documents, without more, is not sufficient, particularly given the desire of the Defendants to obtain the "complete factual basis for why the Plaintiffs think that the fees are unreasonable and what would be reasonable."[63]  For the reasons explained above, the Court agrees with the Defendants that they are entitled to receive more than merely a passing reference to an expansive category of documents or depositions without more.  Defendants are entitled to know not merely the amounts of the damages sought by each Plaintiff, but the basis on which such amounts are calculated for the named Plaintiffs and the potential class.

CONCLUSION

The motion of the Tax Ease Defendants to compel is granted to the extent set forth above as to each category of discovery under review with the understanding that the Court will complete its consideration of whatever issues of privilege or work product protection remain after it has received the privilege log and supplemental memoranda discussed earlier in the Order.  Should either party desire to seek immediate review of the present order by the District

---

[62] Brown Response to RFP No. 13 (DN 98, Ex. A); Walther Response to RFP No. 13 (second RFP No. 5) (DN 98, Ex. B); Puckett Response to RFP No. 13 (second RFP No. 5) (DN 98, Ex. C); Leigh Response to RFP No. 14 (DN 98, Ex. D).
[63] (DN 110, reply at P.  14-15).

Court pursuant to Rule 72 (a) of the Federal Rules of Civil Procedure, this Court shall briefly stay the requirement for production of a privilege log and supplemental memoranda until such time as the District Court has resolved such objections, if any.  Otherwise, the 20 day time limit shall run from the date of entry of the present order should neither party file objections. The same 20 day period shall apply to the Plaintiffs' duty to supplement their discovery responses as directed herein.

Cc:      Counsel of Record