# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

**JAMES BROWN, et al.**                                        **PLAINTIFFS**

**vs.**                           **CIVIL ACTION NO.  3:15-CV-208-CRS**

**TAX EASE LIEN SERVICING, LLC, et al.**                     **DEFENDANTS**

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on motion to compel payment of expert witness fees, DN 197, filed by Plaintiffs James Brown, et al. ("Brown" or "Plaintiffs") and motion for amended bill of costs, DN 208, filed by Defendants Tax Ease Lien Servicing, LLC, et al. ("Tax Ease" or "Defendants").  For the following reasons, Brown's motion to compel Tax Ease to pay expert witness fees is GRANTED in part and DENIED in part, and Defendant's bill of costs is GRANTED in part and DENIED in part.

## I.  Background

Plaintiffs are Kentucky property owners who sued Defendants, corporations and attorneys who profited from the debts of Kentucky citizens under the state-created system for the third-party purchase of certificates of tax delinquency.  DN 204 at 1.  Plaintiffs alleged Defendants improperly inflated Plaintiffs' tax bills with attorneys' fees that were not "actual" or "reasonable" under Kentucky Revised Statutes Section 134.452.  *Id*. at 2.  Plaintiffs hired four expert witnesses, all of whom were deposed by Defendants between October 13 and October 17, 2017.  DN 197 at 1.  On February 15, 2018, Plaintiffs filed a "MOTION TO COMPEL TAX EASE DEFENDANTS TO PAY EXPERT WITNESSES' FEES AS REQUIRED BY FRCP 26(b)(4)(E)."  DN 197.  Section II of this opinion will address how much of the requested expert fees Tax Ease is obligated to pay.

Parties also dispute what amount, if any, Plaintiffs must pay of Defendants' bill of costs. On April 30, 2018, Defendants filed an amended bill of costs with this Court. DN 208. Plaintiffs filed an objection to Defendants' amended bill of costs on May 14, 2018. DN 209. Section III of this opinion will address how much of Defendants' amended bill of costs Plaintiffs are obligated to pay.

## II. Expert Fees

Plaintiffs seek payment from Defendants for the fees of expert witnesses who were hired by Plaintiffs and deposed by Defendants. DN 197 at 1. Plaintiffs' experts include attorney Alan O. Bryant, attorney Sheldon G. Gilman, and employees from the public accounting firm of Jones, Nale & Mattingly. DN 197-1 at 1–3. Plaintiffs assert that they hired these experts to provide opinions that may have been presented at trial. DN 197 at 6. Plaintiffs' experts prepared reports and provided copies to Tax Ease. DN 199-8; DN 199-10; DN 199-11. Defendants deposed each of Brown's experts. DN 199 at 4. Plaintiffs seek payment of $8,309.25 for time their experts spent "in preparation for and participation in depositions noticed by the Tax Ease Defendants." DN 197 at 1, 3. Plaintiffs provide invoices from each expert for fees related to Defendants' discovery requests. DN 197-1, p. 1–3. Plaintiffs assert Defendants must pay for all of the requested fees pursuant to Federal Rule of Civil Procedure 26(b)(4)(E).

Defendants respond that they should not be compelled to pay Plaintiffs' requested expert fees because to do so would be "unreasonable" and a "manifest injustice" in contravention of Rule 26(b)(4)(E). DN 199 at 1. First, Defendants argue they should not be required to pay *any* fees because (A) had a trial taken place, the expert opinions would have been excluded and (B) expert reports were so *de minimis* that Defendants had to depose the experts to determine the basis for their conclusions. *Id.* In the alternative, Defendants argue that (C) even if they are obligated to

pay for time Plaintiffs' experts spent in depositions, they should not be required to pay for time those experts spent preparing for depositions. *Id.* Defendants' first two arguments are without merit. Regarding Defendants' third argument, this Court finds that Rule 26(b)(4)(E) does not require Defendants to pay for time Plaintiffs' experts spent preparing for depositions.

**A. Exclusion of Expert Testimony**

Defendants ask the Court to deny Plaintiffs' motion to compel the payment of expert witness fees because, if the case had gone to trial, the Court should have excluded every expert from testifying. DN 199 at 6. This argument is without merit.

Rule 26(b)(4)(E) of the Federal Rules of Civil Procedure provides:

*Payment*. Unless manifest injustice would result, the court must require that the party seeking discovery:

> (i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D); and

> (ii) for discovery under (D), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts and opinions.

Rule 26(b)(4)(A) provides, in relevant part, that a party "may depose any person who has been identified as an expert whose opinions may be presented at trial."

At the time Defendants deposed Plaintiffs' experts, Plaintiffs had identified them as "expert[s] whose opinions may be presented at trial." Fed R. Civ. P. 26(b)(4)A). Although Defendants filed a motion to exclude Plaintiffs' experts' testimonies at trial on March 23, 2018 (more than five months after deposing them), DN 201–203, Defendants' motions were mooted by this Court's summary judgment order on March 30, 2018, DN 204 at 6. Now, Defendants ask this Court to engage in a hypothetical evaluation of whether these experts' testimonies would have been excluded at trial if a trial had taken place. Rule 26 does not require that this Court engage in

such an inquiry, and this Court declines to conduct one. Therefore, costs for expert depositions will not be disallowed on these grounds.

### B. *"De minimis"* Expert Reports

Defendants also ask this Court to deny Plaintiffs' motion to compel the payment of expert witness fees because "the Discovery was necessitated by the Experts' deficient reports." DN 199 at 6. Defendants argue "[e]xpert fees that were incurred because of the actions of Plaintiffs and their experts are not reasonably shifted to the opposing party" and that "[i]t also would be manifestly unjust to require a defendant to pay the fees of a plaintiff's expert when the fees were necessitated by the Plaintiffs' failure to comply with their disclosure obligations." *Id*. at 10. Defendants make a blanket claim that "Plaintiffs' expert reports contain little more than a series of conclusory statements by each expert" but only argue with particularity about the alleged deficiency of reports by Bryant and Gilman. *Id*. at 9. Defendants allege these reports "lack the basis and reasons for the opinions being offered." *Id*. We find Plaintiffs' expert reports are sufficient to meet the requirements of the Federal Rules of Civil Procedure, and Defendants' arguments are without merit.

An expert witness must provide a written report that includes, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B). Plaintiffs' expert reports meet those requirements. For example, attorney Gilman identifies in numerical paragraph 6 of his report the basis for his opinion, citing specific sources, including Black's Law Dictionary, SCR 3.130(1.5), and certain Kentucky Supreme Court commentary. DN 199-8 at 2. In paragraph 7, Gilman explains the factors he would consider in determining whether a lawyer's fee is "reasonable," including a "lawyer's exposure to liability…the results obtained;

responsibility incurred; amount of money involved; extent and character of work performed; intricacies of facts involved; the lawyer's diligence and skill; <u>the likelihood that client itself could have easily performed the same service without the assistance of counsel</u>." *Id*. (emphasis in original). Bryant similarly met the requirements of Rule 26, going so far as to headline a portion of his report "Data and other information considered in accordance with FRCP 26(a)(2)(b)(ii)," followed by an itemized list of the sources upon which his opinion was based. DN 199 at 10. Bryant also headlined another portion of his report "Statement of opinions with basis and reasons, pursuant to FRCP 26(a)(2)(b)(i)," followed by a list of his opinions and his bases for them. *Id*. at 2–7. Accordingly, Defendants fail to demonstrate how Plaintiffs' expert reports were deficient under Rule 26.

Furthermore, even if some form of "discovery was necessitated by Plaintiffs' failure to provide proper expert reports," Defendants *chose* to depose the experts instead of seeking additional detail to cure alleged deficiencies. *See* DN 199 at 9 ("[R]ather than engaging in debate and inevitable motion practice over the reports, Defendants deposed Plaintiffs' experts to try to learn their 'complete' opinions and…the basis and reasons for each opinion and the facts relied on to form each opinion."). Having chosen to depose Plaintiffs' experts and not raise the issue of deficiency until almost five months later, this Court finds Defendants have waived their right to complain about the sufficiency of the reports or costs incurred in taking depositions. This Court agrees with the court in *Durkin v. Paccar, Inc.*, a case cited by Defendants in their response brief, which found "assertions as to…[a] deficient report do not alter the general rule that the deposing party must reimburse the producing party for reasonable expert fees incurred during the actual taking of the expert's deposition." *Durkin v. Paccar, Inc.*, 2012 U.S. Dist. LEXIS 197951, at *13

(D.N.J. Dec. 28, 2012). Therefore, costs for expert depositions will not be disallowed on these grounds.

## C. Deposition Preparation Costs

Finally, Defendants argue "Plaintiffs' experts should not be compensated for preparation time." This Court agrees. "Our circuit has little caselaw on Rule 26(b)(4)(E)," and no binding precedent on whether parties are required to pay for experts' deposition preparation costs. DN 221 at 20. Courts generally are split on whether Rule 26 allows for such compensation, with a "slim majority" allowing recovery if the fees are reasonable. *Borel v. Chevron U.S.A., Inc.*, 265 F.R.D. 275, 277 (E.D. La. 2010) (collecting cases). This Court finds that the plain meaning of Rule 26 excludes "deposition preparation" costs entirely.

Rule 26(b)(4)(E) states "[u]nless manifest injustice would result, the court must require that the party seeking discovery…pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A)." The plain meaning of the rule requires that the deposing party pay a reasonable fee for time an expert spends "responding to discovery," not the time he or she spends *preparing* to respond to discovery. Despite the rule's plain meaning, many courts have concluded "responding to discovery" includes preparation time. *See, e.g., Rote v. Zel Custom Mfg. LLC*, No. 2:13-cv-1189, 2018 U.S. Dist. LEXIS 76346, at *13 (S.D. Ohio May 7, 2018) ("time spent preparing for a deposition is, literally speaking, time spent in responding to discovery") (quoting *Collins v. Village of Woodridge*, 197 F.R.D. 354, 357 (N.D. Ill. 1999)). Another district court within the Sixth Circuit has observed, "the rule itself does not specify that the parameters for 'responding' to this form of discovery are limited to the actual time spent under oath in a deposition." *Cohen v. Jaffe, Raitt, Heuer, & Weiss, P.C.*, 322 F.R.D. 298, 301 (E.D. Mich. 2017). However, these courts focus an inordinate amount of attention on the phrase "responding to

discovery" to the detriment of the rest of the sentence, which states that parties seeking discovery shall pay for time spent in "responding to discovery *under Rule 26(b)(4)(A)*. Fed. R. Civ. P. 26(b)(4)(A) (emphasis added).

Rule 26(b)(4)(A), therefore, illuminates the extent of what time should be encompassed in "responding to discovery":

> Deposition of an Expert Who May Testify. A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.

Rule 26(b)(4)(A) explains the type of "responding" for which parties are obliged to pay—the "Deposition of an Expert Who May Testify." Further, because Rule 26(b)(4)(A) limits the conduct of depositions of opposing experts to "only after the report is provided," any further "preparation" should not be compensable. Moreover, "such exclusion of 'preparation' time is supported by the lack of a provision for compensation for time spent by experts in responding to interrogatories under Rule 26(b)(4)(A)(i)." *Rhee v. Witco Chem. Corp.*, 126 F.R.D. 45, 47 (N.D. Ill. 1989) (citing *Keith v. Van Dorn Plastic Mach. Co.*, 86 F.R.D. 458, 460 (E.D. Pa. 1980)). Accordingly, this court concludes that Rule 26 generally requires the deposing party to pay for time experts spend traveling to and participating in depositions, but not for time spent "preparing" to be deposed.

Public policy also favors a plain meaning interpretation of Rule 26 that excludes deposition preparation from the costs deposing parties are expected to bear. "Although it is true that most lawyers are likely to insist that their experts spend some time preparing for a deposition, and that a well-prepared expert's deposition may proceed more efficiently, there are countervailing concerns." *Rock River Communs., Inc. v. Universal Music Group*, 276 F.R.D. 633 *, 2011 U.S. Dist. LEXIS 152812, 2011 WL 5452970 (internal citations omitted). Here, three countervailing concerns weigh in favor of Plaintiffs paying for their own experts' preparation time.

First, the deposing party should not generally be expected to pay for deposition preparation because the deposing party cannot control how much time an expert (or the counsel who hired them) decides is necessary. "Shifting expert fees for deposition preparation creates what economists call an externality: the retaining party determines how much deposition preparation it deems desirable, but the deposing party pays for it. When benefit and cost are separated like this, the risk of unfairness is great." *Id.* at *6. In coming to this conclusion, the Court does not assume the "parties will violate Rule 1, which requires parties to employ the Federal Rules of Civil Procedure to secure the just, speedy, and inexpensive determination of every action and proceeding," as Plaintiffs argue. DN 200 at 8 (citation omitted). The Court simply recognizes that if the retaining party is not paying for deposition preparation, the expert will be more likely to prepare more than may be necessary. Accordingly, the retaining party may have its expert prepare as thoroughly as he or she wishes, but must do so at his or her own expense.

Second, if the Court broadens the meaning of "responding to discovery" to include deposition preparation, this begs the question of just how much is encompassed by "preparation." This introduces the risk that "an expert's deposition preparation may encompass a variety of tasks that contribute little or nothing to the efficiency of the deposition, are largely unrelated to the deposition, or are undertaken for an entirely partisan purpose." *Rock River Communs*, 276 F.R.D. at *7. Tasks for which the opposing party should not be obliged to pay, but that may be considered "preparation" include educating an expert about the retaining party's strategy, instructing the expert about how to behave during the deposition, preparing the expert to testify persuasively during the deposition or preparing the expert for testimony at trial. *Id.* Many courts have reasoned that the deposing party should pay for the time an expert spends "reviewing documents" in preparation for a deposition. *Benson v. Wells Fargo Bank, N.A.*, 2017 U.S. Dist. LEXIS 98282, at *52 (D.S.D.

June 26, 2017).  But the review performed by experts to prepare for a deposition often overlaps with the same review required to benefit the hiring party at trial.  *See Patterson Farm, Inc.*, 22 F. Supp. 2d at 1094-1095 ("[T]ime spent 'preparing' for a deposition entails not only the expert's review of his conclusions and their basis, but also communication between the responding party's counsel and the expert in order to prepare the expert to best support the responding party's case and to anticipate questions from seeking party's counsel. An expert's deposition is in part a dress rehearsal for his testimony at trial and his preparation is part of trial preparation. One party need not pay for the other's trial preparation.").  To attempt to carve out how much preparation time is for the benefit of the retaining party and how much is for the benefit of the deposing party would be both unnecessary and arbitrary.

Third, broadening the meaning of "responding to" beyond those factors under the direct control of the deposing party (time spent in a deposition and its associated travel costs) would require this Court to exercise its own judgment as to what amount of preparation is "reasonable." This judgment is more rightly exercised by the retaining party.  In substituting its own judgment, the Court would need to engage in an endless game of multi-factor balancing.  Courts that have done so have created a range of "reasonable" preparation-to-deposition ratios.  *See Script Sec. Sols., LLC v. Amazon.com, Inc.*, No. 2:15-CV-1030-WCB, 2016 U.S. Dist. LEXIS 156034, at *21-22 (E.D. Tex. Nov. 10, 2016) (citing numerous cases approving preparation-time-to-deposition-time ratios between less than 1:1 up to 3:1).  Courts that assume this role as arbiter of "reasonable" ratios, must also determine if the appropriate ratio is the same in every circumstance, *see, e.g.*, *Ushijima v. Samsung Elecs. Co.*, No. A-12-cv-318, 2015 U.S. Dist. LEXIS 109031, 2015 WL 11251558, at *6 (limiting ratio of preparation time to deposition time to one-to-one regardless of the details of the case), or if the ratio should be adjusted along a sliding scale according to the

case's perceived "complexity," *see, e.g.*, *Nordock Inc. v. Sys. Inc.*, 927 F. Supp. 2d 577, 583 (E.D. Wis. 2013) (allowing a 3:1 ratio of preparation time to deposition time for a complex case). These courts may also consider how recently experts have written their original reports. *See, e.g., Mannarino v. United States*, 218 F.R.D. 372, 376 (E.D.N.Y. 2003) (reducing expert's request for eight hours of preparation time to four hours, where expert reviewed the same materials that he did in preparing his expert report a few months prior). This type of balancing requires courts to exercise their own judgment in place of that of the expert or the expert's retaining party. *See, e.g., Nnodimele v. City of N.Y.*, No. 13-CV-3461 (ARR), 2015 U.S. Dist. LEXIS 94889, at *14 (E.D.N.Y. July 21, 2015) ("While Pollini need not merely review his report and contemporaneous notes as defendants suggest, the latter, duplicative record review appears to be excessive, especially in light of Pollini's decades of experience with police practices, his prior experience testifying as an expert, and the fact that the issues in the case are not especially technical or complex."). While this Court is capable of such an inquiry, it will not wade into such a morass when the law does not so require. Ultimately, the party deciding on how much time is reasonable to spend in preparation for a deposition should also be the party who is paying for such preparation.

Some Courts have taken an intermediate approach by requiring the deposing party to pay for expert deposition preparation if a case is particularly complex or a long period of time has elapsed between the writing of an expert report and the deposition itself. *3M Co. v. Kambar*, 2007 WL 2972921, *3 (N.D.Cal.2007) (noting "persuasive authority which states that ordinarily the deposing party need only pay for time spent in deposition, unless it is a complex case or there are extenuating circumstances which require additional preparation time;" the court found no extenuating circumstances in that case). Even if the Court were to follow this approach, charging Defendants for deposition preparation costs would not be reasonable in this case. Here, Plaintiffs'

experts wrote their reports within weeks of being deposed, making the "preparation time" requested manifestly unreasonable. *See Fisher v. Accor Hotels, Inc.*, No. 02-CV-8576, 2004 U.S. Dist. LEXIS 516, at *3 (E.D. Pa. Jan. 12, 2004) (denying reimbursement for deposition preparation where the expert's report and supplement totaled five pages, the issues were not complex, and the deposition occurred approximately two months after the expert report was disclosed). Furthermore, the expert opinions rendered were not particularly complex and did not require significant review beyond that which had already been accomplished to complete the report. *See Fait v. Hummel*, No. 01 C 2771, 2002 U.S. Dist. LEXIS 21012, at *4 (N.D. Ill. Oct. 28, 2002) ("Costs for deposition preparation are generally not awarded except in complex cases where experts must review voluminous documents"). Bryant and Gilman's brief expert reports revolved around the definition of the word "reasonable" and if the fees charged by Defendants were justified by the value their services added. See DN 199-8 at 2–4; 199-10 at 2–10. The expert report by Jones, Nale & Mattingly was similarly simple—concluding that several Defendant corporations were "managed by the same individuals" and were "economically dependent upon parent company Tax Ease and subsidiaries." DN 199-11 at 3. In fact, it appears that much of the "preparation time" was not billed because of complexity or the time elapsed after the report was first produced, but instead was billed by Fisher for "building books" (4.75 hours) and employee "Haley" for performing some undefined task (4 hours). DN 197-2 at 1.

The plain meaning of Rule 26(b)(4)(E) excludes deposition preparation time, public policy supports an interpretation of Rule 26(b)(4)(E) that excludes deposition preparation time, and the circumstances of this particular case support the exclusion of deposition preparation time. Accordingly, Plaintiffs' motion to compel payment for expert fees will be sustained in part and denied in part in accordance with the following:

| Disallowed Fees | | | |
|---|---|---|---|
| **Provider** | **Service** | **Amount** | **Citation** |
| Bryant | Deposition preparation | $250 | DN 197-1 at 1 |
| Gilman | Review Expert Opinion; review July "Hazel" case; confer with John Dwyer to review process; and supply of exhibits on link | $560 | DN 197-1 at 2 |
| Jones, Nale & Mattingly, PLC | Stratton – unspecified (10/12/17) | $192.93 | DN 197-2 at 1 |
| Jones, Nale & Mattingly, PLC | Stratton – unspecified (10/13/17) | $192.93 | DN 197-2 at 1 |
| Jones, Nale & Mattingly, PLC | Fisher – deposition preparation | $549.57 | DN 197-2 at 1 |
| Jones, Nale & Mattingly, PLC | Fisher – deposition preparation, build books for Fisher and Stratton | $1,044.16 | DN 197-2 at 1 |
| Jones, Nale & Mattingly, PLC | Fisher – discuss deposition | $54.96 | DN 197-2 at 1 |
| Jones, Nale & Mattingly, PLC | Haley – unspecified | $449 | DN 197-2 at 1 |

| | |
|---|---|
| **Total Fees Requested** | **$8,309.25** |
| **Total Fees Disallowed** | **$3,293.55** |
| **Total Fees Allowed** | **$5,015.70** |

## III. Bill of Costs

Defendants seek to recover $21,836.81 as costs. DN 208. Plaintiffs object to Defendants' bill of costs in its entirety. DN 209 at 1. Alternatively, Plaintiffs object to specific expenses within the bill of costs because Defendants "seek to recover for costs which are not taxable under Rule 54(d) and 28 U.S.C. § 1920, which were not necessarily incurred in relation to this matter, or which are unreasonable and unsupported by adequate documentation." *Id.*

### A. Legal Standard

Federal Rule of Civil Procedure 54(d) "creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court." *White & White, Inc. v. Am. Hosp.*

*Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986). Therefore, "[t]he party objecting to the taxation bears the burden of persuading the Court that taxation is improper." *Roll v. Bowling Green Metal Forming, LLC.*, 2010 U.S. Dist. LEXIS 78946, 2010 WL 3069106, at *2 (W.D. Ky. Aug. 4, 2010) (citing *BDT Prods., Inc. v. Lexmark Intern., Inc.*, 405 F.3d 415, 420, abrogated in part on other grounds, (6th Cir. 2005)). In *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S. Ct. 2494, 96 L. Ed. 2d 385 (1987), the Supreme Court held that a district court may award costs only for those elements contained in 28 U.S.C. § 1920, which provides:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

**B. Denial of Bill of Costs in its Entirety**

Plaintiffs contend that Defendants should not be permitted to recover any fees requested in their bill of costs. DN 209 at 1. To support its motion, Plaintiffs cite factors the Sixth Circuit allegedly "looked to" in deciding *White & White, Inc. v. American Hosp. Supply Corp.*, 786 F.2d 728 (6th Cir. 1986). *Id.* at 2. In *White*, the district court evaluated whether costs should be wholly denied to the prevailing party based on nine factors. *Id.* at 730 (listing the nine factors considered by the district court in a section entitled "FACTORS CONSIDERED BY THE

DISTRICT COURT"). However, the Sixth Circuit did *not* adopt each of the factors; in fact, the court specifically stated that consideration of one of the factors—the ability of the prevailing party to pay its own costs—was "inappropriate." *Id*. at 728. The Sixth Circuit upheld the lower court's ruling "on the basis of the plaintiffs' good faith, the defendant's unnecessary costs, and the difficulty of the case," finding that "[n]o expansion of [its] earlier decisions on Rule 54(d) was required to reach this result." *Id.* at 733. It is upon these three[1] factors—(a) Plaintiffs' good faith, (b) Defendants' unnecessary costs, and (c) the difficulty of the case—that this Court will overrule Plaintiffs' objection to Defendants' bill of costs in its entirety.

### 1. Good Faith

Brown alleges costs should be denied because "Plaintiffs brought this action in good faith and their pursuit of their claims was reasonable." DN 209 at 2. While the "good faith of unsuccessful litigants is a relevant consideration in Rule 54(d) deliberations," good faith "without more, however, is an insufficient basis for denying costs to a prevailing party." *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 731 (6th Cir. 1986) (citing *Coyne-Delany Co. v. Capital Dev. Bd.*, 717 F.2d 385, 390 (7th Cir. 1983)). Here, even accepting Brown's contention that Plaintiffs brought the action in good faith, there is "nothing more" that would compel this Court to depart from the presumption in favor of granting costs to the prevailing party.

---

[1] Plaintiffs also argue this Court should deny payment of Defendants Bill of Costs because (1) Defendants benefited from the litigation, (2) the public benefited from the litigation, (3) the court's decision had a "profound" effect on the law, and (4) awarding costs to Defendants would have a "chilling effect" on parties who would otherwise bring complex issues before the Court. DN 209 at 2. Although these factors have not been explicitly recognized by the Sixth Circuit, in an effort to rule on the motions "under all the circumstances in the case," the Court has reviewed Plaintiffs' arguments and found them without merit. *Lichter Found., Inc. v. Welch*, 269 F.2d 142, 146 (6th Cir. 1959). None of the arguments presented by Plaintiffs, either individually or in the aggregate, would justify a departure from the general rule that the losing party should pay the prevailing parties taxable fees requested in its bill of costs.

## 2. Defendants' Unnecessary Costs

Plaintiffs also argue this Court should deny all costs because "some of Defendants' claimed costs are not taxable under 28 U.S.C. § 1920." DN 209 at 3. District courts may deny payment of a prevailing party's requested bill of costs "in cases where the amount of taxable costs actually expended were unnecessary or unreasonably large under the circumstances" and "where the denial of costs was in the nature of a penalty for injecting unmeritorious issues into the case or unnecessarily prolonging the trial of the case." *Lichter Found., Inc. v. Welch*, 269 F.2d 142, 146 (6th Cir. 1959). Denial of Defendants' requested bill of costs is not justified on these grounds. First, the costs requested by Defendants are not "unreasonably large." Even if some costs are not taxable, as alleged by Plaintiffs, these discrepancies are best resolved by simply disallowing individual line items from Defendants' bill of costs, not a wholesale denial of all requested expenses. Second, there is no evidence that Defendants injected unmeritorious issued into the case or unnecessarily prolonged litigation—in fact it seems Defendants sought and obtained the most expeditious end to the trial that was available, ultimately winning the case on summary judgment. DN 204.

## 3. Difficulty of the Case

Plaintiffs argue that the "closeness" of the case warrants denial of costs because the case "raised complex and previously un-reviewed issues of public importance." DN 209 at 3. In *United States Plywood Corp.*, the Sixth Circuit upheld the denial of costs where a case was "close and difficult." *United States Plywood Corp. v. Gen. Plywood Corp.*, 370 F.2d 500, 508 (6th Cir. 1966). In that case, "[t]he trial judge heard extensive testimony for 40 trial days" to resolve a complicated patent dispute. *Id.* at 507. Similarly, in *White & White*, the trial court denied the entire bill of costs after an 80-day trial for a complex anti-trust action involving 43 witnesses, 800 exhibits, over

15,000 pages of transcripts, and a 95-page opinion by the court. *White & White*, 786 F.2d at 732. In contrast, this was a straightforward, statutory interpretation case revolving around what costs are "reasonable." Kentucky courts routinely decide the reasonableness of costs and fees allowed by KRS 134.452 during foreclosure actions against delinquent taxpayers, as reflected in the cases cited by this court in its summary judgment opinion. *See, e.g.*, DN 204 at 3, 8. What's more, this case never went to trial. The Court thoroughly reviewed a lengthy record prior to issuing its summary judgment opinion, but a voluminous record does not mean that that case was sufficiently "close" or "difficult" to justify denying the prevailing party payment of its requested bill of costs.

## C. Denial of Specific Costs

As an alternative to its argument that this Court should deny Defendants' costs *in toto*, Plaintiffs also argue that specific costs should be disallowed. DN 209 at 5. The Court will evaluate each of these disputed costs.

### 1. Benita Faizy and Nhat Dinh

Plaintiffs argue that they should not be required to pay any fees for printed or video transcripts from depositions of Benita Faizy or Nhat Dinh because Plaintiffs "could not find a single use of" their depositions within the record. DN 209 at 5–6. A court may tax as costs "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." U.S.C. § 1920. "Necessity is determined as of the time of taking, and the fact that a deposition is not actually used at trial is not controlling." *Freeman v. Blue Ridge Paper Prods.*, 624 F. App'x 934, 941 (6th Cir. 2015) (affirming award of costs of depositions that were not relied on in moving for summary judgment but upon which the defendant reasonably believed would play an integral role in the resolution of the case) (*citing Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir. 1989)); *Graham v. City of Hopkinsville*, No. 5:12-cv-23, 2013 U.S. Dist. LEXIS 115969, at

*6–8 (W.D. Ky. Aug. 16, 2013) (awarding costs for deposition the plaintiff claimed was irrelevant, as the potential for a relevance objection at trial was not determinative of whether the costs were necessarily incurred for the litigation). Plaintiffs noticed the depositions of Faizy and Dinh, indicating to Defendants that those depositions would form an integral part of Plaintiffs' case. Accordingly, transcript costs associated with the depositions of Faizy and Dinh were "necessarily obtained" by Defendants within the meaning of 28 U.S.C. § 1920(2), even if the fruit of those depositions was not ultimately found in Defendants' motion for summary judgment. Therefore, the cost of the deposition transcript of Faizy ($284.60), deposition transcript of Dinh ($294.65), and video transcript of Dinh ($265.00) are taxable. DN 208-1 at 1.

### 2. Bob Allen and Madison Vance

Plaintiffs similarly argue that they should not be required to pay the costs of deposition videos and deposition transcripts of Bob Allen and Madison Vance because Plaintiffs "could not find a single use of" their depositions within the record. DN 209 at 5–6. Defendants respond that "[t]he majority of the depositions taken in this case were noticed by Plaintiffs, including nearly all of the depositions with which Plaintiffs now take issue." DN 212 at 6. While this may be true for the "majority" of the depositions taken, Defendants do not point to any portion of the record to indicate that either Allen or Vance were noticed by Plaintiffs or otherwise explain how transcripts of those specific depositions were "necessarily obtained" for use in the case. Plaintiffs bore their burden of persuading the Court why the deposition transcripts were not "necessarily obtained." In response, Defendants baldly state that "[a]ll of the challenged depositions were 'necessarily obtained' for use in this case, regardless of whether the Tax Ease Defendants relied on them in moving for summary judgment." *Id.* Simply stating that "all" of the challenged depositions were necessary does not make it so. Therefore, the cost of the deposition transcript of Allen ($192.80),

deposition video of Allen ($55.00), deposition transcript of Vance ($162.75), and deposition video of Vance ($55.00) are not taxable. DN 208-1 at 2.

### 3. Billy Sherrow

Plaintiffs seek to disallow the recovery of costs associated with a deposition taken from Billy Sherrow in a separate state court matter, *Branson v. TELI1*. DN 209 at 6. Although parties may have cited that deposition during motion practice, copies of the transcript were not "necessarily obtained" for use in this case within the meaning of § 1920. Furthermore, allowing Defendants to recover the cost of obtaining deposition transcripts from a separate action would create the potential for a double recovery. Therefore, the cost of obtaining the deposition transcript of Sherrow in this case ($383.50) is taxable, but the cost of obtaining the deposition transcript of Sherrow in *Branson v. TELI1* ($356.50) is not taxable. DN 208-1 at 2–3.

### 4. Duplicity of Written Transcripts and Videos of Depositions

Plaintiffs argue this Court should not permit Defendants to recover the costs of both printed transcripts and videos of depositions because this would be "duplicative" and "unnecessary." DN 209 at 7. Plaintiffs read § 1920 too narrowly. Under § 1920(2), "fees for printed or electronically recorded transcripts necessarily obtained for use in the case" may be taxed as costs. This provision empowers the trial court to make taxable the costs of both the printed transcript and video of the same deposition. *See BDT Products,* 405 F.3d at 420 (holding that it is proper to tax both the cost of videotaping and transcribing a deposition). Necessity of a deposition is determined at the time it is taken, and the fact that the deposition is not actually used at trial is not controlling. *See Sutter v. Gen. Motors Corp*, 100 Fed. Appx. 472, 475 (6th Cir. 2004) (citing *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir. 1989)). In addition to objecting to the costs of video depositions generally, Plaintiffs specifically object to the video deposition costs for Philip Migicovsky, Trey Gulledge,

Nicole Company, Nathan Miller, Catherine Abshier, William Abshier, Larry Evans, Michelle Le, and Andrea Russolillo. DN 209 at 7.

### a. Philip Migicovsky and Trey Gulledge

Plaintiffs argue that video copies of Philip Migicovsky and Trey Gulledge's[2] depositions were unnecessary because "[a]t trial, Mr. Migicovsky and Mr. Gulledge would have attended personally, and Defendants would not have been using video depositions to impeach their own witnesses." DN 209 at 7. Plaintiffs improperly assume that impeachment of witnesses is the only "necessary" purpose for which Defendants may obtain video of depositions. As key Defense witnesses, it was prudent and "necessary" to obtain video of the depositions in the event that either Migicovsky or Gulledge became unavailable at trial (*e.g.*, due to illness). *See Longo v. Wal-Mart Stores, Inc.*, 79 F. Supp. 2d 169, 172 (E.D.N.Y. 1999) ("It is recognized that a videotaped deposition is generally more effective than reading a transcript for the presentation of deposition testimony."). Furthermore, Plaintiffs noticed Migicovsky and Gulledge for a video deposition, indicating that their video depositions were particularly important to Plaintiffs' case. *See* DN 126; DN 127. Therefore, the cost of Migicovsky's deposition transcript ($686.33), Migicovsky's deposition video ($935.00), Gulledge's deposition transcript ($763.96), and Gulledge's deposition video ($935.00) are taxable. DN 208-1 at 2.

### b. Nathan Miller

Plaintiffs argue that the video of Nathan Miller's deposition was unnecessary because Defendants did not identify Miller as a key witness in Tax Ease's 26(a)(1) disclosures. DN 209 at 8. Defendants provide no justification as to why it was reasonably necessary to obtain a video of

---

[2] Plaintiffs also object to $190.50 for a deposition transcript of Trey Gulledge taken in Jefferson Circuit Court, pre-removal, on March 14, 2014 because Defendants provided insufficient documentation with their bill of costs. DN 209 at 9. Defendants provided a copy of the invoice in their response, and the Court is satisfied that this documentation is sufficient. Therefore the cost of obtaining the transcript is taxable. DN 212-1 at 1.

Miller's deposition.  Accordingly, the Court finds that Defendants have not satisfied their burden of demonstrating why obtaining a video copy of Miller's deposition was necessarily obtained for this case.  **Therefore, the cost of Miller's deposition video ($55.00) is not taxable.  DN 208-1 at 2.**

### c.  Nicole Compary

Plaintiffs argue that the video of Nicole Compary was unnecessary because Defendants did not identify Compary as a key witness in Tax Ease's 26(a)(1) disclosures.  Although Defendants did not disclose Compary as a key witness, the actions of Plaintiffs made it reasonably necessary for Defendants' to obtain a video copy of Compary's deposition.  Plaintiffs noticed Compary's deposition to be recorded stenographically and by video.  DN 83.  Plaintiffs' decision to videotape and transcribe Compary's deposition signaled to Defendants that Compary would form an integral part of Plaintiffs' case.  Therefore, it was "necessary," within the meaning of § 1920, for Defendants to obtain both stenographic and video copies of the deposition, and both costs ($231.46 and $235.00 respectively) are taxable.  DN 208-1 at 1.

### d.  Other Depositions

Plaintiffs argue the Court should disallow the video costs for the depositions of Catherine Abshier, William Abshier, Larry Evans, Michelle Le, and Andrea Russolillo.  DN 209 at 8–9.  Defendants argue that videos of these depositions are "duplicative" because written transcripts were also obtained, and Defendants "utilized only these written transcripts in motion practice."  Plaintiffs' argument is without merit.  These depositions were "only" utilized in motion practice because Defendants won the case on summary judgment, obviating the need for a trial.  Furthermore, the actions of Plaintiffs made it reasonably necessary for Defendants' to obtain a video copy of these depositions.  Plaintiffs noticed these disputed depositions to be recorded stenographically and by video.  DN 83.  Plaintiffs' decision to videotape and transcribe the

disputed depositions signaled to Defendants that these witnesses would form an integral part of Plaintiffs' case. Furthermore, these parties were deposed in Texas, outside the subpoena power of this Court, making it even more necessary to obtain video depositions in the event that the case proceeded to trial and these witnesses did not appear. Accordingly, it was "necessary," within the meaning of § 1920, for Defendants to obtain both stenographic and video copies of the deposition. Therefore, the cost obtaining deposition videos for Catherine Abshier ($375.00), William Abshier ($375.00), Larry Evans ($265.00), Michelle Le ($265.00), and Andrea Russolillo ($265) are taxable. DN 208-1 at 2.

### 5. Statements of Counsel

Plaintiffs argue the Court should disallow $150 requested by Defendants for two "statements of counsel" related to two noticed depositions of Emil Walther on February 23, 2017 and July 31, 2017. DN 209 at 10. Plaintiffs state that Emil Walther did not appear at either deposition and the court reporter issued a "statement of counsel" noting his non-attendance." *Id*. A statement of Counsel does not fall within any of the categories of costs allowed under § 1920. Therefore, the charges for statements of counsel ($150.00) related to the failed depositions of Emil Walther are not taxable. DN 208-1 at 2.

### 6. Deposition Transcript "Add-on" Costs

Plaintiffs argue Defendants cannot recover the costs of "add-on" services associated with depositions. Plaintiffs summarize the costs to which they object in the following chart:

| | | | | |
|---|---|---|---|---|
| James Brown | $796.45 | $333.60 | Min-U-Script | $462.85 |
| Denise Puckett | $428.50 | $192.00 | Min-U-Script | $236.50 |
| Elizabeth Fisher | $429.15 | $225.20 | Min-U-Script | $203.95 |
| Wayne Stratton | $204.60 | $114.80 | Min-U-Script | $89.80 |
| Alan O. Bryant | $1,595.65 | $669.20 | Min-U-Script and Rough Draft | $926.45 |
| Bob Allen | $192.80 | $154.80 | Condensed transcript with index; scanned exhibits | $38.00 |
| Madison Vance | $162.75 | $118.25 | Condensed transcript with index; scanned exhibits | $44.50 |
| Nathan Miller | $242.20 | $180.00 | E-transcript file and scanned exhibits | $62.20 |
| Sonia Powell | $81.00 | $69.75 | Scanned exhibits | $11.25 |
| Sheldon Gilman | $1,193.90 | $1190.40 | Scanned exhibits | $3.60 |
| Laura Branson[5] | $690.50 | Unknown | Exhibits, condensed transcript and email transcript, and postage and handling | Unknown |
| Phillip Leigh | $525.91 | $264.48 | Copy and exhibits | $261.43 |
| Billy Sherrow | $383.50 | $355.50 | Exhibits | $28.00 |

DN 209 at 10–11. The Court disagrees. The Sixth Circuit has recognized that "[o]rdinarily, the costs of taking and transcribing depositions reasonably necessary for the litigation are allowed to the prevailing party." *Sutter v. Gen. Motors Corp.*, 100 F. App'x 472, 475 (6th Cir. 2004) (quoting *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir. 1989)). Here, Plaintiffs object to costs associated with the copies of the depositions. The Court finds that these associated costs were part and parcel

of the "[f]ees for exemplification and the costs of making copies" recognized in § 1920(4). *See Street v. U.S. Corrugated, Inc.*, No. 1:08-CV-00153, 2011 U.S. Dist. LEXIS 79158, at *4 (W.D. Ky. July 20, 2011) (disagreeing with Plaintiff's contention that § 1920 only entitled Defendant to reimbursement of original transcript and not the "full costs associated with" depositions) *citing Cunningham v. Target Corp.*, 2010 U.S. Dist. LEXIS 24767, 2010 WL 1032772, at *2 (W.D. Ky. Mar. 17, 2010). After examining the amended bill of costs, the exhibits, and the parties' arguments, the Court finds that Defendants sufficiently explained the purpose of these costs and, thus, satisfied their burden of demonstrating that these costs were reasonably necessary for the use in the case. In contrast, Plaintiffs have not met their burden of persuading the Court that taxation of these costs is improper. Thus, the "add-on" costs objected to by Plaintiffs (*e.g.*, Min-U-Script, postage, handling, indexing, exhibit scanning) are properly taxable.

### 7. Copies of unspecified origin or purpose

Plaintiffs object to a $2,685.08 charge Defendants seek for in-house copying of 8,128 pages of documents and $153.75 for "Jefferson County Clerk Printing Fees (Fees For Copies at $0.25 per page)." DN 209 at 12. Plaintiffs note that Defendants have not presented an itemized list of the date, source, nature, and purpose for all of Defendants' claimed copies, and that these costs should only be allowed if Plaintiffs produce "a client bill or an affidavit to support that such costs were incurred and billed." DN 209 at 12. Although "§ 1920 does not demand page-by-page precision," parties requesting reimbursement for copying costs must provide enough information for the Court to reasonably determine whether the copies were necessarily obtained for use in the case. *See LFP IP, LLC v. Hustler Cincinnati, Inc.*, No. 1:09-cv-9I3, 2016 WL 7015764, 2016 U.S. Dist. LEXIS 165322, at *15 (S.D. Ohio Nov. 30, 2016) (internal quotation marks and citations omitted). While 8,128 copies made in house over the course of five years of litigation may have

been reasonably necessary, simply listing "8,128 copies at $.20 per page" on a bill of costs is insufficient for this Court to determine that such costs were "necessary." DN 208-1 at 3. Plaintiffs' listing numbers of copies under the heading "Jefferson County Clerk Printing Fees (fees for copies at $0.25 per page) is similarly insufficient. *Id*. Therefore, Defendants' request of $1,625.60 for "Copies (8,128 copies at $.20 per page)" and $153.75 for "Jefferson County Clerk Printing Fees (Fees For Copies at $0.25 per page)" are not taxable. *Id*.

### 8. PageOne Document Services

Plaintiffs object to $705.73 in service charges attributed to PageOne Document Services because the work was not "'necessary' or 'reasonable' in any regard, but rather was undertaken merely for the convenience of defense counsel." DN 212 at 12. Specifically, Defendants argue against the necessity of the following charges:

| | |
|---|---|
| File Conversion (1,643 copies at $.08 each) | $49.29 |
| Blowbacks (1,643 copies at $.08 each) | $131.44 |
| Professional Services for the renaming of converted pdfs to match original and keep in sub folders as original | $525.00 |

DN 209 at 13. The Court will address charge individually.

### a. File Conversion

Converting files into a producible format may be taxable if such conversion is necessary to provide materials in a producible format. *See, e.g., Colosi v. Jones Lang LaSalle Ams., Inc.*, 781 F.3d 293, 297 (6th Cir. 2015) (holding that the imaging of a hard drive into a producible format was within the ordinary meaning of "making copies of any materials"). However, the costs must be "necessary," and the court may reduce the taxable cost to account for copies obtained for the convenience of counsel. *See Charboneau v. Severn Trent Labs.*, No. 5:04-CV-

116, 2006 U.S. Dist. LEXIS 16877, at *3-4 (W.D. Mich. Apr. 6, 2006) (citing *In re Merritt Meridian Constr. Corp.,* 95 F.3d 153, 173 (2d Cir. 1996).

Here, PageOne converted financial files into PDF format and provided those files to Plaintiffs. DN 209 at 13. Plaintiffs argue that the native format, which it surmises was Excel, was sufficient and preferable to PDF. Defendants respond that the conversion was necessary because of the "countless risks" associated with producing the files in their native format, several examples of which Defendants enumerate: "the potential for even inadvertent alteration of files, an inability to readily track what was or was not produced, and the difficulty in identifying which documents used as exhibits were produced by which party, if any." DN 212 at 13. Given the justifications provided by Defendants and the facts of this case, the Court finds that the fee for converting electronically-stored files from their native format to PDF was a necessary part of "making copies" within the meaning of § 1920(4). *See Jardin v. DATAllegro*, No. 08-CV-1462, 2011 U.S. Dist. LEXIS 117517, 2011 WL 4835742 (S.D. Cal. Oct. 12, 2011) (awarding $64,295.96 for processing and converting to TIFF format). Therefore the file conversion fee ($49.29) is taxable. DN 208-2.

### b. Blowbacks

Plaintiffs object to the taxability of $131.44 in "blowback" costs. DN 209 at 13. These "blowbacks" were hard copies of digital files already processed by PageOne. DN 212 at 13. Plaintiffs argue these copies are not taxable because they were produced solely for the convenience of counsel. *Id*. at 14. Defendants respond that blowbacks were necessary, taxable costs because they were "copies" made to ensure the documents could "were usable" in depositions. DN 212 at 13. Defendants' argument is without merit. Although hard copies may have been more convenient for use in depositions, § 1920 does not require that a non-prevailing party pay for the most

convenient format in any given situation that counsel may find themselves during litigation. These copies were not necessarily obtained and, therefore, Defendants' blowback costs ($131.44) are not taxable.

### c. Professional Services

Plaintiffs object to the taxability of $525 in "Professional Services for the renaming of converted pdfs to match original and keep in sub folders as original." DN 209 at 13. Plaintiffs argue that these services fall outside the scope of 28 U.S.C. §1920, as they are unreasonable, unnecessary, and were done only for the convenience of counsel. *Id.* Defendants respond that these professional services such services were part of "converting files into a producible format," and were necessary to ensure the files were provided to Plaintiffs in a "readable, and producible, format." DN 212 at 12. Just as converting files to PDF was a necessary part of "making copies" within the meaning of § 1920(4), the renaming of the converted files and matching to the original was similarly necessary. Therefore, PageOne's "professional services" fee is taxable.

### 9. Jefferson Circuit Court Video Copying Fees

Plaintiffs object to $200 for copies of ten hearings allegedly received from Jefferson Circuit Court. DN 209 at 15. Plaintiffs make two arguments against the video copying fees: (1) the Court should disallow all of the video copying fees because Defendants provided no invoice to substantiate the charge or (2) in the alternative, the Court should only tax the costs of the four videos cited in filings with the court. Defendants respond with the following justification for the video copying costs:

> The Tax Ease Defendants also obtained video recordings of several hearings in this action (before it was removed) and one hearing in Plaintiff Cambron's separate state court action (which is the one in which the agreed judgment resolving her certificates of delinquency had been entered). It was reasonable to expend the nominal sum of $20 per recording to obtain them for use in this litigation, especially since Plaintiffs expressly referenced prior hearings throughout this action (such as

when they groundlessly accused Defendant Craig of making misrepresentations to the Jefferson Circuit Court).

DN 212 at 10.  The Court finds that the detailed description of the hearings and the associated copying fee provide sufficient documentation of the costs to overcome Plaintiffs' first argument. However, while obtaining copies of all ten hearings may have been "reasonable," Defendants failed to carry their burden of demonstrating why all ten videos were "necessarily obtained for use in this case."  Defendants state that "Plaintiffs expressly referenced prior hearings throughout this action," but do not demonstrate why any videos, other than the four referenced during motion practice, were necessarily obtained.  Accordingly, the cost of six hearings ($120 for hearings on 5/28/13, 3/17/14, 3/31/14, 4/28/14, 7/3/14, and 2/2/15) are not taxable.

### 10.  Service Processing Fee

Plaintiffs object to $285 in costs Defendants incurred serving subpoenas on and attempting to serve subpoenas on Emil Walther.  DN 209 at 16.  Plaintiffs argue that Defendants' alleged service cost should be disallowed because Defendants have "failed to provide any information establishing what the costs of service would have been if effectuated by the United States Marshals."  *Id.*  Defendants respond that the $285 spent for serving Walther once and attempting to serve Walther with a second subpoena four times would have been less than the Marshal's $65 per hour rate.  According to 28 CFR 0.114, United States Marshals' service fees are "$65 per hour (or portion thereof) for each item served by one U.S. Marshals Service employee, agent, or contractor, plus travel costs and any other out-of-pocket expenses."  The Court determines that on the facts of this case $285 was reasonable and does not exceed the fee that would have been charged had Defendants chosen to utilize the U.S. Marshal Service to serve the witness.  Therefore, the entire $285 is taxable.  *See Arrambide v. Wal-Mart Stores, Inc.*, 33 F. App'x 199, 203 (6th Cir.

2002) ("[A] district court may tax costs for private process server fees to the extent that these private process server fees do not exceed the United States Marshal's fees.).

### 11. Summary of untaxable costs

Defendants' bill of costs is granted in part and denied in part in accordance with the following:

| Nontaxable Costs | | |
|---|---|---|
| Cost | Amount | Citation |
| Deposition transcript of Allen | $192.80 | DN 208-1 at 2 |
| Deposition video of Allen | $55.00 | DN 208-1 at 2 |
| Deposition transcript of Vance | $162.75 | DN 208-1 at 2 |
| Deposition video of Vance | $55.00 | DN 208-1 at 2 |
| Deposition transcript of Billy Sherrow in *Branson v. TELI1* | $356.50 | DN 208-1 at 2 |
| Deposition video of Miller | $55.00 | DN 208-1 at 2 |
| Statements of Counsel | $150.00 | DN 208-1 at 2 |
| Copies (8,128 copies at $.20 per page) | $1,625.60 | DN 208-1 at 3 |
| Jefferson County Clerk Printing Fees (Fees For Copies at $0.25 per page) | $153.75 | DN 208-1 at 3–4 |
| PageOne blowbacks | $131.44 | DN 208-2 at 40 |
| Jefferson Circuit Video Copying Fees | $120.00 | DN 208-1 at 3 |
| Total nontaxable costs | $3,057.84 | |

| | |
|---|---|
| **Total Costs Requested** | **$21,836.81** |
| **Total Costs Nontaxable** | **$3,0587.84** |
| **Total Costs Taxable** | **$18,778.97** |

**IV. Conclusion**

Motions having been made and for the reasons set forth herein and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that Plaintiffs' motion for payment of expert witness fees, DN 197, is **GRANTED in part and DENIED in part** in accordance with this opinion**,** and Defendants' bill of costs, DN 208, is **GRANTED in part and DENIED in part** in accordance with this opinion.

December 17, 2019

**Charles R. Simpson III, Senior Judge**
**United States District Court**